# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

R.B.,
c/o Engel & Martin, LLC
4660 Duke Drive, Ste 101
Mason, OH 45040

Plaintiff,

v.

JENNIFER M. SMITH
Assistant Vice President of Compliance &
Title IX Officer
Medical Science Library
202 Olsen Blvd., Suite 007
College Station, TX 77843

KALYN CAVAZOS
Offices of the Dean of Student Life
126 Koldus Student Services Building
Texas A&M University
College Station, TX 77843-1236

TERRI ALLISON
Department of Civil Rights and Equity
Investigations
Texas A&M University
750 Agronomy Road, Suite 2101
College Station, TX 77843-1280

JACLYN UPSHAW-BROWN
Program Coordinator, Student Conduct
Office
Texas A&M University
849 West Campus Blvd. Building 0071
College Station, TX 77843-1257

CANDICE LOTT
Associate Coordinator, Student Conduct
Office
Texas A&M University
849 West Campus Blvd. Building 0071
College Station, TX 77843-1257

Case No.

Judge

COMPLAINT

1

JAMES HANSON
Assistant Coordinator, Student Conduct
Office
Texas A&M University
849 West Campus Blvd. Building 0071
College Station, TX 77843-1257

ANNE REBER
Dean, Offices of the Dean of Student Life
Texas A&M University
849 West Campus Blvd. Building 0071
College Station, TX 77843-1257

Defendants

# INTRODUCTION

1. Plaintiff R.B. brings this action for a declaratory judgment and relief under 42 U.S.C. §1983.

2. This case arises out of the decision of the Texas A&M University ("TAMU") to impose discipline

   on R.B. in violation of his constitutional rights to due process.

# PARTIES

3. R.B. is an undergraduate student at TAMU.

   a. R.B. is a Florida resident with a residence at [OMITTED]. R.B. has completed two

      semesters of coursework at TAMU.

   b. The disclosure of R.B.'s identity will cause the student irreparable harm as this case

      involves matters of the utmost personal intimacy, including education records protected

      from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.

      § 1232g; 34 CFR Part 99.

4. Defendant Jennifer M. Smith is the TAMU Title IX Coordinator. Smith has a principal place

   of business at Medical Science Library, 202 Olsen Blvd., Suite 007, College Station, TX 77843

   a. Smith is sued in her official capacity for declaratory and injunctive relief.

b. Smith is responsible for administering and operating the TAMU Student Rules. Smith is responsible for providing oversight, leadership, and coordination for TAMU's Title IX compliance efforts regarding discrimination based on sex, sexual harassment (sexual violence), and related retaliation and for supporting a safe and respectful academic, working, and living environment.

c. On information and belief, Smith has been acting under the policies, procedures, and practices of TAMU and, in particular, those policies designed to implement Title IX.

5. Defendant Kalyn Cavazos is a Senior Student Conduct Investigator with the Offices of the Dean of Student Life. Cavazos has a principal place of business at 126 Koldus Student Services Building, TAMU, College Station, TX 77843.

a. Cavazos is sued in her official capacity for declaratory and injunctive relief.

b. Cavazos is responsible for administering and operating the TAMU Student Rules. On information and belief, Cavazos has been acting under the policies, procedures, and practices of TAMU and, in particular, those policies designed to implement Title IX.

6. Defendant Terri Allison is a Compliance Investigator with the Department of Civil Rights and Equity Investigations. Allison has a principal place of business at 750 Agronomy Road, Suite 2101, College Station, TX 77843

a. Allison is sued in her official capacity for declaratory and injunctive relief.

b. Allison is responsible for administering and operating the TAMU Student Rules. On information and belief, Allison has been acting under the policies, procedures, and practices of TAMU and, in particular, those policies designed to implement Title IX.

7. Defendant Jaclyn Upshaw-Brown is the Program Coordinator for the TAMU Student Conduct Office. Upshaw-Brown has a principal place of business at 849 West Campus Blvd. Building 0071, College Station, TX 77843.

a. Upshaw-Brown is sued in her official capacity for declaratory and injunctive relief.

b. Upshaw-Brown is responsible for administering and operating the TAMU Student Rules. On information and belief, Upshaw-Brown has been acting under the policies, procedures, and practices of TAMU and, in particular, those policies designed to implement Title IX.

8. Defendant Candace Lott is the Program Coordinator for the TAMU Student Conduct Office. Lott has a principal place of business at 849 West Campus Blvd. Building 0071, College Station, TX 77843.

a. Lott is sued in her official capacity for declaratory and injunctive relief.

b. Lott is responsible for administering and operating the TAMU Student Rules. On information and belief, Lott has been acting under the policies, procedures, and practices of TAMU and, in particular, those policies designed to implement Title IX.

9. Defendant James Hanson is the Assistant Coordinator for the TAMU Student Conduct Office. Hanson has a principal place of business at 849 West Campus Blvd. Building 0071, College Station, TX 77843.

a. Hanson is sued in her official capacity for declaratory and injunctive relief and in her individual capacity for damages.

b. Hanson is responsible for administering and operating the TAMU Student Rules. On information and belief, Hanson has been acting under the policies, procedures, and practices of TAMU and, in particular, those policies designed to implement Title IX.

10. Anne Reber is the TAMU Dean of Student Life. Reber has a principal place of business at 849 West Campus Blvd. Building 0071, College Station, TX 77843.

a. Reber is sued in her official capacity for declaratory and injunctive relief.

b. Reber is responsible for administering and operating the TAMU Student Rules. On information and belief, Reber has been acting under the policies, procedures, and practices of TAMU and, in particular, those policies designed to implement Title IX.

11. On information and relief, Defendants are authorized to grant all of the injunctive relief sought in the Complaint.

## JURISDICTION AND VENUE

12. This case arises, in part, under the laws of the United States, specifically 42 U.S.C. §1983 and §1988. Accordingly, this Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

13. The injunctive relief sought in this matter is authorized by 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

14. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391. The defendants are residents of the state in which this district is located and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

### THE TAMU RESPONSE TO THE ISSUE OF SEXUAL MISCONDUCT ON CAMPUSES

15. TAMU is a public university and is part of the Texas A&M System. TAMU is governed by a Board of Regents consisting of nine regular voting members and one student non-voting member who are appointed by the Governor of Texas. TAMU was established in 1876 and the Texas A&M University System was officially established in 1948.

a. TAMU has a principal place of business at 400 Bizzell St, College Station, TX 77843.

b. TAMU has approximately 69,000 students, including approximately 54,000 undergraduates.

16. After years of criticism for being too lax on campus sexual assault, colleges and universities are relying on Title IX to crackdown on alleged perpetrators. Unfortunately, this crackdown has gone too far. Problems include: accused students effectively are presumed guilty; instead of requiring accusers to prove they were assaulted, the accused students have to prove they had consent; and schools apply the very lowest standard of proof — preponderance of the evidence.

17. On April 11, 2011, the U.S. Education Department, Office of Civil Rights ("OCR") sent a "Dear Colleague" to colleges and universities.

a. The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and Universities must have transparent, prompt procedures to investigate and resolve complaints of sexual misconduct.

b. Most notably, the Dear Colleague Letter required schools to adopt a relatively low burden of proof—"more likely than not"—in cases involving sexual misconduct, including assault. Several colleges had been using "clear and convincing," and some, like Stanford, applied the criminal standard, "beyond a reasonable doubt."

c. The Dear Colleague Letter states that schools should "minimize the burden on the complainant," transferring alleged perpetrators, if necessary, away from shared courses or housing.

d. The Dear Colleague Letter, while not completely ignoring due process concerns, suggested that schools should focus more on victim advocacy.

e. The Dear Colleague Letter states that schools should give both parties the right to appeal a decision, which amounts to double jeopardy for an accused student.

f.  After the Dear Colleague Letter was published, many schools changed their sexual assault and sexual harassment policies and procedures.

18. External pressure from the federal government and lawsuits brought by private parties has, on information and belief, caused schools such as TAMU to increase the zealousness of its "prosecution" of sexual assault and the harshness of the sanctions it imposed.  One judge on the Fifth Circuit observed:  "the procedures prescribed for adjudication of sexual misconduct are heavily weighted in favor of finding guilt. Institutions of higher learning… flocked to embrace the 'guidance'" from the Dear Colleague Letter.  *Plummer v. Univ. of Houston*, 860 F.3d 767, 779 (5th Cir. 2017) (Jones, J., dissenting).

19. Observers on both the left and the right noted that this led colleges to eliminate due process protections for accused students in order to create the appearance of being tough on the problem. Caroline Kitchens, *Overreaching on Campus Rape*, National Review, May 13, 2014 ("Because of the inadequacy of campus courts and lack of procedural safeguards in place to protect students, this has grave consequences for due process"); Emily Yoffe, *The College Rape Overreaction*, Slate Dec. 7, 2014 ("Colleges, encouraged by federal officials, are instituting solutions to sexual violence against women that abrogate the civil rights" of accused students). The procedures adopted by schools have received substantial criticism from courts.  For example:

> Sexual assault is a deplorable act of violence… Universities have perhaps, in their zeal to end the scourge of campus sexual assaults, turned a blind eye to the rights of accused students. Put another way, the snake might be eating its own tail. Joe Dryden et. al., *Title IX Violations Arising from Title IX Investigations: The Snake Is Eating Its Own Tail*, 53 Idaho L. Rev. 639 (2017).

*Doe v. Ohio State Univ.*, 311 F. Supp. 3d 881, 892-893 (S.D.Ohio 2018).

20. On September 22, 2017, the Department of Education withdrew the Dear Colleague Letter and indicated its intent to issue new guidance "through a rulemaking process that responds to public

comment." Letter from Office for Civil Rights, U.S. Dep't of Educ. (September 22, 2017). In withdrawing the Dear Colleague Letter, OCR observed that prior actions

> may have been well-intentioned, but… led to the deprivation of rights for many students — both accused students denied fair process and victims denied an adequate resolution of their complaints.

*Id.* at 1-2. OCR further said:

> Legal commentators have criticized the [Dear Colleague Letter]… for placing 'improper pressure upon universities to adopt procedures that do not afford fundamental fairness.' [As a result, many schools have established procedures for resolving allegations that] lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation.

*Id.*, quoting *Open Letter From Members Of The Penn Law School Faculty: Sexual Assault Complaints: Protecting Complainants And The Accused Students At Universities*, Feb. 8, 2015; *Rethink Harvard's Sexual Harassment Policy*, Boston Globe (Oct. 15, 2014) (statement of 28 members of the Harvard Law School faculty).

21. On November 16, 2018, the Department of Education circulated for notice and comment new regulations to implement Title IX. The new regulations seek to narrow the definition of sexual harassment and increase protections for students accused of misconduct. The proposed regulations would require schools to investigate sexual assault and harassment only if the alleged misconduct was reported to certain campus officials and only if it occurred on campus or other areas overseen by the school.

22. TAMU has been the subject of at least investigations two by OCR related to the handing of sexual misconduct allegations: OCR Docket 06-15-2023; OCR Docket 06-17-2067.

23. In 2018, TAMU received two reports reviewing how it handles allegations of Sexual Misconduct,

24. An August 2018 Report was completed by an internal committee. This report is available at: https://urc.tamu.edu/media/1601369/title_ix_internal_review_report_august_2018.pdf

a. The report noted that documents and information on the Title IX process are "viewed now as complicated, inaccessible, and difficult to locate and navigate."

b. In regards to the hearing process, hearing panels needed "more time for case file review" and that there was a need to ensure proper training for hearing panel" and "improve education on the panel process" for students.

25. In August 2018 Report was completed by a law firm of the TAMU Title IX policies and procedures. This report is available at: https://www.tamu.edu/statements/HB-TAMU-Title-IX-Report.pdf

a. This Report provided the opinion that the TAMU procedures satisfied due process requirements. On Page 20 the Report states:

> TAMU's Formal Resolution Procedures set forth a process that includes provisions requiring written notice, an equal opportunity for the parties to present their account to the investigator in an investigative hearing, and the right to appeal. In our view, these provisions, if followed, should satisfy the minimal due process standards expected by the Fifth Circuit.

b. This Report suggested, however, that TAMU's polices were inadequate because they did not permit cross-examination of adverse witnesses:

> TAMU's policy does not provide a right of direct cross-examination, nor does it explain how effective cross-examination is effectuated. We understand that in practice each party is advised of the substance of the other's testimony such that he or she is able to formulate questions to be posed, but an effective form of cross-examination that satisfies the instructive holdings in [Sixth Circuit cases] should be stated in TAMU's policies and procedures.

26. In response to the reports, TAMU President Michael K. Young announced a series of actions taken by TAMU in regards to Title IX investigations and sanctioning. TAMU announced it would hire additional staff and implement tougher sanctions on students.

27. TAMU has adopted certain policies and procedures for the investigation and adjudication of alleged sexual misconduct, as required by Title IX. These rules and procedures are contained within the TAMU Student Rules.

28. TAMU Student Rule 24 prohibits "Sexual Misconduct." A copy of Rule 24 is attached as Exhibit A.

    a. Rule 24.4.2 prohibits "harassment." The Rule defines harassment as follows:

> Behavior that is severe, pervasive or persistent to a degree that a reasonable person similarly situated would be prevented from accessing an educational opportunity or benefit. This behavior includes, but is not limited to, verbal abuse, threats, intimidation, and coercion. In addition, harassment may be conducted by a variety of mediums, including but not limited to, physical, verbal, graphic, written, or electronic.

    b. Rule 24.4.2.1 prohibits "sexual harassment." The Rule defines sexual harassment as follows:

> Unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal or physical conduct of a sexual nature constitutes sexual harassment when this conduct is so severe, persistent, or pervasive that it explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work or educational performance, or creates an intimidating or hostile work or educational environment.

    c. Rule 24.4.20.1 prohibits "sexual abuse." The Rule defines sexual abuse as follows:

> Sexual abuse is the oral, anal, or vaginal penetration by a sexual organ of another, use of another's sexual organ for oral, anal, or vaginal penetration, or anal/vaginal penetration by any means against the victim's will or without the victim's consent (see "consent" in definitions). An individual who is mentally incapacitated, unconscious, or unaware that the sexual abuse is occurring is considered unable to give consent.

    d. Rule 24.4.20.2 prohibits "sexual contact." The Rule defines sexual contact as follows:

> Attempting or making sexual contact, including but not limited to inappropriate touching or fondling, without the person's consent (see "consent" in definitions), or in circumstances where the person is physically, mentally or legally unable to give consent.

    e. Rule 24.4.20.3 prohibits "sexual exploitation." The Rule defines sexual exploitation as follows:

> Taking non-consensual or abusive advantage of another individual that is sexual in nature for one's own advantage or benefit, or to the benefit or advantage of anyone other than the one being exploited. For example, sexual exploitation could include such actions as secretly videotaping sexual activity, voyeurism, sexually-based stalking, invasion of sexual privacy, and knowingly transmitting a sexually transmitted infection to another person.

f. Rule 24.1.6 defines the term "consent." for the purposes of the Sexual Misconduct rule. The Rule defines consent as follows:

> [C]lear, voluntary, and positive verbal or non-verbal communication that all participants have agreed to the sexual activity.

29. TAMU had adopted University Rule 08.01.01.M1 and University Rule 08.01.01.M1.01.  A copy of Rule 08.01.01.M1 is attached as Exhibit B.  A copy of Rule 08.01.01.M1.01 is attached as Exhibit C.

   a. These rules were revised in early August, 2019.

   b. Rule 08.01.01.M1 prohibits discrimination, and harassment.  Harassment under this Rule includes non-consensual sexual contact, sexual assault, sexual exploitation, dating abuse/violence, domestic abuse/violence, stalking, quid pro quo and hostile environment sexual harassment.  The Rule further provides a "substantiated allegation of prohibited conduct will result in disciplinary action, up to and including… separation from the University" and that the procedures for responding to allegations of misconduct are detailed in Rule 08.01.01.M1.01.

30. Under Rule 08.01.01.M1.01, the Department of Civil Rights and Equity Investigations (CREI) has been designated to receive and investigate all reports alleging allegations of sexual misconduct against Students.

   a. CREI appoints an "Investigative Authority (IA)" to conduct a formal investigation. The IA is permitted to "draw conclusions as to whether, based on the preponderance of the evidence, an allegation is substantiated, unsubstantiated, or that there is insufficient information to substantiate."  The IA may also draw conclusions as to whether or not any other regulations, codes, policies, rules or SAPS were violated.  A "Designated Administrator (DA)" reviews the Investigation Report, the documentary evidence, and any other relevant information and renders a written decision of responsibility based on

11

the preponderance of the evidence. An "Appellate Authority (AA)" reviews the Investigation Report, The DA's decision, the documentary evidence, and any other relevant information and renders a written decision on any appeal.

b. An accused student has the right to have an advisor present, but the Rule provides that the "advisor's participation will be limited to the role of an observer" and may not "directly address the IA, DA or AA, advocate on behalf of a party."

c. The IA is required to "conduct a prompt, fair, thorough and impartial investigation." The Rule requires students to cooperate with investigations, and provides that "abuse of the investigation and resolution process is subject to disciplinary action up to and including dismissal or separation from the University." The Rule specifically prohibits "failure to appear at a meeting, interview, hearing, or conference…"

d. The Rule provides that both the Complainant and the Respondent "will have an equal opportunity to be heard, to submit information and corroborating evidence, to identify witnesses who may have relevant information, and to submit questions to be asked of the other party." However, questions for the other party are "asked by and at the discretion of the IA" and the IA meets "separately with the Complainant, the Respondent, and any witnesses." The IA has "the sole discretion" to determine the relevance of evidence and what should be included in an the Investigation Report.

e. The IA prepares an Investigation Report, which may include a conclusion as to whether TAMU Rules or Policies were violated. The Rule notes that the "conclusions of the IA are merely advisory and are not the final decision with respect to responsibility."

f. The DA reviews the Investigation Report and then conducts a "live hearing." At the hearing parties may "present witnesses, evidence or information, and to cross- examine the other parties or witnesses by submitting written questions." The DA then determines

whether, based on the preponderance of the evidence, the student has committed misconduct. The Hearing Officer "has the sole discretion" to determine the relevance of evidence and what should be heard at a live hearing. The Rules specifically provides that the "Rules of Evidence do not apply in a live hearing." There is no requirement that the complainant appear at the hearing.

    g. Both a Complainant and a Respondent may appeal, although the grounds for appeal are limited. The decision of the AA is final.

31. Prior to the August 2019 revisions the Rule 08.01.01.M1 and 08.01.01.M1.01, complaints against students for sexual misconduct are adjudicated under Student Rule 47, "Investigation and Resolution of Complaints against Texas A&M Students for Sexual Harassment, Sexual Assault, Dating Violence, Stalking and Related Retaliation (SSDDSR)," and Student Rule 45, Discrimination and Discrimination Appeals, and Student Rule 26, Student Conduct Proceedings. A copy of TAMU Student Rule 45 is attached as Exhibit D. A copy of TAMU Student Rule 47 is attached as Exhibit E.

32. TAMU Student Rule 45 provides that allegations of sexual misconduct are resolved under Rule 08.01.01.M1 and Rule 08.01.01.M1.01

33. TAMU Student Rule 47 provides that the Department of Civil Rights and Equity Investigations (CREI) is charged with the investigation and resolution of alleged violations of Texas A&M University's civil rights policies, including Title IX. Deputy Title IX coordinators, designated officials, or investigative teams are assigned to address issues of sex-based discrimination, harassment and sexual misconduct.

    a. The investigation is conducted by persons who receive training on issues related to Title IX violations and on conducting investigations. On information and belief, much of the training is done by an organization called the National Center for Higher Education Risk

Management ("NCHERM"), or organizations associated with that organization. NCHERM is a for-profit organization formed to support the marketing efforts of attorneys who operate in this field.

    i. The organization is very media savvy in regards to self-promotion, but none of the principals appear to have any law enforcement investigatory experience. The Association of Title IX Administrators ("ATIXA") is associated with NCHERM.

    ii. In August 2018, TAMU hosted a training sessions where, for $5500, attendees could receive a "certificate." A similar event in planned for the TAMU campus in October 2019. Members of the advisory board and founding members of ATIXA previously worked at TAMU.

b. On information and belief, the investigators at TAMU have no experience in conducting law enforcement investigations or investigations into allegations of sexual assault. Instead, most have a background in employment-related or education-related investigations, including matters of discrimination, harassment, and occupational safety and health. Rarely have investigators worked as a prosecutor or other law enforcement officer.

34. Prior to the August 2019 revisions the Rule 08.01.01.M1 and 08.01.01.M1.01, complaints of Sexual Misconduct were adjudicated under the procedures set forth in TAMU Student Rule 26. A Copy of TAMU Student Rule 26 is attached as Exhibit F.

a. TAMU Student Rule 26 provides that a "Student Conduct Panel" will review the investigation and evidence and make a determination of whether the accused student has violated any Student Rules. This determination is made under the preponderance of the evidence standard.

b. The accused student is permitted to have an "advisor" present. However, the advisor may not "represent" the accused student or participate in the proceedings.

    c. The accused student may present witnesses and other evidence to the Student Conduct Panel. However, witnesses cannot be compelled to attend the hearings.

    d. The complainant, or alleged victim, is not required to attend the Student Conduct Conference.

    e. Adverse witnesses or others who provided inculpatory information during the investigation are not required to attend the Student Conduct Conference.

35. TAMU rules, including TAMU Student Rule 26 and the August 2019 revisions the Rule 08.01.01.M1 and 08.01.01.M1.01, do not guarantee the opportunity for accused students to ask questions of adverse witnesses in the presence of the decision makers.

    a. The August 2019 revisions the Rule 08.01.01.M1 and 08.01.01.M1.01 permit some written questions, whether through the investigator or the hearing panel, but the complainant and adverse witnesses are not required to attend any hearing.

    b. TAMU Student Rule 26 does not provide for the opportunity for accused students to ask questions of adverse witnesses, but the complainant and witnesses are not required to attend any hearing.

36. TAMU makes a recording of certain aspect of the Student Conduct Conference. However TAMU does not record meetings between the Student and Administrators discussing procedural issues or deliberations. The recording is not provided to the accused student.

37. A student found to have violated the Student Rules is entitled to an appeal. The grounds for appeals ae strictly limited, however.

38. During the investigation, the complainant may receive accommodations and benefits, sometimes referred to as "interim measures."

    a. Interim measures can include "no contact" orders and changes in academic, employment or living arrangements.

b. These benefits and accommodations would not be available to students but for the fact that the students claimed to have been a victim of sexual misconduct. On information and belief, these benefits and accommodations are not disclosed to the accused student or described in the investigation, despite the potential impact on the credibility of the witnesses who receive the benefits or accommodations.

39. Sanctions for sexual misconduct include dismissal, suspension, removal from campus housing, educational intervention, no-contact orders and/or restrictions from participating in intercollegiate athletics or co-curricular activities. Sanctions are imposed in accordance with "the Student Title IX Cumulative Sanctioning Matrix." A Copy of the Student Title IX Cumulative Sanctioning Matrix is attached as Exhibit G.

## THE ALLEGATIONS AGAINST R.B.

40. R.B. was alleged to have committed sexual misconduct by harassing women and making unwanted sexual contact with women in the Freshman Leadership Organization, known as Freshman Aggies Spreading Tradition (FAST).

a. No direct complaint was made by the alleged victims. Instead, the previous FAST director told her organization advisor about the reports she had received from another executive member.

b. The reports indicated that one student, TS received an unwanted kiss from R.B. during a study session. The reports also said that another student, SF, stated that R.B. had placed his hand under her shirt and tried to stick his hand in her pants. Later, other students said that R.B. "could have harassed or done something to" a third student, EB. R.B. allegedly asked EB to give him sexual favors in exchange for him helping her with her homework and he spread false rumors about her. Finally, the reports suggested that R.B. coerced a

fourth student, SR, into having sex with him on multiple occasions and that he once became angry and punched three holes into the wall of an apartment.

    c. R.B. unequivocally denies engaging in any sexual misconduct or harassment.

41. On March 29, 2019, R.B. received a letter from Upshaw-Brown. R.B. was not provided with any details of the allegations against him. He was told only that "Information has been forwarded to the Offices of the Dean of Student Life, Student Conduct Office, regarding concerns about your interactions with a fellow student." R.B. was told that he was required to attend a meeting scheduled a few days later.

42. On May 10, 2019, R.B. received a letter from Reber. R.B. was informed that he had been "placed on an interim restriction status" and that an investigation would be conducted. R.B. was informed that until the investigation was completed, he was "ineligible to represent the University in any way…"

43. The allegations against R.B. were investigated by Cavazos and Allison. On or about May 16, 2019, a report was provided to Reber.

44. According to the report, SF alleged that R.B. tried to touch her at a party in March 2019.

    a. SF alleged that she had been drinking and passed out next to R.B., using R.B.'s arm as a pillow. She claimed that she woke up at 5:30 am to R.B. touching her breasts under her shirt. She claimed that R.B. then tried to put his hands down her pants.

    b. R.B. denied any misconduct. He told the investigators that SF consented because she approached him, touched his chest, and started to spoon with him.

45. According to the report, TS claimed that R.B. tried to kiss her during a study session.

    a. TS told the investigators that she did "not think the situation [was] a bad situation" and that she "saw it as him making a move." She told the investigators that she was not offended "in any way."

b. R.B. denied any misconduct. He told the investigators that he had been "flirting" with TS and that TS "seemed to reciprocate." He said that one night when they were cuddling he kissed TS. He tried to kiss her again a few weeks later, but TS said she just wanted to be friends. Nothing else happened.

46. According to the report, SR claimed that she was harassed by R.B..

   a. Student SR acknowledged that she and R.B. had a sexual, "friends with benefits" relationship. She told the investigators that R.B. "wanted something more" and that she eventually stopped having sex with R.B.. She told the investigators that R.B. would get mad because she did not want a romantic relationship and that once he punched a wall. She also told the investigators that the incident with R.B. did not cause her severe emotional distress.

   b. R.B. denied any misconduct. He admitted to the investigators that he had a "friends with benefits" relation with SR and that SR had initiated the sexual contact. R.B. admitted that he punched a wall at an apartment because he was upset that SR would not date him; he paid for the damages.

47. According to the report, EB claimed that she was harassed by R.B..

   a. Student EB told the investigators that R.B. was jealous because his friend also was romantically interested in EB. EB claimed that after R.B. helped EB with an assignment. R.B. started telling EB that she owed him sexual favors, specifically oral sex. EB admitted that she sent nude pictures to R.B., adding that R.B. did not ask for the pictures.

   b. R.B. denied any misconduct. He specifically denied asking for oral sex in exchange for help with schoolwork. He also told the investigators that he and EB had kissed on Valentine's Day and that EB sent him nude pictures.

48. The investigators also interviewed other students who were asked broad questions about R.B.'s character and actions that were not directly related to the claims by TS, SR, EB or SF.

49. On June 26, 2019, R.B. received a letter from Upshaw-Brown informing him that he had been accused of violating he Student Rules.

   a.  In regards to SR, R.B. was accused of sexual harassment and sexual contact.

      i.  The sexual harassment allegations were described as follows:

          a. By making one or more unwelcome sexual or romantic advances toward another individual on or near the Texas A&M University campus during or about the months of October and/or November 2018.

          b. By punching one or more holes in a wall at or near Callaway Villas in College Station, Texas, on or about October 27, 2018.

      ii.  The sexual contact allegations were described as follows:

          a. By grabbing another individual around the waist one or more times without that person's consent at or near White Creek Apartments on the Texas A&M University campus during or about the months of October and/or November 2018.

          b. By kissing another individual one or more times without that person's consent at or near White Creek Apartments on the Texas A&M University campus during or about the months of October and/or November 2018.

   b.  In regards to EB, R.B. was accused of sexual harassment and sexual contact.

      i.  The sexual harassment allegations were described as follows:

          c. By stating or implying that another individual "owed" you one or more sexual favors at or near Evans Library on the Texas A&M University campus during or about the month of March 2019.

          d. By kissing another individual without that person's consent and/or when that person was unable to give consent in or near the Bryan/College Station area during or about the month of March 2019.

      ii.  The sexual contact allegations were described as follows:

          c. By kissing another individual without that person's consent and/or when that person was unable to give consent in or near the Bryan/College Station area during or about the month of March 2019.

c. In regards to TS, R.B. was accused of sexual harassment and sexual contact.

    i. The sexual harassment allegations were described as follows:

        e. By making one or more unwelcome sexual or romantic advances toward another individual in or near the Bryan/College Station, Texas, area, during or about the months of March and/or April 2019.

        f. By kissing another individual without that person's consent at or near Rudder Hall during or about the month of March 2019.

    ii. The sexual contact allegations were described as follows:

        d. By kissing another individual without that person's consent at or near Rudder Hall during or about the month of March 2019.

d. In regards to SF, R.B. was accused of sexual harassment and sexual contact.

    i. The sexual harassment allegations were described as follows:

        g. By touching the breast of another individual without that person's consent at a residence in or near Houston, Texas, on or about March 30, 2019.

        h. By attempting to place your hand in another individual's pants without that person's consent at a residence in or near Houston, Texas, on or about March 30, 2019.

    ii. The sexual contact allegations were described as follows:

        e. By touching the breast of another individual without that person's consent at a residence in or near Houston, Texas, on or about March 30, 2019.

a. The sexual contact allegations were described as follows:

        f. By attempting to place your hand in another individual's pants without that person's consent at a residence in or near Houston, Texas, on or about March 30, 2019.

e. R.B. was also accused of "damages" for the following alleged misconduct: "By punching one or more holes in the wall of another individual's residence at or near Callaway Villas in College Station, Texas, on or about October 27, 2018.

50. A hearing on the accusations against R.B. was scheduled for July 10, 2019.

51. Prior to the hearing TAMU refused to provide R.B. with a copy of the investigative materials. Instead, the materials were made available on-line and only when a TAMU administrator could supervise R.B.'s review of the materials. He was not permitted to make any copies of the evidence obtained by the investigators.

52. The hearing was continued until July 30, 2019 so that R.B. could obtain an attorney to act as his advisor and have adequate time to prepare.

53. Prior to the July 30, 2019 hearing, R.B. asked for a continuance because his advisor had complications from surgery and could not travel to College Station. R.B. offered to provide a doctor's note. TAMU refused this request, indicating that continuances would not be permitted for "scheduling conflicts" for an advisor.

54. Prior to the July 30, 2019 Hearing, R.B. made a number of additional requests of TAMU.

    a. R.B. asked for the identity of all panel members so that he could ascertain if there were any conflicts. This request was denied. As a result, R.B. had no opportunity to ascertain the training and experience of panel members prior to the beginning of the hearing.

    b. R.B. asked that all of his communications with TAMU personnel be recorded. At a number of times, both immediately preceding and during the hearing, R.B. asked procedural questions and raised objections about the conduct of the hearing. TAMU personnel refused to record these interactions.

55. Hanson acted as the chairperson of the hearing and made all procedural decisions and decisions concerning the admissibility of evidence.

56. Prior to the hearing, R.B. asked that certain witnesses be required by TAMU to attend the hearing.

    a. This request was denied. R.B. was told by Hanson that he could act on his own to try to have the witnesses appear voluntarily. R.B. communicated with these witnesses, but they refused to attend.

b. Hanson told R.B. that TAMU could not compel witnesses to attend the hearing. This is false. Potential witnesses are required to appear for interview with investigators and TAMU had the power to force students and faculty to attend the hearing.

c. R.B. asked that the investigators attend the hearing. This request was denied.

57. A hearing was held on July 30, 2019.

a. R.B. participated by teleconference so that he could consult with his advisor.

b. R.B. asked that all of his communications with TAMU personnel be recorded. At a number of times, both immediately preceding and during the hearing, R.B. asked procedural questions and raised objections about the conduct of the hearing. TAMU personnel refused to record these interactions.

c. No witnesses appeared at the hearing. In particular, none of the four alleged victims appeared and no persons who provided statements summarized in the investigative reports appeared. R.B. asked a number of times if he could submit questions for persons who had provided adverse information; this request was denied.

d. At the hearing, Upshaw-Brown acted as a prosecutor and presented evidence to the panel in a biased manner. She told the panel members that she would "represent the University and present case for the four complainants." Upshaw-Brown admitted that had never had any contact with any of the complainants prior to the hearing.

58. On July 31, 2019 R.B. received a letter from Lott describing the results of the hearing.

a. R.B. was found responsible for sexual harassment of SR. The July 31, 2019 letter indicates that R.B. was found responsible "based on the complainant's written statements."

b. R.B. was found responsible for sexual harassment of SF and sexual contact with SF. The July 31, 2019 letter indicates that R.B. was found responsible "based on statements from the complainant and respondent that acknowledged that the behavior occurred."

However, the Letter does not describe any statements by R.B. concerning the alleged conduct.

    c.   R.B. was found responsible for damaging a wall.

    d.   R.B. was found not responsible for the allegations involving EB and TS.

59. R.B. was suspended through May 2020. He is not permitted to be on the TAMU campus and, if he returns, would be placed on probation. He is also required to attend an Ethics & Decision Making workshop and "attend one or more meetings with a University Administrator to discuss consent."

60. R.B. submitted an appeal on August 5, 2019. As of the date of this Complaint, TAMU has not acted on this appeal.

61. The Defendants' continued actions against R.B. are causing substantial, immediate, and continuing damages.

    a.   Suspension, expulsion or other discipline from TAMU will cause R.B. to be denied the benefits of education at his chosen school, damaged his academic and professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career.

    b.   TAMU will place a notation on R.B.'s transcript.

62. The harm suffered by R.B. as a result of being found responsible for sexual misconduct is substantially greater than any harm suffered for other allegations of non-academic misconduct at a college or university. In addition to a tarnished disciplinary record, he is also facing the stigma of being labeled 'responsible' for engaging in sexual misconduct.

    a.   Under TAMU rules, because R.B. was found responsible for committing an act of sex-based violence, on information and belief he is ineligible to receive an institutional scholarship.

b. On information and belief, a finding of responsibility for sexual misconduct will make it difficult, if not impossible, for R.B. to transfer to a school comparable to TAMU or to enter graduate school.

c. On information and belief, a finding of responsibility for sexual misconduct will make it difficult, if not impossible, for R.B. to receive professional licenses or a security clearance. If R.B. sought to become an attorney, he would face greater screening and questioning by authorities before he could obtain a professional license or security clearance.

d. Sanctions imposed by TAMU for sexual misconduct will likely have a substantial lasting impact on R.B.'s personal life, educational and employment opportunities, and reputation in the community.

## COUNT I
## (DECLARATORY JUDGMENT – VIOLATION OF DUE PROCESS PROVISIONS OF UNITED STATES CONSTITUTION)

63. Plaintiff repeats and incorporates all of the allegations of this Complaint, as if fully set forth herein.

64. The Fifth Amendment to the United States Constitution, made applicable to the State of Texas by the Fourteenth Amendment, provides that no person shall "be deprived of life, liberty, or property, without due process of law."

65. The Fourteenth Amendment to the United States Constitution provides that no state shall deprive "any person of life, liberty, or property, without due process of law."

66. TAMU has a constitutional obligation to provide a fundamentally fair and reliable hearing process.

67. R.B. is entitled under the Constitution of the United States to the opportunity to be heard in a meaningful manner at the disciplinary hearing.

68. R.B.'s interests in the results of the disciplinary hearing are significant.

a. Suspension from TAMU would deny him the benefits of education at his chosen school.

b. Suspension and other sanctions would also damage R.B.'s academic and professional reputation.

c. Suspension and other sanctions are likely to affect the R.B.'s ability to enroll at other institutions of higher education and pursue a career. Such sanctions are likely to have a substantial and lasting impact on R.B.'s personal life, educational, employment opportunities, and reputation in the community.

69. The Defendants have violated R.B.'s due process rights in a number of manners, including but not limited to:

a. TAMU conducted a biased and incomplete investigation that was then provided to the Hearing Panel.

b. Administrators involved in the adjudicatory and appeal process are biased against students accused of sexual assault.

c. TAMU permitted the use of hearsay evidence at the hearing without providing R.B. the opportunity to effectively cross-examine witnesses TS, SR, EB or SF.

   i. R.B. was not given an opportunity to question TS, SR, EB or SF at any time and, in particular, before the members of the Conduct Panel who ultimately had to decide disputed issues of fact and assess credibility.

   ii. R.B. was not given an opportunity to question witnesses who provided adverse information in interviews to the Investigators.

d. At the hearing, John Doe's ability to be heard in a meaningful manner was impacted by the cumulative effect of a number of TAMU procedures, including:

   i. R.B. was denied the effective assistance of an attorney or other advisor. An advisor was permitted to be present, but the advisor was not permitted to participate.

ii. R.B. was not provided with adequate time to prepare and TAMU refused to grant a reasonable continuance when his advisor was prohibited by a physician from traveling due to surgical complications.

iii. R.B. was not permitted to compel the attendance of other TAMU students or witnesses.

iv. The Conduct Panel considered unreliable hearsay and other information and innuendo about R.B. that was irrelevant and unduly prejudicial.

70. The Individual Defendants have both a duty to enforce the provisions of the TAMU policies and procedures for the investigation and adjudication of alleged sexual misconduct and have actually enforced those provisions against R.B..

71. The Plaintiff and the Defendants, acting in their official capacities, have a dispute about whether the TAMU policies and procedures for the investigation and adjudication of alleged sexual misconduct, as applied to R.B., violates the Due Process Clauses of the United States Constitutions.

72. The Plaintiff is entitled to a declaration that the Defendants, in implementing the policies and procedures for the investigation and adjudication of alleged sexual misconduct, as applied to R.B., violated the Due Process Clauses of the United States Constitution.

73. R.B. is entitled to a declaration that the TAMU policies and procedures for the investigation and adjudication of alleged sexual misconduct, as applied to R.B., violates the Due Process Clauses of the United States Constitution.

74. Pursuant to 42 U.S.C. §1988, R.B. is entitled to his attorney's fees and costs incurred in bringing this action.

## COUNT II
### (42 U.S.C. §1983 -- VIOLATION OF DUE PROCESS PROVISIONS OF UNITED STATES CONSTITUTION)

75. Plaintiffs repeat and incorporate all of the allegations of this Complaint, as if fully set forth herein.

76. This count is brought against the Defendants in their Official Capacity for injunctive relief.

77. The Defendants have acted under color of law in violating the Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitutions.

78. The Defendants have acted intentionally and with callous disregard for R.B.'s clearly established constitutional rights.

79. As a direct and proximate result of the Defendants' violations of R.B.'s constitutional rights, R.B., in the absence of injunctive relief will suffer severe, irreparable, and substantial damages. These damages include diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress.

80. The Defendants continued actions against R.B. are causing substantial, immediate, irreparable and continuing damage to the Plaintiffs.

81. 42 U.S.C. §1983 authorizes this Court to issue a variety of relief including injunctive relief, monetary damages (which is not currently being requested in this action), and declaratory relief that a particular statute, rule or policy is constitutionally inadequate.

82. Pursuant to 42 U.S.C. §1983, R.B. is entitled to an Injunction from this Court prohibiting the imposition of, or reporting of, any disciplinary actions by TAMU under the policies and procedures for the investigation and adjudication of alleged sexual misconduct against Plaintiff.

83. Pursuant to 42 U.S.C. §1988, R.B. is entitled to his attorney's fees incurred in bringing this action.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the following relief:

- Judgment in favor of Plaintiff and specifically:
    - On Count I, declaring that the TAMU policies and procedures for the investigation and adjudication of alleged sexual misconduct, as applied to R.B., violates the Due Process Clauses of the United States Constitution.
    - On Count II, appropriate relief authorized by 42 U.S.C. §1983, including: (i) injunctive relief prohibiting the imposition of discipline on Plaintiff related to the alleged sexual misconduct described in this Complaint; and (ii) declaratory relief that the TAMU policies and procedures for the investigation and adjudication of alleged sexual misconduct, as applied to Plaintiff, violate the Due Process Clauses of the United States Constitution.
- Court costs and other reasonable expenses incurred in maintaining this action, including reasonable attorney's fees as authorized by 42 U.S.C. §1988.

    /s/ James Holtz
James Holtz (09931450, Fed Bar No. 1452)
Will Holtz (24092533, Fed Bar No. 308796)
THE HOLTZ LAW FIRM, P.C.
2121 Sage Road, Suite 250
Houston, Texas 77056
713-467-1396
jholtz@holtzlegal.com
wholtz@holtzlegal.com

Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
*Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Dr., Ste 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com
tamashasky@engelandmartin.com



# TEXAS A&M UNIVERSITY
## Student Rules

**EXHIBIT A**



# 24. Student Conduct Code

(Revised: 2019)

The General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education supports higher standards of behavior for students.

Attendance at a university is not compulsory. The voluntary attendance of a student at a university is a voluntary entrance into the academic community. By such voluntary entrance, the student voluntarily assumes obligations of performance and behavior reasonably imposed by the university. These obligations are generally much higher than those imposed on all citizens by the civil and criminal law. A university may discipline students to secure compliance with these higher obligations as a teaching method or to sever the student from the academic community.

The General Order further emphasizes the ability of universities to establish standards of superior ethical and moral behavior that occur either on or off campus.

24.1 Definitions.

Only for purposes of this Student Conduct Code, the following terms and definitions will apply. The Vice President for Student Affairs or designee reserves the right to interpret and enforce this Code of Conduct.

24.1.1. The term "**accused student**" means any student charged with a violation of a student *rule*.

24.1.2. The term "**chairperson"** means a *Student Conduct Administrator* who is authorized by the *Vice President for Student Affairs* or designee to take the lead role in conducting *conferences* when there is more than one person serving as a *Student Conduct Panel* and/or more than one *Student Conduct Administrator* present.

24.1.3. The term "**charge**" means an allegation of a potential violation of the Student Rules. Charges are issued after a Student Conduct Administrator has determined sufficient information exists to hold a *conference* to determine whether a student (or students) has violated a *rule* (or *rules*).

24.1.4. The term "**complainant**" means any person who submits information indicating that a *student  may* have violated the Student Conduct Code. Information brought forth by the *complainant  may* result in an *investigation*.  (For Student Rule sections 24.1.7., 24.1.8., 26.2. and 47 only, "**complainant"** means any person who is the alleged recipient of alleged behaviors concerning sexual misconduct, sexual harassment, dating violence, domestic violence, or stalking that are currently under review by the Offices of the Dean of Student Life.)

24.1.5. The term **"conference"** means a process which provides an opportunity for an accused *student* to respond to a specific *charge* or *charges*. The purpose of a *conference* is to determine whether there is a preponderance of information to support the *charges* and if so, to determine the appropriate *sanction* or *sanctions*. Only information presented during the *conference* can be used to determine if there is a finding of responsibility.

24.1.6. The term "**consent**," solely for the purposes of the Sexual Misconduct rule (see *rule* 24.4.20), means clear, voluntary, and positive verbal or non-verbal communication that all participants have agreed to the sexual activity.

- *Consent* must occur prior to or at the same time as the sexual activity.
- *Consent* must remain clear, voluntary, and positive throughout the sexual activity.
- *Consent* must be given for the current sexual contact. The existence of a prior relationship or prior sexual activity does not automatically ensure *consent* for current or future sexual contact. There must be *consent* for each specific type of sexual contact throughout the sexual activity. *Consent* must be given by each participant involved.
- A person must be 17 years of age or older to be able to consent to sexual activity if the other participant(s) involved are more than three (3) years of age older than that person.
- A person who is clearly or visibly incapacitated is not able to give *consent* to sexual activity (see definition of *incapacitation* below) .

24.1.7. The term "**dating violence**" means any physical abuse or sexual misconduct, other than a defensive measure to protect oneself, committed by a person who is or has been in a social relationship of a romantic or intimate nature with the *complainant*.

24.1.8. The term "**domestic violence**" means any physical abuse or sexual misconduct, other than a defensive measure to protect oneself, committed by a person who is or has been a current or former spouse of the *complainant*, person with whom the *complainant* shares a child in common, person who is cohabitating with or has cohabitated with the *complainant* as a spouse, a person similarly situated to a spouse of the *complainant*, or any other person against an adult or youth *complainant* who is a part of that person's household.

24.1.9. The term "**faculty member**" means any person hired by the *University* to conduct classroom, teaching, or research activities or who is otherwise considered by the *University* to be a member of its faculty.

24.1.10. The term "hostile environment" means a situation in which there is harassing conduct based on a legally protected status that is severe, persistent, or pervasive enough to create a work or educational environment that a reasonable person similarly situated would consider intimidating or abusive. The determination of whether an environment is "hostile" must be based on all of the circumstances, which may include the frequency of the conduct, the nature and severity of the conduct, whether the conduct was physically threatening or humiliating, and the mental or emotional effect of the conduct on the individual subjected to the alleged illegal discrimination, sexual harassment and/or related retaliation. Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality or policy violation.

24.1.11. The term "**incapacitation**" means the physical and/or mental inability to make informed, rational judgments. States of *incapacitation* include, but are not limited to, sleep, unconsciousness, and brownouts and blackouts (where an individual is awake but is not forming memories). Where alcohol or other drugs are involved, *incapacitation* is defined with respect to how the substance consumed impacts a person's decision-making capacity, awareness of consequences, and ability to make fully informed judgments.

24.1.12. The term "**investigation**" means the follow through on a complaint to ascertain details and circumstances associated with the complaint. *Investigations may* result in *charges*, a form of alternative dispute resolution, or dismissal of complaint. This determination is made at the sole discretion of the Dean of Student Life and/or designee.

24.1.13. The term "**may**" is used in the permissive sense.

24.1.14. The term "**member of the University community**" includes any person who is a *student, faculty member, staff, University official* or any other person employed by the *University or by a company contracted to provide services for the University.*

24.1.15. The term "**organization**" means any number of people who meet any single or combination of the following criteria:

- belong to a group whose members are primarily Texas A&M University *students* including but not limited to academic, athletic, recreational,

religious, performance, political, and social or similar groups, and/or

- have complied with the formal requirements for *University* recognition, and/or
- are advised by a *University official* whose position description designates them as an advisor, and/or
- are advised by a *University official* who has volunteered as an advisor, and/or
- live in close proximity to, for example, residence hall floors or wings, Corps outfit, Corps unit or Corps Special Activity, and/or
- are otherwise considered by the *University* to be an *organization*.

24.1.16. The term "retaliation" means any adverse action taken against a person for making a good faith report of a violation of Texas A&M System policies, university rules, student rules, and/or the law, or for participating in any proceeding related to the investigation or resolution of such report. Retaliation includes threatening, intimidating, harassing, coercing or any other conduct that would discourage a reasonable person from engaging in activity protected under this policy. Retaliation may be present even where there is a decision of "unsubstantiated," "insufficient information to substantiate," "not responsible," and/or "not guilty" on the allegations. Retaliation does not include good faith actions lawfully pursued in response to a report. Violation of an interim, remedial, or protective measure will be considered retaliation.

24.1.17. The term "**sanction**" includes responses or requirements given by the *University* to a *student* during a *conference* in response to a violation of a *rule*. *University sanctions* include all items listed in Section 27 of this Student Conduct Code.

24.1.18. The term "**shall**" is used in the imperative sense.

24.1.19. The term "**staff**" means any person who is employed by the *University* that is not defined as *faculty.*

24.1.20. The term "**student**" includes all persons who have accepted their offer of admission, and/or who are taking courses at the *University*, either full-time or part-time, pursuing undergraduate, graduate, or professional studies and who are either currently enrolled or were enrolled the previous semester and registered for a future semester. Persons who withdraw after allegedly violating the Student

Conduct Code, or who are not officially enrolled for a particular term but who have a continuing relationship with the *University* are considered *students*. In addition, persons who are living in University residence halls and apartments, although not enrolled in this *institution*, are also considered "*students*", for the purpose of enforcing this code.

24.1.21. The term "**Student Conduct Administrator**" means a *University official* authorized by the *Vice President for Student Affairs* or designee to collect information, to initiate *charge* letters, articulate *charges* in conferences, present information to support *charge*s, to conduct *conferences*, and to impose *sanctions* upon any *student(s)* found to have violated the Student Conduct Code. The Vice President for Student Affairs or designee may authorize a *Student Conduct Administrator* to serve simultaneously as a *Student Conduct Administrator* as the sole member, or one of the members of a *Student Conduct Panel*.

24.1.22. The term "**Student Conduct Panel**" means any person or persons authorized by the *Vice President for Student Affairs* or  designee to determine whether a *student* has violated the Student Conduct Code and to determine *sanctions* that *may* be imposed when a *rule* violation has been committed (or found responsible).

24.1.23. The term "**rule**" encompasses those behavior expectations contained in, but not limited to, the Student Rules, Residence Hall handbook, University Apartment Handbook, the Standard of the Corps of Cadets, and the University Computer Use and Resource Rules. These rules should be read broadly and are not designed to define prohibited conduct in exhaustive terms.

24.1.24. The term "**university**" or "**institution**" means Texas A&M University.

24.1.25. The term "**University official**" means any person employed by the *University* to perform assigned administrative or professional responsibilities or who is otherwise considered by the *University* to be a *University official*.

24.1.26. The term "**University premises**" includes all land, buildings, facilities, and other property in the possession of or owned, leased, operated, supervised, used or controlled by the *University* (including adjacent streets and sidewalks)

24.1.27. The **Vice President for Student Affairs** is that person designated by the *University* President to be responsible for the administration of the Student Conduct Code. The Vice President for Student Affairs *may* assign a designee to meet these responsibilities.

24.2 Student Conduct Authority

24.2.1. The Vice President for Student Affairs or designee *shall* develop procedures for the administration of the student conduct system and for the implementation of Student Conduct Conferences that are consistent with provisions of the Student Conduct Code.

24.2.2. The Vice President for Student Affairs or designee *shall* determine the composition of *Student Conduct Panel*(s) and determine which *Student Conduct Panel*, *Student Conduct Administrator* and Appeal Panel *shall* be authorized to hear each matter.

24.2.3. Decisions made by a *Student Conduct Panel* and/or *Student Conduct Administrator  shall* not be final until the appeal processes have been exhausted, waived, or time has expired.

24.3. Jurisdiction of the Student Conduct Code

The Student Conduct Code *shall* apply to conduct that occurs on *University premises* and/or at *University* sponsored activities or any other activity which adversely affects the *University* community and/or the pursuit of its objectives (mission). This action *may* be taken for either affiliated or non-affiliated activities.

The *University may* take action in situations occurring off *university premises* involving: student misconduct demonstrating flagrant disregard for any person or persons; or when a *student*'s or student *organization*'s behavior is judged to threaten the health, safety, and/or property of any individual or group; and/or when a student's sexual harassment of a *Member of the University Community* occurring off campus creates a hostile environment on campus. Using the Vice President for Student Affairs' discretion, the Vice President for Student Affairs or designee *shall* decide whether the Student Conduct Code *shall* be applied to conduct occurring off campus, on a case by case basis.

This Student Conduct Code applies at all locations of the *University*, except those campuses who write their own student conduct code.

24.4 Rules and Regulations

Conduct standards at the *University* are set forth in writing in order to give *students* general notice of prohibited conduct. These rules should be read broadly and are not designed to define prohibited conduct in exhaustive terms.

Any *student* found to have committed or to have attempted to commit the following misconduct is subject to the disciplinary *sanctions* outlined in Section 27. It *shall* not be a defense that a *University official*, student leader or other person authorized the behavior in question:

24.4.1. **Dishonesty.** Acts of dishonesty, including but not limited to the following:

- Withholding material information from the *University*, misrepresenting the truth during a *University investigation* or student conduct conference, and/or making false statements to any *University officials* or law enforcement officers in the course of their duties.
- Furnishing false information to and/or withholding information from any *University official*, *faculty member*, office, or law enforcement officers in the course of their duties.
- Forgery, alteration, possession, or misuse of any *University* document, record, or instrument of identification.
- The submission of false information at the time of admission or readmission is grounds for rejection of the application, withdrawal of any offer of acceptance, cancellation of enrollment, dismissal or other appropriate disciplinary action.

24.4.2. **Harassment.** Behavior that is severe, pervasive or persistent to a degree that a reasonable person similarly situated would be prevented from accessing an educational opportunity or benefit. This behavior includes, but is not limited to, verbal abuse, threats, intimidation, and coercion. In addition, harassment *may* be conducted by a variety of mediums, including but not limited to, physical, verbal, graphic, written, or electronic.

24.4.2.1. **Sexual Harassment.** Unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal or physical conduct of a sexual nature constitutes sexual harassment when this conduct is so severe, persistent, or pervasive that it explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work or educational performance, or creates an intimidating or hostile work or educational environment. Unwelcome means that an individual did not request or invite it and a reasonable person similarly situated would consider the conduct to be undesirable or offensive. Submission to the conduct or failure to complain does not always mean that the conduct was welcome. Sexual harassment may be quid pro quo ("this for that") or may constitute a hostile environment. Sexual harassment includes non-consensual sexual contact, sexual abuse, sexual exploitation, stalking, dating violence, and domestic violence when based on sex. The University will use a reasonable person standard to determine these elements.

Sexual harassment occurs when a person is the recipient of conduct of a sexual nature where:

- Submission to or toleration of such conduct is made either explicitly or implicitly a term or condition of an individual's education (including co-curricular activities) or employment;
- Submission to or rejection of such conduct by an individual is used as the basis for academic, co-curricular, or employment decisions affecting the individual's welfare; or
- Such conduct that has the purpose or effect of unreasonably interfering with an individual's welfare, academic or work performance, or creates an intimidating, hostile, offensive or demeaning education (including co-curricular activities) or work environment. Sexual harassment also includes sexual misconduct.

24.4.2.2. **Racial and Ethnic Harassment.** (See Racial and Ethnic Harassment, Sec. 31)

24.4.2.3. **Stalking.** Engaging in a course of conduct directed at a specific person that would cause a reasonable person to:

(a) fear for the person's safety or the safety of others; or

(b) suffer substantial emotional distress.

For the purposes of this rule:

(a) *Course of conduct* means two or more acts, including, but not limited to, acts in which the individual directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

(b) *Reasonable person* means a reasonable person under similar circumstances and with similar identities to the victim.

(c) *Substantial emotional distress* means significant mental suffering or anguish that may, but does not necessarily, require medical or other professional treatment or counseling.

24.4.3. **Physical abuse.** Any attempt to cause injury or inflict pain; or causing injury or inflicting pain. Also causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. It is not a defense that the person, group, or *organization* against whom the physical abuse was directed consented to, or acquiesced to, the physical abuse.

The physical abuse *rule* is not intended to prohibit the following conduct:

- Customary public athletic events, contests, or competitions that are sponsored by the *University* or the organized and supervised practices associated with such events; or
- Any activity or conduct that furthers the goals of a legitimate educational curriculum, a legitimate extracurricular program or a legitimate military training program as defined and approved by the *University*.

24.4.3.1 **Domestic abuse/violence**. Physical abuse by one or more parties in a domestic relationship against one or more parties in that domestic relationship (see "domestic violence" in definitions; see 24.4.3 Physical Abuse).

24.4.3.2 **Dating abuse/violence**. Physical abuse by one or more parties in a dating relationship against one or more parties in that dating relationship (see "dating violence" in definitions; see 24.4.3 Physical Abuse).

24.4.4. **Theft/Damages.**

24.4.4.1. **Theft**. Unauthorized removal or stealing and/or attempted removal or stealing of property of a *member of the University community* or other personal or public property, on or off campus. This includes knowingly possessing such stolen property. This also includes theft of services and/or misuse of another's property including, but not limited to, unauthorized use of another's property, unauthorized selling of subsidized tickets, and use of a forged parking permit.

24.4.4.2. **Damages.** Behavior that destroys, damages, or litters any property of the *University*, of a *University* community member, of another institution, or of another person, on or off campus (as permitted in section 24.3.) is prohibited under this *rule*.

24.4.5. **Hazing.** Any act that endangers the mental or physical health or safety of a *student*, or that destroys or removes public or private property; and/or assisting, directing, or in any way causing others to participate in degrading behavior and/or behavior that causes ridicule, humiliation, or embarrassment; and/or engaging in conduct which tends to bring the reputation of the *organization*, group, or *University* into disrepute for the purpose of initiation, admission into, affiliation with, or as a condition for continued membership in a group or *organization*; or as part of any activity of a recognized student *organization*, student group, Corps of Cadets, Corps outfit, Corps unit, or Corps Special Activities. Previously relied upon "traditions," (including Corps, fraternity/sorority, or any other group or

*organization* activity, practice or tradition) intent of such acts, or coercion by current or former student leaders of such groups, or former students will not suffice as a justifiable reason for participation in such acts. It is not a defense that the person (or group) against whom the hazing was directed consented to, or acquiesced to, the behavior in question.

Examples of such behavior include but are not limited to:

- Misuse of authority by virtue of one's class rank or leadership position.
- Striking another *student* by hand or with any instrument.
- Any form of physical bondage of a *student*.
- Taking of one or more *students* to an outlying area and dropping them off.
- Causing a *student* to violate the law or a *University rule* such as indecent exposure, trespassing, violation of visitation, etc.
- Any form of "quadding."
- Having firsthand knowledge of the planning of such activities or firsthand knowledge that an incident of this type has occurred and failing to report it to appropriate *University officials* (The Dean of Student Life and/or the University Police Department) is also a violation under this section.

*Students* who are recipients and/or victims of hazing (and who have not perpetrated hazing behavior on others involved in the fact pattern for which they are reporting) and who report the activities to the Dean of Student Life and/or the University Police Department, will not be charged with a violation of the hazing *rule*.

The hazing *rule* is not intended to prohibit the following conduct:

- Customary public athletic events, contests, or competitions that are sponsored by the *University* or the organized and supervised practices associated with such events; or
- Any activity or conduct that furthers the goals of a legitimate educational curriculum, a legitimate extracurricular program or a legitimate military training program as defined and approved by the *University*.

Hazing is also a violation of Texas state law. See the Texas Education Code, sections 37.151 and 51.936 and/or Appendix VI of the Student Rules.

24.4.6. **Failure to comply.** Failure to comply with proper and lawful direction of any *University official* or law enforcement officer.

> 24.4.6.1. **Evading**. Intentionally fleeing from a *University official* or law enforcement officer when the person knows or reasonably should have known the *University official* or law enforcement officer is attempting to confront, arrest, or detain.

24.4.7. **Failure to present identification.** Failure to provide identification upon the request of a *University official*.

24.4.8. **Breaching safety or security**. This includes but is not limited to: Unauthorized access to *University* facilities; unauthorized entry to or use of *University premises*; intentionally damaging door locks; unauthorized possession of *University* keys or access cards; duplicating *University* keys or access cards; or propping open of exterior residence hall or other campus building doors; tampering with fire safety equipment such as fire extinguishers, smoke detectors, alarm pull stations, gas detectors, or emergency exits; unauthorized entry into another person's or entity's residence, vehicle, or business.

24.4.9. **Violation of published University rules.** Violation of any *University* policy, *rule*, or regulation published in hard copy or available electronically on the *University* website. Such rules include, but are not limited to, Department of Residence Life contracts and rules, Corps of Cadets rules, *University* motor vehicle rules, rules relating to the use of student identification cards, entry and use of *University* facilities and dining hall conduct.

24.4.10. **Violation of NCAA Regulations.** Violations of any NCAA regulations.

24.4.11. **Violation of law.** Violation(s) of any federal, state or local law.

24.4.12. **Drugs.** The act of using, possessing, being under the influence of, manufacturing, or distributing illegal drugs or illegally obtained/possessed controlled substances is prohibited. Abusing legally obtained drugs by failing

to take the drug as directed. Except as expressly permitted by law, use, possession, manufacturing, or distribution or being a party thereto of marijuana, heroin, narcotics, or other controlled and/or prescribed substances and/or drug paraphernalia and/or dangerous drug is also prohibited. Individuals may not operate a motor vehicle or another form of transportation while under the influence of drugs or while intoxicated.. (See **Appendix VII, Texas A&M University Drug Rules (http://student-rules.tamu.edu/append7)** )

24.4.13. **Alcohol.** Alcohol use, possession, manufacturing, or distribution of alcoholic beverages (except as expressly authorized by *University* regulations), is prohibited on Texas A&M *University premises* and *University* sponsored events. In addition, use, possession, or distribution of alcohol beverages while driving or riding in or on a vehicle on *University premises* is prohibited. Alcoholic beverages may not, in any circumstance, be used by, possessed by, or distributed to any person under twenty-one (21) years of age. Individuals may not be in a state of public intoxication or drunkenness. Individuals may not operate a motor vehicle or another form of transportation while intoxicated or while under the influence of alcohol (See **Appendix VIII, Texas A&M University Alcohol Rules (http://student-rules.tamu.edu/append8)**).

24.4.14. **Weapons and explosives.** Illegal or unauthorized use, possession of fireworks or explosive, other weapons, or dangerous chemicals on *University premises* or at any *University*-sponsored activity or use of any such item, even if legally possessed, in a manner that harms, threatens or causes fear to others is prohibited. Illegal or unauthorized use or storage of any weapon. The term weapon may be defined as any object or substance designed to inflict a wound, cause injury or pain, or to incapacitate. Weapons may include, but are not limited to, all firearms, pellet guns, tasers, stunguns, slingshots, martial arts devices, switchblade knives and clubs.

24.4.15. **Disruptive activity.** Disruption or obstruction of teaching, research, administration, or other *University* activities (including public-service functions on or off campus) or of other authorized non-*University* activities when conduct occurs on *University premises*. Such activities *may* include, but are not limited to:

- Leading or inciting others to disrupt scheduled and/or normal activities on *University premises*.
- Classroom behavior that seriously interferes with either (a) the *faculty member*'s ability to conduct the class or (b) the ability of other *students* to profit from the instructional program. (See Texas A&M University Rule on **Classroom Behavior, section 21 (http://student-rules.tamu.edu/rule21)** of this publication.)
- Any behavior in class or out of class, which for any reason interferes with the class work of others, involves disorder, or otherwise disrupts the regular and essential operation of the *University*.
- Activity or conduct that violates the Texas A&M University Rules on Freedom of Expression (See **Appendix XI (http://student-rules.tamu.edu/append11)**).

24.4.16. **Traffic obstruction.** Obstruction of the free flow of pedestrian or vehicular traffic on *University premises* or at *University*-sponsored or supervised activities.

24.4.17. **Disorderly conduct.** Public behavior that is disruptive, lewd, or indecent; breach of peace; or aiding, or procuring another person to breach the peace on University premises or at functions sponsored by the *University* or participated in by members of the *University* community.

24.4.18. **Unauthorized recording**. Any unauthorized use of electronic or other devices to make an audio, video, still frame or photographic record of any persons without their prior knowledge, or without their effective consent when the person or persons being recorded have a reasonable expectation of privacy and/or such recording is likely to cause injury or distress. This includes, but is not limited to, surreptitiously taking pictures of another person in a gym, locker room, or restroom or recording administrative meetings with *University officials*. If a recording is made that captures a violation of the Student Rules or law, the *Student Conduct Administrator may* elect not to enforce this section of the Student Rules against the *student* making the recording.

24.4.19. **Misuse of Computing Resources.** Failure to comply with *University* regulations and policies, license agreements, and contracts governing network, software and hardware use; abuse of communal resources; use of computing resources for unauthorized commercial purposes or personal gain; failure to protect your password or use of your account; breach of computer security, harmful access or invasion of privacy. Misuse and/or other abuse of computer facilities and resources including, but not limited to:

- Use of another individual's identification and/or password.
- Use of computing facilities and resources to send obscene or threatening messages.
- Use of computing facilities and resources in violation of copyright laws.

(see Appendix V, Individual Responsibility for Use of Computing Resources)

24.4.20. **Sexual Misconduct.**

24.4.20.1. **Sexual abuse.** Sexual abuse is the oral, anal, or vaginal penetration by a sexual organ of another, use of another's sexual organ for oral, anal, or vaginal penetration, or anal/vaginal penetration by any means against the victim's will or without the victim's *consent* (see "consent" in definitions). An individual who is mentally incapacitated, unconscious, or unaware that the sexual abuse is occurring is considered unable to give *consent*. The type of force employed *may* involve physical force, coercion, intentional impairment of an individual's ability to appraise the situation through the administering of any substance, or threat of harm to the victim. (see **Sexual Violence Response Protocol (https://studentlife.tamu.edu/sas.svp)** . Offices of the Dean of Student Life).

24.4.20.2. **Sexual contact.** Attempting or making sexual contact, including but not limited to inappropriate touching or fondling, without the person's *consent* (see "consent" in definitions), or in circumstances where the person is physically, mentally or legally unable to give *consent*.

24.4.20.3. **Sexual exploitation**. Taking non-consensual or abusive advantage of another individual that is sexual in nature for one's own advantage or benefit, or to the benefit or advantage of anyone other than the one being exploited. For example, sexual exploitation could include such actions as secretly videotaping sexual activity, voyeurism, sexually-based stalking, invasion of sexual privacy, and knowingly transmitting a sexually transmitted infection to another person.

Examples of such behavior include but are not limited to:

- Soliciting sexual contact with an individual in person or online who is or represents his or herself to be under the age of 14, or under the age of 17 and more than 3 years younger than the soliciting party, or an individual whom the soliciting party believes to be under the age of 14, or under the age of 17 years and more than 3 years younger than the soliciting party;
- Knowingly possessing, creating, distributing, and/or viewing material which includes sexual images of one or more individuals under the age of 18;
- Engaging in voyeurism;
- Prostituting another person;
- Exposing an individual's anus or any part of an individual's genitalia in a manner that is reckless about whether another individual is present who will be offended or alarmed;
- Permitting third parties to observe sexual activity without the knowledge of and/or *consent* of any party involved in the sexual activity;
- Electronically recording or transmitting images or sounds of another person or persons engaging in sexual activity without knowledge and *consent*;
- Knowingly putting another person at risk and/or knowingly transmitting a sexually transmitted infection to another person or persons without their knowledge.

24.4.21. **Animal Cruelty.** Intentionally, knowingly, or recklessly torturing or in a cruel manner killing or causing serious bodily injury to an animal, failing to provide necessary food, water or care for an animal in the person's custody, abandoning unreasonably an animal in the person's custody, transporting or confining an animal in a cruel manner, causing bodily injury to any animal without the owner's *consent*, causing one animal to fight with another animal, or seriously overworking an animal. Intentionally, knowingly, or recklessly attacking, injuring or killing an assistance animal or inciting another to attack, injure or kill an assistance animal.

This policy is not intended to prohibit:

- Killing or injuring an animal within the scope of a person's employment or furthering the goals of legitimate educational curriculum as designed and approved by the *University*.
- Killing or injuring an animal when the actor had a reasonable fear of bodily injury to self or other person by that animal.

24.4.22. **Reckless driving**. Driving in a manner that recklessly endangers the health and/or safety of oneself or others.

24.4.23. **Abuse of process**. Abuse of the student conduct, disciplinary and/or legal processes including, but not limited to, *investigations*, *conferences*, and appeals. Prohibited behavior includes, but is not limited to:

- Failure to obey the notice from a *Student Conduct Panel*, *Student Conduct Administrator*, and/or *University official* to appear for a meeting or *conference* as part of an official *University* disciplinary process.
- Falsification, distortion, or misrepresentation of information.
- Disruption or interference with the orderly conduct of an *investigation*, *conference*, or an appeal process.
- Intentionally initiating or causing to be initiated any false report.
- Attempting to discourage an individual's proper participation in, or use of, a student conduct, disciplinary, or legal process.
- Attempting to influence the impartiality of a member of a *Student Conduct Panel* prior to, and/or during the course of, the *Student*

*Conduct Panel* proceeding.

- Verbal or physical intimidation, and/or retaliation of any party to the Student Conduct proceeding prior to, during, and/or afterwards.
- Committing a violation of *University* rules while serving a conduct probation, conduct review, or deferred suspension status or failing to meet deadlines imposed in accordance with *University* rules.
- Failure to abide by the terms of *University* administered *sanctions*.
- Influencing or attempting to influence another person to commit an abuse of the Student Conduct Code system.

24.4.24. **Complicity.** Attempting, aiding, abetting, conspiring, hiring or being an accessory to any act prohibited by this code *shall* be considered to the same extent as completed violations.

24.5. **Bias-Related Violations**–Violations of 24.4 of this Student Conduct Code that are motivated by prejudice toward a person or group because of factors such as race, religion, ethnicity, disability, national origin, age, gender or sexual orientation *may* be assessed an enhanced *sanction* as prescribed in section 27 of this publication.

24.6. **Violations of Law and University Discipline**

The focus of inquiry in student conduct proceedings *shall* be the determination of whether a violation of University rules occurred. Student conduct proceedings *shall* be informal in nature and need not comply with the formal processes associated with the criminal and civil courts, nor *shall* deviations from prescribed process necessarily invalidate a decision or proceeding unless significant prejudice to the *student* or *University may* result.

Standards outlined by the *University* for *students may* be higher than those standards set for the general population. As each person is subject to multiple layers of expectations through the Federal, State, County and local governments, *students* are further expected to maintain a higher standard of behavior as members of the *University* community. *Students* failing to adhere to those standards *may* be subject to a University conduct process in addition to civil or

criminal litigation should the behavior also be a potential violation of the law. The attempted analogy of student discipline to criminal proceedings against adults and juveniles is not sound.

*Students may* be charged with conduct that potentially violates both the criminal law and this Student Conduct Code (that is, if both possible violations result from the same factual situation) without regard to the pendency of civil or criminal litigation in court or criminal arrest and prosecution. Proceedings under this Student Conduct Code *may* be carried out prior to, simultaneously with, or following civil or criminal proceedings off campus at the discretion of Vice President for Student Affairs or designee.

Determinations made or *sanctions* imposed under this Student Conduct Code *shall* not be subject to change because criminal *charges* were dismissed, reduced, or resolved in favor of or against the criminal law defendant.

When a *student* is charged by federal, state, or local authorities with a violation of law, the *University* will not request or agree to special consideration for that individual because of that individual's status as a *student*. If the alleged offense is also being processed under the Student Conduct Code, the *University may* advise off-campus authorities of the existence of the Student Conduct Code and of how matters are typically handled within the *University* community. The *University* will attempt to cooperate with law enforcement and other agencies in the enforcement of criminal law on campus.

**Propose a Student Rule Revision (http://student-rules.tamu.edu/propose/revision/?title=Student Conduct Code&section=)**

# CONNECT WITH US

## Dean of Student Life

### Division of Student Affairs

1256 TAMU
College Station, TX 77843-1256

(979) 845-4728
(979) 845-3320 fax
**vpsa@tamu.edu
(mailto:vpsa@tamu.edu)**

## Quick Links

- **Aggie Honor System Office (http://aggiehonor.tamu.edu/)**
- **Student Conduct Office (http://studentlife.tamu.edu/scrs/)**
- **TAMU Rules (http://rules.tamu.edu/)**
- **TAMU System Policies (http://tamus.edu/offices/policy/)**

**State of Texas (http://www.texas.gov/)**          **Statewide Search (https://www.tsl.texas.gov/trail/index.html)**

**Policy
lishingext.dir.texas.gov/portal/internal/resources/DocumentLibrary/State%20Website%20Linking%20and%20Privacy%20**

**Site Policy (http://www.tamu.edu/statements/index.html)**          **Open Records (http://openrecords.tamu.edu)**

**Texas Veterans Portal (http://veterans.portal.texas.gov/)**

**Texas CREWS (PDF) (http://www.tamu.edu/statements/TAMU-CREWS.pdf)**

**Webmaster (mailto:help@dsa.tamu.edu)**

**Give to Student Affairs (http://studentaffairs.tamu.edu/giving-2/)**

Copyright 2019 • Student Rules | Texas A&M University • All Rights Reserved. • Hosted by **Division of Student Affairs Department of IT (http://doit.tamu.edu)**


# UNIVERSITY RULE

**08.01.01.M1        Prohibited Conduct: Discrimination, Harassment, Complicity, and Related Retaliation based on a Protected Characteristic**

*Approved February 29, 2012*
*Revised September 16, 2016*
*Revised August 5, 2019*
*Next scheduled review: August 5, 2024*

---

## Rule Summary

---

Six core values are at the heart of what Texas A&M University is all about: loyalty, integrity, excellence, leadership, respect and selfless service. Consistent with these values, the University reaffirms its commitment to providing a safe and non-discriminatory learning, living, and working environment for all members of the University community.

Texas A&M University bars Students, Employees and Third Parties from engaging in discrimination and/or harassment on the basis of race, color, sex, gender identity, age, religion, disability, national origin, sexual orientation, genetic information or veteran status. In addition, acting in complicity with another who engages in any of these forms of Prohibited Conduct, or retaliating against a person who participates in protected activity, is also prohibited.

---

## Definition of Prohibited Conduct

---

**Prohibited Conduct** under this Rule includes discrimination, harassment (including non-consensual sexual contact, sexual assault, sexual exploitation, dating abuse/violence, domestic abuse/violence, stalking, quid pro quo and hostile environment sexual harassment), complicity, and retaliation.

---

## Official Rule/Responsibilities

---

1.      RULE AGAINST PROHIBITED CONDUCT

    1.1      Students, University Employees and Third Parties shall not engage in Prohibited Conduct, including acting in complicity with another who engages in Prohibited Conduct, or

---

retaliating against a person who reports or participates in the reporting or investigation of Prohibited Conduct.

1.2     This Rule applies to all University 1) Students, 2) Employees, including all full-time and part-time faculty[1], full-time and part time staff, temporary employees, professional research staff, and post-doctoral fellows ("Employees"); and, 3) contractors, vendors, visitors, volunteers, guests or other third parties ("Third Parties").

1.3     This Rule applies to acts of "Prohibited Conduct" committed by Students, Employees or Third Parties when:

(a) The conduct occurs on University grounds or other property owned or controlled by the University;

(b) The conduct occurs in the context of a University employment or education program or activity, including, but not limited to, University-sponsored study abroad, research, on-line, or internship programs; or

(c) The conduct occurs outside the context of a University employment or education program or activity but creates a hostile environment for Students, Employees, or Third Parties while on University grounds or other property owned or controlled by the University or in any University employment or education program or activity. The Assistant Vice President and Title IX Officer or designee shall decide whether this Rule shall be applied to such conduct on a case by case basis. The decision of the Assistant Vice President and Title IX Officer is final and unappealable.

1.4     Some conduct, while inappropriate, does not rise to the level of Prohibited Conduct. These behaviors will be addressed by the appropriate disciplinary authority (e.g., Department Head, Student Conduct, Human Resources, etc.) under rules or regulations other than this rule.

1.5     This Rule applies to all reports of Prohibited Conduct received by the University on or after (the effective date).

2.     <u>REPORTING OBLIGATIONS</u>

Except for (1) employees identified as *Confidential Employees* in this Rule, and/or (2) employees who have received a reporting exemption from the Office of Risk, Ethics, and Compliance (OREC) for IRB-approved research, all other TAMU Employees who experience, observe, or become aware of Prohibited Conduct must promptly report all known information, including the identities of witness and involved parties, to the University as set forth below. Students workers are not required to report Prohibited Conduct if the student worker experiences, observes or becomes aware of the Prohibited Conduct outside the context of their student worker employment. Employees who become aware of Prohibited Conduct should advise the reporter (1) that they cannot keep reports of Prohibited Conduct confidential, and (2) that they are required to report the Prohibited Conduct to the University. Students, staff, and faculty should be aware that sharing information about Prohibited Conduct with an employee of the University, other than an employee

---

[1] Although they are not employees, affiliated faculty will be treated as faculty for the purpose of this rule and 08.01.01.M1.01

identified as a Confidential Employee in this Rule, will result in that employee sharing the information with an appropriate University official for review and investigation.

Students and Third Parties are strongly encouraged (but not required) to report Prohibited Conduct.

Allegations of sexual or gender-based harassment, sexual assault, sexual exploitation, nonconsensual sexual contact, stalking, domestic violence or dating violence disclosed to Confidential Employees will not be reported to the University, except as required by law. For example, licensed healthcare providers at the Student Health Services report de-identified statistics regarding this conduct to the University in compliance with the Clery Act.

Confidential Employees are available to support both Complainants and Respondents.

2.1     Reporting to the University

Reports that a Student, Employee or a Third Party has engaged in Prohibited Conduct should be made to the Department of Civil Rights and Equity Investigations (CREI), as follows:

Jennifer Smith
Assistant Vice President and Title IX Officer
Medical Sciences Library
202 Olsen Blvd, Suite 007
College Station, TX  77843
(979) 458-8407
civilrights@tamu.edu

Reports that the Texas A&M President, or an employee who reports directly to the President, has engaged in Prohibited Conduct should be made to the Texas A&M System Ethics and Compliance Office, as follows:

Texas A&M System Ethics and Compliance Office
301 Tarrow, 6th floor
College Station, TX 77843
(979) 458-6120
Civilrightsreporting@tamus.edu

2.2     Additional Options for Reporting to the University

(a) Individuals wishing to submit an anonymous report may do so through *Tell Somebody*, an electronic reporting option. Anonymous reporting may limit the University's ability to respond to the allegation.

Individuals may, but are not required to, report Prohibited Conduct to their direct supervisor, who should immediately report the information to CREI, as follows:

Jennifer Smith
Assistant Vice President and Title IX Officer
Medical Sciences Library
202 Olsen Blvd, Suite 007
College Station, TX 77843
(979) 458-8407
civilrights@tamu.edu

2.3    Reporting to Law Enforcement

Notwithstanding the mandatory reporting requirement for employees in this section 2, anyone may report matters which they believe are criminal to the appropriate local law enforcement agency.  A Complainant may request assistance from CREI in notifying law enforcement authorities and always has the right to decline to notify law enforcement.

**A report to law enforcement, even to the University Police Department (UPD), is separate from a report to the University under this Rule**. An individual wishing to simultaneously pursue a law enforcement investigation and a University resolution of Prohibited Conduct should make a report to both entities.

2.4    Employees receiving a report under this Rule may not disclose the identity of the Complainant to any law enforcement authority unless:
      (a) expressly authorized by the Complainant;
      (b) imminent threat to health or safety exists; or
      (c) required by law.

2.5    Although a report of Prohibited Conduct may be made at any time, regardless of when the alleged conduct occurred, a report should be filed as soon as possible after the action that caused the report. Prompt reporting assists investigators in the collection and preservation of evidence.

2.6    Individuals may file a complaint at any time with any local, state or federal civil rights office, including, but not limited to, the Equal Employment Opportunity Commission, the Texas Workforce Commission's Civil Rights Division, the U.S. Department of Education's Office of Civil Rights and the U.S. Department of Justice.

2.7    The filing of a complaint will not stop, delay, or affect pending personnel or disciplinary actions.  This includes, but is not limited to, performance evaluations or disciplinary actions related to an employee or student who is not performing at acceptable levels or standards or who has violated System policies, regulations, or University rules.

2.8    When a student reports, in good faith, experiencing or witnessing an incident of sexual harassment, sexual assault, sexual exploitation, dating abuse/violence, domestic abuse/violence, or stalking, the University will not take disciplinary action against that student for violations of the Student Conduct Code occurring at or near the time of the incident reported.  The University may, however, investigate to determine whether a report of an incident of sexual harassment, sexual assault, sexual exploitation, dating

abuse/violence, domestic abuse/violence, or stalking was made in good faith. The amnesty given in this section does not apply to a student who reports the student's own commission or complicity in the commission of sexual harassment, sexual assault, dating abuse/violence, domestic abuse/violence, or stalking. The decision to grant or deny amnesty is final and cannot be appealed or revoked.

3.    UNIVERSITY RESPONSE TO REPORTS OF PROHIBITED CONDUCT

The University's response to allegations of Prohibited Conduct will be 1) prompt and equitable; 2) intended to stop and prevent the recurrence of any harassment; and 3) intended to remedy its discriminatory effects, as appropriate. A substantiated allegation of prohibited conduct will result in disciplinary action, up to and including termination of employment or separation from the University. Third Parties who commit Prohibited Conduct may have their relationships with the University terminated and/or their privileges of being on University premises withdrawn.

The procedures for responding to allegations of Prohibited Conduct committed by Students, Employees and

Third Parties are detailed in SAP *08.01.01.M1.01, Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third-Parties*.

4.    WHERE THE RESPONDENT HAS MULTIPLE ROLES AT THE UNIVERSITY: If the Respondent has multiple roles, such as when the Respondent is both a student and an employee, the Chief Risk, Ethics, and Compliance Officer will consult with other relevant University Officials and then determine which procedure(s) to follow in the investigation and resolution of the allegations of Prohibited Conduct as well as other policy violations. The Chief Risk, Ethics, and Compliance Officer will consider the known facts and circumstances, including which role predominates in the context of the Prohibited Conduct.

## Related Statutes, Policies, or Requirements

System Policy 08.01 *Civil Rights Protections and Compliance*

System Regulation 08.01.01 *Civil Rights Compliance*

University SAP 08.01.01.M1.01, Investigation and Resolution of *Allegations of Prohibited Conduct Against Students,* Employees and Third-Parties

## Contact Office

**Department of Civil Rights and Equity Investigations**


# STANDARD ADMINISTRATIVE PROCEDURE

**08.01.01.M1.01**     **Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees, and Third Parties**
*Approved January 23, 2013*
*Revised August 6, 2019*
*Next scheduled review: August 6, 2024*

---

## SAP Statement

---

The purpose of this SAP is to identify the procedures the University will use when responding to reports or complaints of Prohibited Conduct against students, employees, or third parties.

---

## Definitions

---

The definitions from *TAMU Rule 08.01.01.M1*, including the definition of "Prohibited Conduct," are incorporated by reference as if fully set forth herein.

---

## Procedures and Responsibilities

---

1.     ROLES AND RESPONSIBILITIES

    1.1     The **Department of Civil Rights and Equity Investigations (CREI)** has been designated to receive and investigate all reports alleging Prohibited Conduct against Students, Employees, and Third Parties. CREI is responsible for appointing the Investigative Authority.

        Reports that a Student, Employee or a Third Party has engaged in Prohibited Conduct should be made to CREI by contacting the **Assistant Vice President and Title IX Officer**, Medical Sciences Library, 202 Olsen Blvd, Suite 007, College Station, TX  77843.  Reports may also be made by calling (979) 458-8407 or emailing civilrights@tamu.edu.   The Assistant Vice President and Title IX

Officer's responsibilities include (1) overseeing the process of responding to allegations of Prohibited Conduct and (2) identifying and addressing any patterns or systemic problems that arise from the review of such complaints.

1.2    The **Investigative Authority (IA)** is one or more trained individuals appointed to conduct a formal investigation to discover and examine the facts related to an allegation. The IA may also draw conclusions as to whether, based on the preponderance of the evidence, an allegation is substantiated, unsubstantiated, or that there is insufficient information to substantiate. The IA may also draw conclusions as to whether or not any other regulations, codes, policies, rules or SAPS were violated.

1.3    The **Designated Administrator (DA)** reviews the Investigation Report, the documentary evidence, and any other relevant information and renders a written decision of responsibility based on the preponderance of the evidence as to 1) whether the conduct alleged occurred; and 2) whether each allegation has been substantiated, unsubstantiated, or that there is insufficient information to substantiate that Respondent violated Texas A&M System Regulation 08.01.01. The DA may also render a written decision as to whether other regulations, codes, policies, rules or SAPS were violated. If violation(s) are found, the DA may issue sanctions.

   1.3.1    The University's Chief Risk, Ethics, and Compliance Officer will appoint a **Hearing Officer** to be the DA for all allegations against students.

   1.3.2    The University's Chief Risk, Ethics, and Compliance Officer will appoint an individual to be the DA for all allegations against non-faculty Employees and Third Parties, except that the Chancellor or designee will serve as the DA for complaints against the Texas A&M President and for any employee who reports directly to the President.

   1.3.3    **The Dean of Faculties and Associate Provost** or designee will be the DA for all allegations against Faculty Employees, except that the President or designee will be the DA for allegations made against the Dean of Faculties and Associate Provost.

1.4    If the Complainant or the Respondent appeals the DA's decision, the **Appellate Authority (AA)** will review the Investigation Report, The DA's decision, the documentary evidence, and any other relevant information and render a written decision on the appeal.

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **2** of 24

### 1.4.1 Appeals of decisions based on allegations against Students:

The AA for appeals of decisions based on allegations against students is the University Disciplinary Appeals Panel (UDAP) and the appeal will follow the procedure outlined in *Section 6* below and *Student Rule 58*. UDAP may refer the appeal to the Dean of Student Life or designee.

### 1.4.2 Appeals of decisions based on allegations against Non-faculty Employees and Third Parties:

The AA for Non-faculty Employees and Third Parties will be the Vice President for the Division of Human Resources and Organizational Effectiveness or designee. The appeal will follow the procedure outlined below in *Section 6* below and *Texas A&M SAP 32.02.02.M0.02*.

### 1.4.3 Appeals of decisions based on allegations against Faculty:

The AA for Faculty Employees will be:
1) The **University Committee on Faculty Disciplinary Appeals (UCFD)** who will render an advisory opinion regarding the appeal to the Provost and Executive Vice President; and,
2) The Provost and Executive Vice President will render a final decision.

The appeal will follow the procedure outlined in *Section 6* below and in *University Rule 12, Faculty*.

1.5  All persons serving as DAs, AAs, and IAs, will receive annual training regarding the University's rules and procedures and the handling of civil rights investigations, including Title IX investigations. The IA will receive additional annual training in regards to conducting fair and impartial investigations, including trauma-informed investigation techniques and due process protections.

1.6  All persons serving as DAs, AAs, and IA's will be impartial and free of conflicts of interest. Parties who are concerned about the impartiality of an individual serving in one of these roles should submit their concerns, in writing, to the Chief Risk Ethics and Compliance Officer, who may designate alternative individuals to fulfill any of these roles. If the concern is in relation to the Chief Risk Ethics and Compliance Officer serving in one of the capacities, the Executive Vice President for Finance and Operations and CFO will have the option of designating a replacement.

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **3** of **24**

2. **PROCEDURES FOR INITIAL REVIEW AND PRELIMINARY ASSESSMENT OF REPORTS AND/ OR COMPLAINTS**

2.1    CREI will conduct an initial review of all reports and/or complaints of alleged Prohibited Conduct that are received by the University against Students, Employees, or Third-Party Respondents. The purpose of the review is to: 1) assess the safety and well-being of the Complainant, the Respondent, and the community, and 2) to determine whether a potential violation of Texas A&M System Regulation 08.01.01 or other University rule, SAP, code or policy could have occurred.  As part of the review, CREI will take the following steps:

Within five (5) business days of receiving a report or complaint, or as soon as reasonably practicable thereafter, CREI will attempt to meet with the Complainant to obtain more information about the allegations and to assess the safety and well-being of the Complainant, the Respondent and the community.  CREI will:

- Inform the Complainant about their rights, resources, and options (https://urc.tamu.edu/title-ix), including options for medical treatment, counseling, and other support services. Provide the Complainant with written information about University and community resources that individuals who experience Prohibited Conduct are entitled to receive regardless of whether they choose to pursue informal, formal, or criminal remedies.
- Inform the Complainant of their right to file a complaint with law enforcement (if applicable) in addition to filing a complaint with CREI. Inform the Complainant of their right to decline to contact law enforcement. Offer to assist the Complainant with notifying law enforcement if desired.
- Inform the Complainant of their right to file a complaint with state and federal agencies.
- In coordination and consultation with other University officials, offer the Complainant the opportunity to request interim supports, academic adjustments, and protective measures, as applicable. See *2.2* below.
- If applicable, advise the Complainant about the importance of preserving evidence that could assist in the investigation.
- Inform the Complainant about formal resolution under this SAP and solicit the Complainant's preferred method for resolving the matter.
- Inform the Complainant about the University's prohibition against retaliation.
- Offer to assist the Complainant in submitting a written complaint that details the nature and circumstances of the allegations, including the names of the Complainant(s) and the Respondent(s), if so inclined.

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **4** of 24

- If applicable, inform the Complainant of the right to use a pseudonym in University documents related to the complaint. *See Section 3.2 below.*
- Determine whether the Complainant is a minor, elderly, or disabled and, if required, contact the appropriate agency in accordance with Texas law.
- Consider whether requesting an interim suspension or interim restriction (for Student Respondents) or an interim administrative action such as a leave of absence (for Employees) would enhance the safety and well-being of the Complainant, the Respondent, or the University community. See *Section 8*.
- Report de-identified statistics in accordance with University policies for Clery Compliance purposes, if required.

2.2 **The University** offers a range of support services, academic adjustments, and protective measures to employees, students, and third parties. The purpose of these measures is to:

1) facilitate continued access to University employment, academic programs, and University activities;
2) stop and prevent the reoccurrence of Prohibited Conduct;
3) support the Complainant and the Respondent during the investigation and resolution process.

Contacts for obtaining information about counseling, medical, mental health, victim advocacy, visa and immigration information, impact of a leave of absence on student financial aid, and other services available to Complainants and Respondents (on campus and in the community) are available here:

Link to Resources, Rights & Options for Victims
Link to Resources, Rights & Options for Accused

Support services, academic adjustments, and protective measures may be available to both Complainants and Respondents on a temporary or permanent basis, subject to periodic review. These measures may include, but are not limited to: no-contact directives, academic accommodations (e.g., dropping a class or postponing a due date, for example), work schedule or location changes, transportation modifications, residential moves, and leaves of absence. These measures may be available regardless of whether a Complainant pursues a formal or informal remedy under this SAP. The University will maintain the privacy of a person receiving support services, academic adjustments, or protective measures provided under this SAP to the extent practicable and will promptly address any violation of the protective measures.

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **5** of **24**

Additionally, the University will notify the parties that options such as protective orders and criminal trespass warnings may be available through law enforcement agencies and the judicial system.

If a Complainant, Respondent, or other member of the University community has obtained a protective order, civil no-contact order, restraining order, or similar order from an appropriate court against another member of the University community, a copy of the order should be provided to the Chief Risk, Ethics, and Compliance Officer. In conjunction with the University Police Department (UPD) and other University officials, the Chief Risk, Ethics, and Compliance Officer will take all reasonable actions authorized by law to implement the order. For more information about how to obtain a protective order in the state of Texas, please consult: https://guides.sll.texas.gov/legal-forms/protective-orders.

The University will provide reasonable interim, remedial, and protective measures to Third Parties as appropriate and available, taking into account the role of the Third Party and the nature of any contractual relationship with the University.

2.3    Complainant may request a formal resolution of allegations of Prohibited Conduct or may request "no resolution" of the allegations of Prohibited Conduct.

(a)    The allegations will be considered for investigation pursuant to the procedures set forth in *Section 3* below. CREI reserves the right to resolve a complaint through no resolution rather than a formal investigation if the allegation does not rise to the level of Prohibited Conduct.

(b)    If the Complainant requests that no resolution of the allegations occur, the University will seek to honor the request whenever possible without impeding the University's ability to enhance the safety and security of the Complainant and the University community. CREI will consider the following factors when evaluating such requests:

    i.    All of the known circumstances, including any corroborating evidence;
    ii.    The nature and scope of the alleged conduct, including whether the reported behavior involves the use of a weapon;
    iii.    The respective ages and roles of the Complainant and Respondent;

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **6** of 24

iv. Whether there have been other reports of Prohibited Conduct or other misconduct by the Respondent;

v. Whether the report reveals a pattern of misconduct related to prohibited conduct (e.g. via illicit use of drugs or alcohol) at a given location or by a particular group;

vi. Fairness considerations for both the Complainant and the Respondent;

vii. Whether the University possesses other means to obtain relevant information and evidence;

viii. The University's obligation to provide a safe and non-discriminatory environment;

ix. Any admissions of responsibility by the Respondent, if any; and,

x. The impact of honoring the request on the Complainant and the University Community, including the risk of additional violence.

(c) If the University is able to honor the Complainant's request for no resolution, the University may close the matter with no action taken, or the University may proceed, with other appropriate steps, including investigation and disciplinary action against the Respondent for violations of other rules, SAPS, regulations, policies or codes, if applicable.

If the University determines that the Complainant's request cannot be honored, the Complainant will be notified of the decision, and CREI will take appropriate actions, including but not limited to: (1) offering support services or academic adjustments and imposing protective measures; and (2) initiating a formal investigation.

2.4 Within five (5) business days of the receipt of a report, or as soon as practicable thereafter, CREI may consult with the Texas A&M University System Office of General Counsel (OGC) as needed and make a preliminary determination about whether to conduct a formal investigation of the allegations. The preliminary determination may include, but is not limited to, the following:

(a) An assessment of whether there is sufficient known or obtainable information to proceed with an investigation of the complaint;

(b) An assessment of whether the allegations are baseless;

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **7** of **24**

(c)     An assessment of whether the allegations, if true, would constitute Prohibited Conduct; and/or

(d)     An assessment of whether a Complainant's request for no resolution may be honored.

If it is determined that there is insufficient information to proceed with an investigation; or that the allegations are baseless; or, that the allegations, if true, would not constitute Prohibited Conduct; or that an investigation will not occur due to Complainant's request for no resolution, CREI may, after consultation with OGC:

a.     Dismiss the complaint; or

b.     may refer the report to a different office at the University who may review the conduct and take disciplinary action against the Respondent for violations of other University rules, codes, regulations, policies, or SAPS, if applicable.

**2.5     If a complaint alleges conduct that may be Prohibited Conduct as well as a violation of one or more rules, SAPs, regulations, codes, or policies, CREI will consult with other University Officials, as appropriate, and coordinate procedures to utilize to resolve the allegations in addition to those required by this SAP. CREI may elect to resolve all the allegations in one proceeding under this SAP, or CREI may elect to refer one or more of the allegations to other university administrators for resolution apart from this SAP.**

3.     FORMAL INVESTIGATION OF COMPLAINTS

3.1     Once it has been determined that the University will proceed with a formal investigation, CREI will appoint the Investigative Authority (IA). The IA may include one or more appropriately trained investigators.

3.2     Within two (2) business days of the IA's appointment, the Assistant Vice President and Title IX Officer (or designee) shall simultaneously notify the Complainant(s) and Respondent(s) in writing of the commencement of the investigation. The notice will include: (1) the identity (or pseudonym, if requested and applicable) of the Complainant and the Respondent; (2) the date, time (if known), location, and nature of the alleged misconduct; (3) the regulation(s), policies(s), rules(s), SAP(s) or code(s) alleged to have been violated and a copy of this SAP; (4) the identity of and contact information for the IA; (5) the identity of the DA and AA; (6) an explanation of the prohibition against retaliation; (7) an instruction to the parties to preserve any potentially relevant evidence in any format; (8) information about the

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **8** of **24**

University's process for challenging the neutrality or bias of the IA, DA, or AA; and (9) a redacted copy of the written complaint, if any, with appropriate admonishments about privacy. If the Complainant has requested that a pseudonym be used in the University's paperwork, the Respondent will be verbally notified of the Complainant's name at the Respondent's intake meeting. The Notice will also include an assurance that the parties will be kept apprised of the status of the investigation and resolution process and provide a contact person for the party to contact for periodic update.

3.3    If the Respondent is an employee, the Assistant Vice President and Title IX Officer (or designee) shall also notify, in writing, the Respondent's department head that CREI is investigating an allegation that the Respondent has engaged in conduct that may be a violation of *Texas A&M System Regulation 08.01.01* or other University rules, SAPS, codes, or policies.

3.4    The IA will review the complaint, conduct a prompt, fair, thorough and impartial investigation, and provide a draft investigative report for OGC review within approximately thirty (30) business days from the issuance of the Notice of Investigation. Circumstances may warrant extensions to this timeframe.

3.5    Abuse of the investigation and resolution process is subject to disciplinary action up to and including dismissal or separation from the University. Examples of abuse of process include, but are not limited to:

    ☐ Failure to appear at a meeting, interview, hearing, or conference as set forth in a Notice issued by CREI
    ☐ Falsification, distortion, destruction, or misrepresentation of evidence or information
    ☐ Disruption or interference with the orderly conduct of an investigation, interview, meeting, hearing or conference
    ☐ Intentionally initiating or causing to be initiated a false report
    ☐ Attempting to discourage an individual's proper participation in, or use of, the investigation and resolution process, disciplinary process, or legal process
    ☐ Attempting to influence the impartiality of the IA, AA, or DA prior to, and/or during the course of, the investigation and resolution process
    ☐ Verbal or physical intimidation, and/or retaliation of any party to the investigation and resolution process prior to, during, and/or afterwards.
    ☐ Failure to abide by the terms of University administered sanctions.
    ☐ Influencing or attempting to influence another person to commit an abuse of the investigation and resolution process
    ☐ Failure to cooperate fully with the IA (applies to employees only)

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **9** of **24**

Students, Employees, and Third Parties who are found responsible for abuse of the investigation and resolution process are subject to the sanctions outlined in *Section 5 of this SAP*.

3.6     During the investigation, the Complainant and the Respondent will have an equal opportunity to be heard, to submit information and corroborating evidence, to identify witnesses who may have relevant information, and to submit questions to be asked of the other party.  Questions for the other party will be asked by and at the discretion of the IA. The IA will meet separately with the Complainant, the Respondent, and any witnesses, and will gather other relevant and available evidence and information.   The IA may also consult medical, forensic, technological, or other experts when expertise is needed in order to achieve an understanding of the issues under investigation.

3.7     Witnesses must have observed the acts in question or have information relevant to the incident in order to participate in the process.  A witness cannot participate solely to speak about an individual's character. However, a Respondent may provide letters or other written testimonials to the investigator that include information about Respondent's character, which will be provided to the DA after a decision on responsibility has been made but before sanctions (if any) are considered.

3.8     When the University is made aware that there is a concurrent criminal investigation, CREI may inform the law enforcement agency that a University investigation is also in progress; ascertain the status of the criminal investigation; and, determine the extent to which any evidence collected by law enforcement may be available to the University in its investigation.

        At the request of law enforcement, the University may temporarily defer part or all of the investigation until after the initial evidence-gathering phase of the law enforcement investigation is complete. The IA will communicate with the parties (as appropriate) about the law enforcement agency's request; the University's obligations and supportive resources; procedural options; anticipated timing; and the implementation of any necessary interim measures for the safety and well-being of all affected individuals.

3.9     Standards for the resolution of criminal allegations are different than the standards for resolution of a violation of *Texas A&M System Regulation 08.01.01* and/or any other University policy, rule, SAP, or code; therefore, the University will not base

its decisions under this SAP on any law enforcement determination and/or the outcomes of any criminal proceedings.

3.10   The IA has the sole discretion to determine the relevance of evidence and whether it should be included in or excluded from the Investigation Report. If applicable, the Hearing Officer has the sole discretion to determine the relevance of evidence and whether it should be heard at a live hearing. The Rules of Evidence do not apply in a live hearing.

3.11   With respect to allegations of Prohibited Conduct based on sex or gender: the sexual history of the Complainant or Respondent is generally irrelevant and will not be used to prove character or reputation. Sexual history of the parties may be relevant in limited circumstances, such as when it aids in determining the manner and nature of prior communications of consent between the parties.

3.12   CREI is responsible for all administrative actions required to conduct the investigation. These include, but are not limited to, informing the parties of extensions or other delays affecting the investigation, contacting supervisors or faculty regarding their employees' or students' time away from work or class to participate in the investigative process, making reports to university administrators, and other responsibilities necessary to properly conduct the investigation.

3.13   To the extent possible, the investigation will be conducted in a manner that protects the privacy of all parties involved. While the University cannot guarantee complete privacy, information collected during the investigation will be communicated only to the parties and those with a need to know in order to fulfill the purposes of University policies and to comply with applicable laws.

3.14   Both the Complainant and the Respondent have the right to choose an advisor to be present at any time in which the party participates in the investigation and resolution process, including the filing of the complaint, the interview with the IA, and all other meetings related to the investigation and resolution of the complaint. The advisor may be any person selected by a party, including legal counsel, except that the advisor may not be another party or a witness in the case. The advisor's participation will be limited to the role of an observer, although the advisor may request a break at any point to give advice to a party. An advisor can be barred from being present during the process if, in the judgment of the IA, the DA, the AA, or the Assistant Vice President and Title IX Officer, the advisor attempts to directly address the IA, DA or AA, advocate on behalf of a party, or is otherwise disruptive. Any fees charged by the advisor are the responsibility of the individual who selected the advisor.

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **11** of **24**

3.15   At the conclusion of the investigation, the IA will prepare a Draft Investigation Report summarizing the relevant information gathered and outlining any relevant contested and uncontested information. The Draft Investigation Report will not include any conclusions as to whether allegations are substantiated, unsubstantiated or that there is insufficient information to substantiate.

The Complainant and the Respondent will be notified that the Draft Investigation Report is complete and will be given five (5) business days to review the Draft Investigation Report and submit a written response to the IA.  CREI may extend the time to review the Draft Investigation Report upon request for good cause. If one party is granted an extension of time to review the report, an equal amount of additional time will be granted to all other parties.

In cases that include allegations against a Student Respondent, the exhibits to the Draft Investigation Report may be reviewed by the parties upon request.  In cases that include allegations against an Employee or Third Party Respondent, all parties may review the Exhibits to the Investigation Report without making a request.

Involved parties have the opportunity to review and respond to the Draft Investigation Report by: (1) providing written comment or feedback; (2) submitting additional evidence or information; (3) identifying additional witnesses or requesting the collection of other information by the Investigative Authority; and/or (4) suggesting questions to be asked (at the discretion of the IA) of the other party(ies). A party's written response, if any, will be shared with all other parties and incorporated in the investigation report as an exhibit. If a party knows, or through the exercise of reasonable diligence, should know, of information or evidence that was not provided to the investigator during the investigation, the party must provide such information or, if the party does not have access to the information, a description of such evidence to the IA during the review and respond period or such evidence will not be considered, absent good cause, in the determination of responsibility for a violation of a regulation, rule, SAP, code or policy.

3.16   At the conclusion of the review and respond period, the IA will determine if any new or relevant information was provided by one or both of the parties. If necessary, the IA may pursue additional investigative steps and/or amend the Investigation Report. If the amended Investigation Report contains any material or substantial changes, the Complainant and Respondent will be given five (5) business days to review the amended Investigation Report and submit a written

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **12** of **24**

response as set forth above. The opportunity to review and respond to an amended Investigation Report will be extended to the Complainant and Respondent until the IA determines that no material or substantial changes were made to the Draft Investigation Report.

The IA may add a conclusion for each allegation to the Investigation Report after the final review and response period concludes. The conclusion will be: substantiated, unsubstantiated, or insufficient information to substantiate based on the evidence and information in the report. In addition, the IA may add a conclusion as to whether *Texas A&M System Regulation 08.01.01* was violated, and, if appropriate, the IA may make a conclusion as to whether other regulations, policies, rules, SAPS, or codes were violated. The IA will use the preponderance of the evidence standard (i.e., more likely than not) in making conclusions. The IA will not make any recommendations or conclusions with respect to sanctions. The conclusions of the IA are merely advisory and are not the final decision with respect to responsibility.

Within five (5) business days after the final review and respond period concludes, CREI will forward the Investigation Report, as amended with conclusions (if applicable), along with the documentary evidence and any other relevant information, to the Office of General Counsel (OGC). OGC will conduct a legal review in accordance with *Section 4.2.5 of System Regulation 08.01.01*. OGC will provide its legal review to the IA within ten (10) business days. After receiving the legal review, the IA will have five (5) business days to finalize the Investigative Report. The Assistant Vice President and Title IX Officer (or designee) will submit the final report directly to the DA for decision-making. In cases that involve a student Respondent, all parties will receive an electronic copy of the Final Investigation Report (which does not include conclusions or exhibits) at the time the report is sent to the DA. Exhibits may be reviewed upon request in CREI's office.

4.    THE DESIGNATED ADMINISTRATOR'S DECISION

4.1    The Respondent is presumed to not have engaged in Prohibited Conduct until the DA finds that there is sufficient evidence based on a preponderance of the evidence to find that Respondent has violated *System Regulation 08.01.01* or *TAMU Rule 08.01.01.M1 Prohibited Conduct: Discrimination, Harassment, Complicity, and Related Retaliation based on a Protected Characteristic*

**Procedures Governing 1) Non-separable Allegations against Students,[1] and
2) All Allegations against Employees and Third Parties**

4.2     A decision by the DA of responsibility does not constitute an employment action
        with respect to faculty and non-faculty employees.  Any sanction, imposed as a
        result of a substantiated finding, will constitute an employment action.

4.3     The DA will (1) review the unredacted Final Investigation Report, the documentary
        evidence, and any other relevant information; and, (2) draft a decision based on the
        preponderance of the evidence as to a) whether the alleged conduct occurred; and
        b) whether each allegation is substantiated, unsubstantiated, or there is insufficient
        information to substantiate that the Respondent violated System Regulation
        08.01.01.  The DA may also decide whether the Respondent has violated any other
        System regulations or University rules, SAPS, codes and policies.  If any violations
        of Texas A&M System Regulation 08.01.01 are substantiated, the draft decision
        will include sanctions.   The draft decision may also include sanctions for
        substantiated violations of regulations, rules, SAPS, codes, and policies. Sanctions
        should be determined in accordance with *Section 5* below.

        In the decision, the DA will state the rationale for the decision and the sanctions, if
        any. The decision will also include an explanation of how the University weighted
        the evidence as well as how the standard of proof was applied. The final decision
        will include instructions for appealing the decision and/or sanctions.

        If the DA has substantial doubts about the thoroughness, fairness, and/or
        impartiality of the investigation, the DA may refer the matter back to the IA with
        further instructions, which could include the appointment of a different IA.

4.4     Within five (5) business days of the DA's receipt of the Final Investigation Report,
        the DA will forward its draft decision to OGC. Within five (5) business days of
        OGC's receipt of the draft decision, OGC will conduct a legal review in accordance
        with *Section 4.4.1 of System Regulation 08.01.01* and consult, as needed, with
        respect to sanctioning.   Once the DA receives OGC's legal review, the DA will
        then have five (5) business days to finalize the decision and 1) forward Notice of
        the DA's decision simultaneously to the parties and the IA as set forth in Section
        *4.7* below; and 2) in cases that involve an employee Respondent, simultaneously

---

[1] A "non-separable allegation" is an allegation that a student engaged in conduct that 1) does not carry a possible
sanction of suspension or expulsion as per the Texas A&M Student Sanctioning Matrix
(https://urc.tamu.edu/media/1601574/title-ix-sanctioning-matrices-august-2018.pdf), OR 2) has been determined by
the Assistant Vice President and Title IX Officer to not be serious enough that, if true, a possible sanction of
suspension or expulsion would be appropriate.

notify the parties of their right to review a copy of the Final Investigation Report, with conclusions and the exhibits, after receiving admonishments as to privacy and retaliation.

4.5     The Final Investigation Report will be redacted in accordance with state and/or federal law before the parties' review.

**Procedures Governing Separable Allegations[2] against Students**

4.6     The DA will (1) review the unredacted Final Investigation Report, the documentary evidence, and any other relevant information; and, (2) conduct a live hearing to allow the parties to present witnesses, evidence or information, and to cross-examine the other parties or witnesses by submitting written questions to the DA (questions will be asked by and at the discretion of the DA). Thereafter, the DA will announce a decision, based on the preponderance of the evidence, as to whether or not the alleged conduct occurred; and b) whether it is substantiated, unsubstantiated, or there is insufficient information to substantiate that the Respondent violated *System Regulation 08.01.01*. The DA may also announce a decision as to whether Respondent violated any other University regulation, code, policy, SAP or rule. .

If the DA determines that any regulations, policies, rules, SAPs, or codes have been violated, the DA will conduct a second hearing on sanctions immediately following the first hearing. The DA will receive information about the factors listed in *Section 5.1* below and accept any impact or mitigation statements as well as any information about the Respondent's character.

Thereafter, the DA will notify the parties in writing of the decision on responsibility and sanctions as set forth in *Section 4.7* below. The final decision will include information about appealing the decision.

The decision of the DA will include how the University weighted the evidence and the information contained within the Investigation Report. The DA will also state how the standard of proof was applied.

---

[2] A "separable allegation" is an allegation that 1) a student Respondent engaged in Prohibited Conduct or other violation of System regulations or University policies that carries a possible sanction of suspension or expulsion as per the Texas A&M Student Sanctioning Matrix (https://urc.tamu.edu/media/1601574/title-ix-sanctioning-matrices-august-2018.pdf), or 2) the Assistant Vice President and Title IX Officer has determined to be serious enough, if true, a sanction of suspension or expulsion would be appropriate.

4.7     With respect to an allegation involving Prohibited Conduct based on sexual harassment, sexual assault, sexual exploitation, dating abuse/violence, domestic abuse/violence, or stalking based on sex or gender, the DA will simultaneously notify the parties, the IA, and any other University official with a need to know of the decision on the allegation and/or sanctions, except when doing so would violate state or federal law (e.g., Family Educational Rights and Privacy Act). The DA will also notify the parties that they can review the Final Investigation Report, with conclusions and exhibits, in CREI's office.

If the allegations involve Prohibited Conduct other than sexual harassment, sexual assault, sexual exploitation, dating abuse/violence, domestic abuse/violence, stalking, or related retaliation, the DA will simultaneously notify: (1) the Complainant that an investigation of the allegations was conducted and the matter has been resolved appropriately; and (2) the Respondent, the IA, and any other University official with a need to know, of the decision and/or sanctions. The DA will also notify the parties that they can review the Investigation Report with conclusions (if applicable) and exhibits in CREI's office.

5.     SANCTIONING

5.1     In determining the appropriate sanctions, many factors may be considered, including but not limited to:

- The expressed wishes of the Complainant(s);
- The nature of the Prohibited Conduct;
- The impact of the conduct on the Complainant(s);
- The impact of the conduct on the University community and the need to protect the safety of the University community;
- Prior disciplinary history of the Respondent;
- Whether the Respondent has accepted responsibility for the conduct;
- The necessity of any specific action in order to eliminate the Prohibited Conduct, prevent its recurrence, and remedy its effects on the Complainant(s) or other University community members; and/or
- Any other mitigating, aggravating, or compelling circumstances.

SANCTIONING FOR EMPLOYEES

5.2     If an employee is found to have sexually harassed[3] another member of the university or agency community, the sanction will be termination of employment.

If an employee is found to have engaged in Prohibited Conduct other than sexual harassment, the DA may assign appropriate sanction(s) which may have educational, restorative, punitive, and rehabilitative components. Examples of

---

[3] Sexual Harassment is defined in TAMUS Regulation 08.01.01. (http://policies.tamus.edu/08-01-01.pdf)

sanctions may include, but are not limited to, written warning or reprimand, required training and/or attendance at counseling, "no contact" restrictions, probation, suspension, and termination.

If the employee is found responsible for violating any other rule, policy, SAP, code, or regulation, the DA may assign appropriate sanction(s) or may refer the sanctioning to any other appropriate university administrator.

## SANCTIONING FOR STUDENTS

5.3     If a student is found responsible for sexual harassment, sexual assault, domestic abuse/violence, dating abuse/violence, stalking based on sex or gender, or sexual exploitation, the student will be sanctioned in accordance with the Student Title IX Cumulative Sanctioning Matrix (https://urc.tamu.edu/media/1601574/title-ix-sanctioning-matrices-august-2018.pdf).

If a student is found responsible for engaging in any other form of Prohibited Conduct, or if the student is found responsible for violating any other University Rule or System regulation, the DA will assign appropriate sanctions which may have educational, restorative, and rehabilitative components.

Student Sanctions include:

5.3.1    *Expulsion*: Separation of the student from the University whereby the student is not eligible for readmission to this University.

5.3.2    *Suspension*: Separation of the student from the University for a definite period of time. The student is not guaranteed readmission at the end of such period of time, but is guaranteed a review of the case and a decision regarding eligibility for readmission. The suspension takes effect when the appeal for the offense is exhausted, waived or time limit has passed. Suspensions may be implemented in one of two ways: immediate implementation of suspension or deferred implementation of suspension. The sanction of suspension may be placed in deferred status. If the student is found in violation of any University rule during the time of deferred suspension, the suspension takes effect immediately without further review. Additional student conduct sanctions appropriate to the new violation also may be applied. A student who has been issued a deferred suspension sanction is deemed "not in good standing" with the University.

**Not in good standing:** A student who is not in good standing is subject to the following restrictions:

- Ineligibility to hold an office in any student organization recognized by the University or to hold any elected or appointed office of the University.
- Ineligibility to represent the University in any way, including representing the University at any official function, intercollegiate athletics or any forms

of intercollegiate competition or representation. This includes events taking place both on and off of the University campus.

- Ineligibility to receive a University administered scholarship when the length of the period of not in good standing is greater than one semester. Some scholarships adhere to more strict guidelines, and, therefore, ineligibility may result from a lesser length of not in good standing. This sanction implies a serious offense and must be uniformly applied by the office administering the scholarship upon notification by CREI.
- Additional restrictions or conditions also may be imposed, depending on the nature and seriousness of the misconduct.

At the end of the suspension period, the student is eligible for reenrollment. Actual admission to the University will be determined by the academic rules in place at the time of application for reenrollment.

5.3.3. *Conduct Probation*: An official warning that the student's conduct is in violation of Texas A&M University regulations, policies, rules, codes, or SAPs, but is not sufficiently serious to warrant expulsion or suspension. A student on conduct probation is deemed "not in good standing" with the University. If there is a finding of responsibility for subsequent violations of the University's regulations, policies, rules, codes, or SAPS during this period of time, more severe sanctions may be administered.

5.3.4. *Conduct Review:* An official warning that the student's conduct is in violation of Texas A&M University regulations, policies, rules, codes, or SAPs, but is not sufficiently serious to warrant expulsion, suspension, or conduct probation. A student on conduct review shall have their conduct under review for a specified period of time. This sanction may require regular meetings with an appropriate official to ascertain and evaluate compliance with student rules. Additional restrictions or conditions also may be imposed, depending on the nature and seriousness of the misconduct. Students placed on this sanction remain in good standing with the University. If there is a finding of responsibility for subsequent violations of regulations, policies, rules, codes, or SAPs during this period of time, more severe sanctions may be administered.

5.3.5. *Restrictions*: The withdrawal of specified privileges for a definite period of time, but without the additional stipulations contained in the imposition of a sanction which results in a student being not in good standing. The restrictions involved will be clearly defined.

5.3.6. *Restitution*: A payment for financial injury to an innocent party in cases involving theft, destruction of property or deception. The assessed costs to be paid may be in addition to receipt of any of the above sanctions.

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **18** of **24**

5.3.7.  *Community/University Service*: A student may be offered an opportunity to complete a specified number of hours of Community/University Service. The type of Community/University Service must be approved by your CREI Case Manager.

5.3.8.  *Educational Requirements*: A provision to complete a specific educational requirement. Such educational requirements may include, but are not limited to, completion of an alcohol education workshop, a diversity awareness workshop, essays, reports, reflective writing assignments, etc.

5.3.9.  *Letter of Enrollment Block*: A letter stating that the student may not reenter Texas A&M University without prior approval through the Offices of the Dean of Student Life or the Vice President for Student Affairs if enrollment has been blocked for a previous student conduct problem.

5.3.10. *Letter of Reprimand*: A letter that makes a matter of record any incident that reflects unfavorably on the student or the University.

5.3.11 Campus Housing Sanctions:

The occupants of each residence hall, by majority vote, have the power to establish additional "in house" rules as approved by the Department of Residence Life. Generally, "in house" rule infractions are handled by resident life staff.

5.3.11.1  *Loss of Campus Housing Privilege*: Removal from university housing for conduct reasons.

5.3.11.2  *Deferred Loss of Campus Housing Privilege*: The sanction of Loss of Campus Housing Privilege may be placed in deferred status. If a student is found in violation of any University rule during the time of the deferred sanction, removal from housing takes effect immediately without further review. Additional student conduct sanctions appropriate to the new violation also may be taken. In addition, a student is ineligible to hold an elected or appointed office in any affiliated housing organization. This includes but is not limited to the following offices/positions:  president, vice president, secretary, treasurer, RHA delegate.

5.3.11.3  *Campus Housing Probation*: An official notice that the student's conduct is in violation of residence hall rules, University Apartments rules and/or University rules and that more stringent student conduct sanctions, including removal from housing, may result if future violations occur. In addition, a student is ineligible to hold an elected or appointed office in any affiliated housing organization. This includes but is not limited to the following

offices/positions: president, vice president, secretary, treasurer, RHA delegate.

    5.3.12 In addition to any of the sanctions listed in this section, members of the Corps of Cadets are subject to disciplinary action in accordance with *The Standard*.

## 6.    THE APPELLATE AUTHORITY'S DECISION

6.1    Both a Complainant and a Respondent may appeal the DA's decision. The bases for appeal are limited to:

    (1) A procedural error or omission that significantly impacted the outcome;
    (2) New evidence, unknown or unavailable during the investigation that could have significantly impacted the outcome; or
    (3) The appropriateness or severity of the sanctions[4].

6.2    All appeals must be in writing and must include a statement outlining the bases for appeal and any evidence which supports the appeal. Appeals must be filed within five (5) business days of the Complainant and Respondent's receipt[5] of the notice of the decision to be appealed. An appeal is filed when CREI receives a copy of a written appeal at civilrights@tamu.edu.

If 1) no appeal is filed within five (5) business days of the receipt of the notice of the DA's decision; or, 2) CREI determines that the appeal does not identify one of the bases for appeal listed in *Section 6.1* above or provide credible information or evidence substantiating the identified bases for appeal, CREI will provide simultaneous notice to the parties that no valid appeal was filed and that the decision of the DA is final and the case is closed. If a timely and valid appeal is filed by either party, the other party will be notified as soon as practicable thereafter.

6.3    CREI will forward the appeal and any supporting information or evidence to the appropriate Appellate Authority (AA). The AA, in consultation with OGC, will review the appeal documents, the decision of the DA, any new evidence submitted by the parties, and the Investigation Report and exhibits. The AA will render a written decision which includes a rationale for the decision as to each of the grounds appealed. The AA will forward the appellate decision to CREI within ten (10) business days from the date of receipt of the appeal, unless circumstances require additional time. The decision of the AA will be final.

---

[4] If an employee was found to have sexually harassed another member of the university or agency community, 6.1(3) is not available as a basis for appeal.
[5] Complainants and Respondents are deemed to have received the Notice of the Decision on the day that the Notice is emailed to the party's University email account or to any other email account that was provided to CREI by the party.

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **20** of **24**

Within five (5) business days after receiving the appellate decision, CREI will provide simultaneous notice of the AA's decision as set forth in *Section 4.7 above*.

6.4    The AA will render one or more of the following written decisions after reviewing a) the final investigative report, the documentary evidence and other relevant information; and b) the DA's decision on responsibility and/or sanctions:

(1) **Affirm** the DA's decision on responsibility and/or the sanctions. There are no relevant issues of concern related to the ground(s) of the appeal, and, therefore, the decision is affirmed and final.

*(2)* **Remand** the complaint back to the DA because new evidence which was unknown or unavailable during the investigation appears to be relevant and could have significantly affected the outcome of the decision on responsibility or the sanctions. The DA will instruct the IA to review the new evidence and amend the Investigative Report, as appropriate. The IA will submit the Amended Investigative Report, without conclusions, to the parties for review and response in accordance with *Section 3.15 and 3.16* and then to the DA for a new decision in accordance with *Section 4*. The new decision of the DA may be appealed by the parties in accordance with the procedures outlined in *Section 6*.

(3) **Remand** the complaint back to the DA with an instruction to correct the procedural error or omission.

If the procedural error occurred in the investigation phase, the DA will instruct the IA to correct the procedural error or omission and amend the Investigative Report, as appropriate. The IA will then submit the Amended Investigative Report, without conclusions, to the parties for review and response in accordance with *Section 3.15 and 3.16*, and then to the DA for a new decision in accordance with *Section 4*.

If the procedural error occurred in the resolution phase, the DA will correct the procedural error or omission and then issue a new decision in accordance with *Section 4*.

The new decision of the DA may be appealed by the parties in accordance with Section 6 herein.

(4) **Modify**[6] the decision on sanctions because the sanctions given were inappropriate or disproportionate to the severity of the conduct after considering all the circumstances. The AA will impose new sanctions, which are final.

6.5    The appeal will be confined to a review of the record from the investigation and any pertinent evidence, as well as the DA's decision as related to the grounds for appeal. The appeal does not create an entitlement to a new investigation.

6.6    If an appeal is sought by both parties within the time frame specified in *Section 6.2*, the AA will review both appeals and will render decisions accordingly.

---

[6] If an employee was found to have sexually harassed another member of the university or agency community, the AA may not render a decision which MODIFIES the sanctions.

7. MISCELLANEOUS PROVISIONS

7.1 A Respondent's voluntary intoxication is never an excuse for or a defense to Prohibited Conduct, and it does not diminish the Respondent's responsibility to determine that the other person has given consent and has the capacity to do so.

7.2 The University will make every reasonable effort to comply with the timelines contained in this procedure. However, extensions may be obtained by the IA, DA, or AA, as appropriate under the circumstances. Circumstances that warrant an extension may include, but are not limited to:

- Temporary unavailability of the Complainant(s), Respondent(s) or witnesses;
- Delays in issuance and/or receipt of information to or from the IA;
- Temporary unavailability of the IA, DA, or AA due to illness, family needs or professional commitments;
- Holidays or other periods when the Complainant, Respondent, witnesses, or other University Employees may be unavailable; and/or
- New allegations, new evidence, new witnesses, or any other fact or circumstance that would require further investigation.

7.3 All requests for extensions must be justified in writing and shall be sent by the IA, DA, or AA to the Office of Risk, Ethics, and Compliance for review and approval by the Chief Risk, Ethics, and Compliance Officer or designee. CREI will simultaneously notify the Complainant and Respondent in writing of any extensions and the reason for the extensions.

7.4 The University's disclosure of information related to an investigation, the DA's decision and/or the sanctions rendered under this SAP will be governed by the provisions of the Family Educational Rights and Privacy Act (FERPA), the Texas Public Information Act (TPIA), the Texas Education Code Section 51.971, and other applicable confidentiality laws.

7.5 This SAP applies to all reports of Prohibited Conduct received by the University on or after the effective date of this SAP.

8. INTERIM SUSPENSIONS AND INTERIM RESTRICTIONS OF STUDENTS

8.1 A student may not be expelled or suspended prior to a decision of responsibility for Prohibited Conduct or for other violations of university rules, policies, regulations, codes, or SAP except when the Dean of Student Life believes that an interim suspension should be imposed.

Interim suspension may be imposed only to ensure the safety and well-being of members of the University community or guest, or preservation of University property; to ensure the student's own physical or emotional safety and well-being;

and/or if the student poses an ongoing threat of disruption of, or interference with, the normal operations of the University.

If the Dean of Student Life issues an interim suspension, a show cause hearing will be scheduled as soon thereafter as practicable. The student will be notified in writing of this action and the reasons for the interim suspension. The notice will include the time, date, and place of a subsequent conference at which the student may show cause as to why his/her continued presence on the campus does not constitute a threat. The student may also contest whether the facts of the initial report are accurate.

8.2     During the interim suspension, a student may be denied access to campus housing and/or the campus (including classes) and/or all other University activities or privileges for which the student might otherwise be eligible.

8.3     The interim suspension does not replace the investigation and resolution process. The investigation and resolution process shall proceed as outlined in this SAP, except that the timelines referenced in this SAP shall not be followed and the allegations will be resolved as soon as possible.

8.4     Interim restrictions include, but are not limited to, contact restrictions; representation of the university; and/or participation in university affiliated organization meetings, events, and/or activities.

Interim restrictions may be imposed (1) when a student has been interim suspended; (2) when a determination is made to implement a transcript hold under *Texas A&M System Regulation 11.99.02*; and/or (3) in instances when the student's participation or representation would threaten or negatively impact other students who are participating and/or representing an organization or the university. When interim restrictions are imposed, a student will be notified in writing of the specifics of the restrictions and why the restrictions are being implemented. Restrictions will remain in place through a designated time period and/or, if not indicated, until the student is notified that the restriction has ended.

9.      INTERIM ADMINISTRATIVE ACTIONS FOR EMPLOYEES

9.1     In accordance with University rules and SAPS, CREI may request that an employee be placed on leave during the investigation and resolution process. CREI may also issue interim restrictions to an employee, which include, but are not limited to, contact restrictions; representation of the university; "no trespass" orders, etc. Such interim actions will remain in place as specified in the Notice to the employee or until the allegations are resolved.

**Related Statutes Policies, Regulations, and Rules**

System Policy 08.01 *Civil Rights Protections and Compliance*

System Regulation 08.01.01 *Civil Rights Compliance*

University Rule 08.01.01.M1 *Prohibited Conduct: Discrimination, Harassment, Complicity, and Related Retaliation based on a Protected Characteristic*

University Rule 12.01.99.M2 *University Statement on Academic Freedom, Responsibility, Tenure, and Promotion*

Standard Administrative Procedure 12.99.99.M0.01 *Faculty Grievances Procedures not Concerning Questions of Tenure, Dismissal or Constitutional Rights*

System Regulation 32.02.02 *Discipline and Dismissal of Nonfaculty Employees*

System Regulation 32.01.02 *Complaint and Appeal Process for Nonfaculty Employees*

---

## Contact Office

---

## Department of Civil Rights and Equity Investigations

08.01.01.M1.01 Investigation and Resolution of Allegations of Prohibited Conduct Against Students, Employees and Third Parties

Page **24** of **24**



## TEXAS A&M UNIVERSITY
## Student Rules

**EXHIBIT D**



TEXAS A&M UNIVERSITY
## Student Rules

Search website     Search

Home (https://student-rules.tamu.edu/)

Aggie Code of Honor (https://student-rules.tamu.edu/aggiecode/)     Rules ▾

Students' Rights (https://student-rules.tamu.edu/rights/)

Recent Rule Changes (https://student-rules.tamu.edu/changes/)

Review Committee Minutes (https://student-rules.tamu.edu/minutes/)

# 45. Discrimination and Discrimination Appeals

Rule 45:  Discrimination and Discrimination Appeals is under revision.

Please refer to and utilize:

**University Rule 08.01.01.M1:  Civil Rights Compliance (http://rules.tamu.edu/PDFs/08.01.01.M1.pdf)** – This University rule outlines the designated & Official Contacts for the receipt, investigation, and resolution of illegal discrimination, sexual harassment, and/or related retaliation complaints.

**Standard Administrative Procedure 08.01.01.M1.01 (http://rules-saps.tamu.edu/PDFs/08.01.01.M1.01.pdf)** – This Standard Administrative Procedure (SAP) outlines the process for investigation and resolution of complaints against non-faculty employees and unrelated third parties for illegal discrimination, sexual harassment, or related retaliation charges.

**Standard Administrative Procedure 08.01.01.M1.02 (http://rules-saps.tamu.edu/PDFs/08.01.01.M1.02.pdf)** – This Standard Administrative Procedure (SAP) outlines the process for investigation and resolution of complaints against faculty members for illegal discrimination, sexual harassment, or related retaliation charges.

**Propose a Student Rule Revision (http://student-rules.tamu.edu/propose/revision/?title=Discrimination and Discrimination Appeals&section=)**

# CONNECT WITH US

## Dean of Student Life

### Division of Student Affairs

1256 TAMU
College Station, TX 77843-1256

(979) 845-4728
(979) 845-3320 fax
**vpsa@tamu.edu
(mailto:vpsa@tamu.edu)**

## Quick Links

- **Aggie Honor System Office (http://aggiehonor.tamu.edu/)**
- **Student Conduct Office (http://studentlife.tamu.edu/scrs/)**
- **TAMU Rules (http://rules.tamu.edu/)**
- **TAMU System Policies (http://tamus.edu/offices/policy/)**

**State of Texas (http://www.texas.gov/)**        **Statewide Search (https://www.tsl.texas.gov/trail/index.html)**

**Policy
lishingext.dir.texas.gov/portal/internal/resources/DocumentLibrary/State%20Website%20Linking%20and%20Privacy%2(**

**Site Policy (http://www.tamu.edu/statements/index.html)**        **Open Records (http://openrecords.tamu.edu)**

**Texas Veterans Portal (http://veterans.portal.texas.gov/)**

**Texas CREWS (PDF) (http://www.tamu.edu/statements/TAMU-CREWS.pdf)**

**Webmaster (mailto:help@dsa.tamu.edu)**

**Give to Student Affairs (http://studentaffairs.tamu.edu/giving-2/)**

Copyright 2019 • Student Rules | Texas A&M University • All Rights Reserved. • Hosted by **Division of Student Affairs Department of IT (http://doit.tamu.edu)**



## TEXAS A&M UNIVERSITY
### Student Rules


EXHIBIT E



Search website    Search

Home (https://student-rules.tamu.edu/)

Aggie Code of Honor (https://student-rules.tamu.edu/aggiecode/)     Rules ▾

Students' Rights (https://student-rules.tamu.edu/rights/)

Recent Rule Changes (https://student-rules.tamu.edu/changes/)

Review Committee Minutes (https://student-rules.tamu.edu/minutes/)

# 47. Investigation and Resolution of Complaints Against Texas A&M Students for Sexual Harassment, Sexual Assault, Dating Violence, Domestic Violence, Stalking and Related Retaliation (SSDDSR)

(Revised: 2019)

The Department of Civil Rights and Equity Investigations (CREI) is charged with the investigation and resolution of alleged violations of Texas A&M University's civil rights policies, including Title IX. This includes instances of sex-based discrimination, harassment (including sexual violence) and related retaliation when this conduct is so severe, persistent or pervasive that it explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work or educational performance, or creates an intimidating or hostile work or educational environment.

Conduct which is not severe, persistent or pervasive may still be a violation of other University policies, and when appropriate, CREI will partner with other University entities to address such conduct.

Allegations of civil rights violations against faculty, staff, guests, and unknown parties are addressed by CREI. (Note: Allegations of civil rights violations against students which were reported prior to June 1, 2019 will be addressed by the Office of the Dean of Student Life.)

For more information please visit the Civil Rights and Equity Investigations website at **Titleix.tamu.edu (http://titleix.tamu.edu/)** or contact the Title IX Officer at:

Jennifer Smith, JD

979-458-8167

**civilrights@tamu.edu (mailto:civilrights@tamu.edu)**

Medical Sciences Library, Suite 007

**Propose a Student Rule Revision (http://student-rules.tamu.edu/propose/revision/?title=Investigation and Resolution of Complaints Against Texas A&M Students for Sexual Harassment, Sexual Assault,**

# CONNECT WITH US

## Dean of Student Life

### Division of Student Affairs

1256 TAMU
College Station, TX 77843-1256

(979) 845-4728
(979) 845-3320 fax
**vpsa@tamu.edu
(mailto:vpsa@tamu.edu)**

## Quick Links

- **Aggie Honor System Office (http://aggiehonor.tamu.edu/)**
- **Student Conduct Office (http://studentlife.tamu.edu/scrs/)**
- **TAMU Rules (http://rules.tamu.edu/)**
- **TAMU System Policies (http://tamus.edu/offices/policy/)**

**State of Texas (http://www.texas.gov/)**     **Statewide Search (https://www.tsl.texas.gov/trail/index.html)**

Policy
lishingext.dir.texas.gov/portal/internal/resources/DocumentLibrary/State%20Website%20Linking%20and%20Privacy%20

**Site Policy (http://www.tamu.edu/statements/index.html)**     **Open Records (http://openrecords.tamu.edu)**

**Texas Veterans Portal (http://veterans.portal.texas.gov/)**

**Texas CREWS (PDF) (http://www.tamu.edu/statements/TAMU-CREWS.pdf)**

**Webmaster (mailto:help@dsa.tamu.edu)**

**Give to Student Affairs (http://studentaffairs.tamu.edu/giving-2/)**

Copyright 2019 • Student Rules | Texas A&M University • All Rights Reserved. • Hosted by **Division of Student Affairs Department of IT (http://doit.tamu.edu)**



TEXAS A&M UNIVERSITY
Student Rules


EXHIBIT F



TEXAS A&M UNIVERSITY
Student Rules

Search website     Search

Home (https://student-rules.tamu.edu/)

Aggie Code of Honor (https://student-rules.tamu.edu/aggiecode/)     Rules ▾

Students' Rights (https://student-rules.tamu.edu/rights/)

Recent Rule Changes (https://student-rules.tamu.edu/changes/)

Review Committee Minutes (https://student-rules.tamu.edu/minutes/)

# 26. Student Conduct Proceedings

(Revised: 2018)

All charges shall be presented to the accused student in written form. The accused student will be given at least three (3) University business days to prepare for a conference. In all student conduct proceedings, the accused student shall be presumed not responsible until it is proven that a violation of the University rules occurred by a preponderance of the information standard.

26.1. Student Conduct Conferences which may result in University mandated separation from the University shall be conducted by the following guidelines. Accused students subject to less severe sanctions may, at the discretion of the Student Conduct Administrator, be afforded but are not guaranteed the same guidelines. These guidelines are as follows:

26.1.1. Student Conduct Conferences typically will be conducted in private and may involve joint conferences where two or more students are charged in the same fact pattern.

26.1.2. The accused student and the accused student's advisor, if any, shall be allowed to attend the entire portion of the student conduct conference at which information is received (excluding deliberations) provided the accused student and the accused student's advisor appear at the designated time and do not inhibit the proceeding. Admission of any other person to the student conduct conference shall be at the discretion of the Student Conduct Administrator.

26.1.3. In student conduct conferences involving more than one accused student, the Student Conduct Administrator, at the Student Conduct Administrator's discretion, may permit the student conduct conferences concerning each student to be conducted either separately or jointly.

26.1.4. There will be no finding of responsibility solely because a student remains silent during a student conduct conference.

26.1.5. The accused student has the opportunity to be assisted by an advisor the accused student chooses, at the accused student's own expense.

26.1.5.1. The advisor may not be an attorney unless the accused student is also the subject of a pending subsequent criminal matter arising out of the same circumstances; in such cases, the accused student may be allowed to have an attorney serve as the accused student's advisor, at their own expense, to behave in the same manner as any other advisor.

26.1.5.2. Students who are charged in the same fact pattern, or who are not in good standing with the University are not eligible to serve as an advisor at conduct proceedings.

26.1.5.3. The advisor may not be a witness or otherwise have any conflicting role in the process.

26.1.5.4. During the process, the advisor may not actively participate, directly address an involved university official, or advocate on behalf of the student.

Accused students are responsible for presenting their own information. Therefore, a student should select as an advisor a person whose schedule allows attendance at the scheduled date and time for the student conduct conference. Student conduct conferences will not typically be delayed due to scheduling conflicts of an advisor. There is no restriction on who a student may consult or seek advice from, the restriction pertains to the conduct conference only.

26.1.6. The accused student and the Student Conduct Administrator may arrange for witnesses to present pertinent information to the Student Conduct Panel. Witnesses may provide this information to and answer questions from the Student Conduct Panel, Student Conduct Administrator, accused student and/or in cases involving one or more charges that include sexual harassment, sexual misconduct, dating violence, domestic violence, stalking, or retaliation for a report of one of these rules, the complainant. (Character statements shall be accepted in written form only.) In cases involving one or more charges that include sexual harassment, sexual misconduct, dating violence, domestic violence, stalking, or retaliation for a report of one of these rules, the accused student shall have the opportunity to submit an impact statement detailing the alleged consequences suffered by the accused student.

26.1.7. An advisor, witness, or other participating party who is verbally abusive, disruptive to the process, or persists in trying to inappropriately and substantively participate in the process after being warned to cease and desist may be asked to leave and may be precluded from attendance at future meetings.  The University has the right at all times to determine what constitutes appropriate behavior on the part of an advisor.

26.1.8. Pertinent records, exhibits, student impact statements and other written statements may be accepted as information for consideration by a Student Conduct Panel at the discretion of the chairperson. Student impact statements and other documents determined at the discretion of the chairperson shall be reviewed by the Student Conduct Panel during the sanction phase only.

26.1.9. All procedural questions are subject to the final decision of the chairperson of the Student Conduct Panel.

26.1.10. After the portion of the Student Conduct Conference concludes in which all pertinent information has been received, the Student Conduct Panel shall deliberate in private to determine whether the accused student has violated each section of the student conduct code for which the student is charged.

26.1.11. The focus of inquiry in student conduct proceedings shall be the determination of whether a violation of University rules occurred. In all initial student conduct proceedings, the burden of proof shall rest with the University, and said burden of proof shall be by a preponderance of the information. Preponderance of the information is defined as the greater weight and degree of credible information admitted in the conference. The Student Conduct Panel's determination shall be made on the basis of whether it is more likely than not that the accused student violated the Student Conduct Code.

26.1.12. The accused student shall be informed of the outcome of the Student Conduct Conference.

26.1.13. There shall be a single verbatim record, such as a tape or digital recording, of all student conduct conferences before a Student Conduct Panel. Deliberations shall not be recorded. The record shall be the property of the University.

If an accused student with notice, does not appear at a student conduct conference, the information in support of charges shall be presented, considered, and a decision may be made. The Student Conduct Panel may accommodate concerns for the personal safety, well-being, and/or fears of confrontation of the complainant, accused student, and/or other witnesses during the conference. There is no entitlement to these accommodations and they shall be determined by the Student Conduct Administrator. The Student Conduct Administrator may also make reasonable accommodations to provide access for students with disabilities.

26.2. The following guidelines, in addition to those referenced in 26.1 as applicable, apply to Student Conduct Conferences in cases of alleged sexual misconduct, sexual harassment, dating violence, domestic violence, stalking, or retaliation for a report of one of these rules. (For Student Rule section 26.2 only, "**complainant**" means any person who is the alleged recipient of alleged behaviors concerning sexual misconduct, sexual harassment, dating violence, domestic violence, or stalking that are currently under review by the Offices of the Dean of Student Life):

26.2.1. Student Conduct Conferences typically will be conducted in private and may involve joint conferences where two or more students are charged in the same fact pattern. Complainants shall only be privy to information pertaining to related charges of sexual misconduct, sexual harassment, dating violence, domestic violence, stalking, or retaliation for a report of one of these rules unless the accused student authorizes release of the accused student's student record related to other charges.

26.2.2. The complainant, complainant's advisor, if any, and accused student, and accused student's advisor, if any, shall be allowed to attend the entire portion of the Student Conduct Conference at which information is received (excluding deliberations) related to charges of sexual misconduct, sexual harassment, dating violence, domestic violence, stalking, or retaliation for a report of one of these rules provided the parties appear at the designated time and do not inhibit the proceeding. Admission of any other person to the student conduct conference shall be at the discretion of the Student Conduct Administrator. <u>The complainant shall not be required to attend the Student Conduct Conference.</u>

> 26.2.2.1 The complainant and the accused student will not be required to be physically present in the same room during the Student Conduct Conference should either party request that they be separated.

26.2.3. The complainant and accused student have the right to be assisted by an advisor of their choice, at their own expense.

26.2.3.1. In such cases, the complainant and/or accused student may be allowed to have an attorney serve as their advisor, at their own expense, to behave in the same manner as any other advisor.

26.2.3.2. Students who are involved in the same fact pattern, or who are not in good standing with the University are not eligible to serve as an advisor at conduct proceedings.

26.2.3.3. The advisor may not be a witness or otherwise have any conflicting role in the process.

26.2.3.4. During the process, the advisor may not actively participate, directly address an involved university official, or advocate on behalf of the student.

The complainant and accused student are responsible for presenting their own information. Therefore, a complainant and accused student should select as an advisor a person whose schedule allows attendance at the scheduled date and time for the Student Conduct Conference. Student Conduct Conferences will not typically be delayed due to scheduling conflicts of an advisor. There is no restriction on who a complainant or accused student may consult or seek advice from, the restriction pertains to the student conduct conference only.

26.2.4. The complainant, accused student, and/or Student Conduct Administrator may arrange for witnesses to present pertinent information during the Student Conduct Conference. Witnesses may provide this information to and answer questions from the Student Conduct Panel, Student Conduct Administrator, accused student, and/or complainant. (Character statements shall be accepted in written form only.) <u>The complainant shall have the opportunity to submit an impact statement detailing the alleged consequences suffered by the complainant.</u>

26.2.5. The complainant, or, upon request, the surviving family member if the complainant dies as a result of the alleged misconduct, shall be informed of the outcome of the Student Conduct Conference. The proceedings and outcome of all student conduct conferences are considered confidential information in accordance with the Family Educational Rights and Privacy Act of 1974. Such information should not be otherwise re-disclosed.

26.2.6. An advisor, witness, or other participating party who is verbally abusive, disruptive to the process, or persists in trying to inappropriately and substantively participate in the process after being warned to cease and desist may be asked to leave and may be precluded from attendance at future meetings. The University has the right at all times to determine what constitutes appropriate behavior on the part of an advisor.

26.2.7 As a general matter, the complainant's past behavioral history (including sexual history) is irrelevant and will not be discussed in the Student Conduct Conference. Similarly, the accused student's past behavioral history (including sexual history), unless a part of the accused student's student file, is irrelevant and will not be discussed in the Student Conduct Conference. However, the chairperson may permit information of past behavioral history in rare circumstances where the information is significantly useful in making a relevant disputed fact more or less true, and its value is not substantially outweighed by concerns of unfair prejudice and/or confusion.

26.2.8. In conduct conferences which may result in a University mandated separation from the University for the accused student, there shall be a single verbatim record, such as a tape or digital recording, of all student conduct conferences before a Student Conduct Panel. Deliberations shall not be recorded. The record shall be the property of the University.

26.3. Appeals

The decision as to which procedure to utilize for a grievance filed by a student shall be made solely by the University and shall be based on the fact pattern of each particular case.

A decision reached by the Student Conduct Panel or a sanction imposed by the Student Conduct Administrator may be appealed by the accused student(s), or in cases of sexual misconduct, sexual harassment, dating violence, domestic violence, or stalking the complainant, to an appeal panel within five (5) University business days of the decision. Such appeals shall be in writing and shall be delivered to the coordinator of the appeals process or designee.

Rules regarding the Student Conduct Code and related actions are listed in Part III, Student Life Rules, Grievance Procedures **(See sec. 51)**. An appeal panel may uphold the sanction(s) imposed by the original Student Conduct Panel and/or Student Conduct Administrator or the appeal panel may modify the sanction(s) imposed by the original Student Conduct Panel and/or Student Conduct Administrator. If sufficient information is presented that may have materially altered the decision of the original conference and was not or could not have been known at the time of the original conference, the appeal panel may require that the case be heard again by a Student Conduct Panel administered by the Offices of the Dean of Student Life.

Following an appeal, the matter shall be considered final and binding upon all involved.

26.4. An open conference may be held only if all students involved provide written consent to disclose any and all information which might be released from their educational record during the course of the hearing. Final determination shall be at the sole discretion of the hearing officer(s).

**Propose a Student Rule Revision (http://student-rules.tamu.edu/propose/revision/?title=Student Conduct Proceedings&section=)**

# CONNECT WITH US

# Dean of Student Life

## Division of Student Affairs

1256 TAMU
College Station, TX 77843-1256

(979) 845-4728
(979) 845-3320 fax
**vpsa@tamu.edu
(mailto:vpsa@tamu.edu)**

# Quick Links

- **Aggie Honor System Office (http://aggiehonor.tamu.edu/)**
- **Student Conduct Office (http://studentlife.tamu.edu/scrs/)**
- **TAMU Rules (http://rules.tamu.edu/)**
- **TAMU System Policies (http://tamus.edu/offices/policy/)**

**State of Texas (http://www.texas.gov/)**    **Statewide Search (https://www.tsl.texas.gov/trail/index.html)**

**Policy lishingext.dir.texas.gov/portal/internal/resources/DocumentLibrary/State%20Website%20Linking%20and%20Privacy%20**

**Site Policy (http://www.tamu.edu/statements/index.html)**    **Open Records (http://openrecords.tamu.edu)**

**Texas Veterans Portal (http://veterans.portal.texas.gov/)**

**Texas CREWS (PDF) (http://www.tamu.edu/statements/TAMU-CREWS.pdf)**

**Webmaster (mailto:help@dsa.tamu.edu)**

**Give to Student Affairs (http://studentaffairs.tamu.edu/giving-2/)**

Copyright 2019 • Student Rules | Texas A&M University • All Rights Reserved. • Hosted by **Division of Student Affairs Department of IT (http://doit.tamu.edu)**

# Texas A&M Title IX Cumulative Sanction Matrix*

◀————————————— SANCTION RANGE —————————————▶

**EXHIBIT G**

| Stage 1: Reprimand/Restrictions/Review | Stage 2: Probation | Stage 3: Suspension | Stage 4: Expulsion |
|---|---|---|---|
| **SEXUAL HARASSMENT**<br>• Severe, persistent, or pervasive sexual innuendos, jokes, remarks, questions, gestures<br>• Display of sexually explicit visual material | **SEXUAL HARASSMENT**<br>Any one or combination of Stage 1 behaviors plus a behavior from another category | **SEXUAL HARASSMENT**<br>Any one or combination of Stage 1 and/or Stage 2 behaviors plus a behavior from another category | **SEXUAL HARASSMENT**<br>Any one or combination of Stage 1, Stage 2 and/or Stage 3 behaviors plus a behavior from another category |
| **STALKING**<br>• Repeated, unsolicited phone calls, emails, texts, and/or gifts to another person and/or their family/household<br>• Repeatedly following another person or conducting surveillance of another person and/or their family/household<br>• Direct or private unsolicited contact or attempts to contact via social media | **STALKING**<br>Any one or combination of Stage 1 behaviors plus:<br>• 2nd violation of stalking<br>• Repeated, unsolicited contact or attempts to contact via social media | **STALKING**<br>Any one or combination of Stage 1 and/or Stage 2 behaviors plus:<br>• Intimidation or Physical abuse in retaliation for reporting sexual misconduct, dating/domestic violence, and/or stalking<br>• Repeated, unsolicited visits to another person's home, business, and/or class, and/or that of their family/household<br>• Assuming another's identity in order to make contact with complainant | **STALKING**<br>Any one or combination of Stage 1, Stage 2 and/or Stage 3 behaviors |
| **DATING ABUSE & VIOLENCE**<br>• Intimidation: using actions, gestures, and tone of voice to indicate a threat of violence | **DATING ABUSE & VIOLENCE**<br>Any one or combination of Stage 1 behaviors plus:<br>• Preventing complainant from calling for help<br>• Destruction of property<br>• Physical abuse: Pushing, shoving, hair-pulling, scratching, hitting, throwing objects | **DATING ABUSE & VIOLENCE**<br>Any one or combination of Stage 2 behaviors plus:<br>• Intimidation or Physical abuse in retaliation for reporting sexual misconduct, dating/domestic violence, and/or stalking<br>• Displaying weapons, throwing objects at a person with potential to injure<br>• Destruction of valuable property | **DATING ABUSE & VIOLENCE**<br>Any one or combination of Stage 1, Stage 2 and/or Stage 3 behaviors |
| **DOMESTIC ABUSE & VIOLENCE**<br>• Intimidation: using actions, gestures, and tone of voice to indicate a threat of violence | **DOMESTIC ABUSE & VIOLENCE**<br>Any one or combination of Stage 1 behaviors plus:<br>• Preventing Complainant from calling for help or leaving the room<br>• Destruction of property<br>• Physical abuse: Pushing, shoving, hair-pulling, scratching, hitting, throwing objects | **DOMESTIC ABUSE & VIOLENCE**<br>Any one or combination of Stage 2 behaviors plus:<br>• Intimidation or Physical abuse in retaliation for reporting sexual misconduct, dating/domestic violence, and/or stalking<br>• Displaying weapons, throwing objects at a person with potential to injure<br>• Destruction of valuable property | **DOMESTIC ABUSE & VIOLENCE**<br>Any one or combination of Stage 1, Stage 2 and/or Stage 3 behaviors |
| **SEXUAL EXPLOITATION**<br>• Reckless viewing of nudity or sexual behavior | **SEXUAL EXPLOITATION**<br>Any one or combination of Stage 1 behaviors plus:<br>• Allowing others to observe sexual activity without the other person's consent<br>• Intentional viewing of nudity or sexual behavior<br>• Indecent exposure without proper regard for others (i.e. public urination)<br>• Taking or transmitting images or videos of an unidentified person in a sexual, intimate, or private act without that person's consent<br>• Distributing sexual or intimate images or recordings of an unidentified person with-out that person's consent | **SEXUAL EXPLOITATION**<br>Any one or combination of Stage 1 and/or Stage 2 behaviors plus:<br>• Soliciting sexual contact with a minor<br>• Possessing and/ or viewing child pornography/sexual images of those under 18<br>• Taking or transmitting images or videos of an identified person in a sexual, intimate, or private act without that person's consent<br>• Distributing sexual or intimate images or recordings of another identified person without that person's consent<br>• Engaging in sexual activity while knowingly infected with an STD without the other person's knowledge<br>• Deliberate indecent exposure with intent for impact | **SEXUAL EXPLOITATION**<br>Any one or combination of Stage 1, Stage 2 and/or Stage 3 behaviors<br>• Collecting, creating, and/or distributing child pornography/sexual images of those under 18<br>• Prostituting another person |
| **NON-CONSENSUAL SEXUAL CONTACT**<br>• Unwelcomed kissing and/or light touching over clothing | **NON-CONSENSUAL SEXUAL CONTACT**<br>Any one or combination of Stage 1 behaviors plus a behavior from another category plus:<br>• Non-genital fondling, groping or heavy touching<br>• Unwelcomed increased touching, fondling, groping, or genital touching | **NON-CONSENSUAL SEXUAL CONTACT**<br>Any one or combination of Stage 1 and/or Stage 2 behaviors plus:<br>• Unwelcomed touching, fondling, groping or genital touching | **NON-CONSENSUAL SEXUAL CONTACT**<br>Any one or combination of Stage 1, Stage 2 and/or Stage 3 behaviors |
| | | **SEXUAL ABUSE**<br>• Oral sex<br>• Penetration (by sex organs)<br>• Penetration (by means other than sex organs) | **SEXUAL ABUSE**<br>Any one or combination of Stage 3 behaviors with predation |

*Behavioral examples identified in the matrix are not intended to represent an exhaustive listing of prohibited conduct.

August 2018

# Texas A&M Title IX Cumulative Sanction Matrix Dashboard*

SANCTION RANGE

| Stage 1: Reprimand/Restrictions/Review | Stage 2: Probation | Stage 3: Suspension | Stage 4: Expulsion |
|---|---|---|---|

## Sexual Harassment Examples

| SEVERE, PERSISTENT, OR PERVASIVE BEHAVIOR | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Sexual innuendos, jokes, remarks, questions | ■ | ■ | | |
| Sexual gestures and/or gifts of a sexual nature | ■ | ■ | | |
| Display of sexually explicit visual material | ■ | ■ | ■ | |
| Pressuring another person for dates or sexual favors | ■ | ■ | ■ | |
| Depriving another person educational access, benefits, opportunities | ■ | ■ | | ■ |
| Threats in retaliation for reporting sexual misconduct, dating/domestic violence, and/or stalking (includes deprivation of and educational opportunity or benefit) | | | ■ | ■ |

## Domestic Abuse & Violence Examples

| BEHAVIOR | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Intimidation: Using actions, gestures, and tone of voice to indicate a threat of violence | ■ | ■ | ■ | ■ |
| Preventing complainant from calling for help | | ■ | ■ | ■ |
| Destruction of property | | ■ | ■ | ■ |
| Physical abuse: Pushing, shoving, hair-pulling, scratching, hitting, using force to prevent partner from leaving | | ■ | ■ | ■ |
| Intimidation or Physical abuse in retaliation for reporting sexual misconduct, dating/domestic violence, and/or stalking | | | ■ | ■ |
| Displaying weapons, throwing objects at a person with potential to injure | | | ■ | ■ |

## Stalking Examples

| BEHAVIOR | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Repeated, unsolicited phone calls, emails, texts, and/or gifts to another person and/or their family/household | ■ | ■ | | ■ |
| Repeatedly following another person or conducting surveillance of another person and/or their family/household | ■ | ■ | | ■ |
| Repeated, unsolicited visits to another person's home, business, and/or class, and/or that of their family/household | | ■ | | ■ |
| Repeated, unsolicited contact or attempts to contact via social media | | ■ | | ■ |
| Intimidation or physical abuse in retaliation for reporting sexual misconduct, dating/domestic violence, and/or stalking | | | ■ | ■ |
| Assuming another's identity in order to make contact with complainant | | | ■ | ■ |

## Dating Abuse & Violence Examples

| BEHAVIOR | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Intimidation: Using actions, gestures, and tone of voice to indicate a threat of violence | ■ | ■ | ■ | ■ |
| Preventing complainant from calling for help | | ■ | ■ | ■ |
| Destruction of property | | ■ | ■ | ■ |
| Physical abuse: Pushing, shoving, hair-pulling, scratching, hitting, using force to prevent partner from leaving | | ■ | ■ | ■ |
| Intimidation or Physical abuse in retaliation for reporting sexual misconduct, dating/domestic violence, and/or stalking | | | ■ | ■ |
| Displaying weapons, throwing objects at a person with potential to injure | | | ■ | ■ |

## Sexual Exploitation Examples

| BEHAVIOR | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Reckless viewing of nudity or sexual behavior | ■ | ■ | ■ | |
| Allowing others to observe sexual activity without the other person's consent | | ■ | ■ | ■ |
| Taking or transmitting images or videos of another person in a sexual, intimate, or private act without that person's consent | | ■ | ■ | ■ |
| Distributing sexual or intimate images or recordings of another person without that person's consent | | ■ | ■ | ■ |
| Allowing others to observe sexual activity without the other person's consent | | ■ | ■ | ■ |
| Engaging in sexual activity while knowingly infected with an STD without the other person's knowledge | | | ■ | ■ |
| Possessing and/or viewing child pornography/sexual images of those under 18 | | ■ | ■ | ■ |
| Deliberate indecent exposure with intent for impact | | ■ | ■ | ■ |
| Collecting, creating, and/or distributing child pornography/sexual images of those under 18 | | | | ■ |
| Prostituting another person | | | | ■ |

## Non-consensual Sexual Contact Examples

| BEHAVIOR | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Unwelcomed kissing and/or light touching over clothing | ■ | ■ | ■ | |
| Non-genital fondling, groping or heavy touching | | ■ | ■ | ■ |
| Unwelcomed increased touching, fondling, groping, or genital touching | | ■ | ■ | ■ |
| Unwelcomed touching, fondling, groping or genital touching | | | ■ | ■ |

## Sexual Abuse Examples

| BEHAVIOR | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Oral sex | | | ■ | ■ |
| Penetration (by sex organs) | | | ■ | ■ |
| Penetration (by means other than sex organs) | | | ■ | ■ |

*Behavioral examples identified in the matrix are not intended to represent an exhaustive listing of prohibited conduct.

August 2018