# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| R.B. | Case No. |
| Plaintiff, | Judge |
| v. | MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| JENNIFER M. SMITH, ET AL. | |
| Defendants | |

Pursuant to Federal R. Civil Rule 65, Plaintiff R.B. seeks a temporary restraining order and, following a hearing, a preliminary injunction prohibiting Defendants, who are employees of Texas A&M University ("TAMU") and, at all times, were implementing the policies and procedures of the school from suspending him in violation of his constitutional due process rights. This Motion is accompanied by the Affidavit of R.B.

This case is one of many cases arising amidst a national controversy stemming from the Federal Department of Education, Office of Civil Rights' ("OCR") threats to withhold federal education funds to compel colleges and universities to address "sexual violence" on their campuses. While the Complaint raises a number of claims, this Motion focuses on a single aspect of the discipline process faced by R.B.: the failure of TAMU to permit R.B. to confront witnesses who provided contrary information. This violated R.B.'s constitutional right to due process. *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) ("If a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process.").

**MEMORANDUM**

**FACTS**

R.B. brought this action for a declaratory judgment, violation of 42 U.S.C. §1983, and injunctive relief. This case arises out of the decision of TAMU to impose disciplinary sanctions against R.B. in violation of his Constitutional due process rights.

**A.      TAMU's Response to The Growing Problem of Sexual Assaults on Campus**

After years of criticism for being too lax on campus sexual assault, on April 11, 2011, OCR sent a "Dear Colleague Letter" to colleges and universities. The Dear Colleague Letter indicated that, in order to comply with Title IX, colleges and Universities must have transparent, prompt procedures to investigate and resolve complaints of sexual misconduct. Most notably, the Dear Colleague Letter required schools to adopt a relatively low burden of proof—"more likely than not"—in cases involving sexual misconduct, including assault. The Dear Colleague Letter has received substantial criticism. One federal appeals court judge observed that the Dear Colleague Letter "was not adopted according to notice-and-comment rulemaking procedures; its extremely broad definition of 'sexual harassment' has no counterpart in federal civil rights case law; and the procedures prescribed for adjudication of sexual misconduct are heavily weighted in favor of finding guilt." *Plummer v. Univ. of Houston*, 860 F.3d 767, 779-80 (5th Cir. 2017) (Jones, J., dissenting). On September 22, 2017, the Department of Education withdrew the Dear Colleague Letter and indicated its intent to issue new guidance "through a rulemaking process that responds to public comment." Letter from Office for Civil Rights, U.S. Dep't of Educ. (September 22, 2017).[1] In withdrawing the Dear Colleague Letter, OCR might have been describing TAMU's actions in this case: prior actions "may have been well-intentioned, but . . .

---

[1]Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

led to the deprivation of rights for many students—both accused students denied fair process and victims denied an adequate resolution of their complaints." *Id.* at 1-2. OCR further said:

> Legal commentators have criticized the 2011 Letter . . . for placing "improper pressure upon universities to adopt procedures that do not afford fundamental fairness." As a result, many schools have established procedures for resolving allegations that "lack the most basic elements of fairness and due process, are overwhelmingly stacked against the accused, and are in no way required by Title IX law or regulation."

*Id.* at 1, *quoting Open Letter From Members Of The Penn Law School Faculty: Sexual Assault Complaints: Protecting Complainants And The Accused Students At Universities*, Feb. 8, 2015; *Rethink Harvard's Sexual Harassment Policy*, Boston Globe (Oct. 15, 2014) (statement of 28 members of the Harvard Law School faculty).[2]

TAMU has been the subject of two separate investigations by OCR into the manner in which it investigates and adjudicates complaints of sexual assault and sexual harassment on campus. *See* OCR Docket No. 06-15-2023; OCR; OCR Docket No. 06-17-2067.

In 2018, TAMU received two reports reviewing how it handles allegations of Sexual Misconduct. One report noted that the Title IX process is viewed by students as "complicated, inaccessible, and difficult to locate and navigate."[3] Another report reviewed, in part, whether the TAMU procedures provided adequate due process.[4]

TAMU has adopted certain policies and procedures for the investigation and adjudication of alleged sexual misconduct, as required by Title IX. These rules and procedures are contained within the TAMU Student Rules and have recently been revised. (*See* Complaint ¶¶ 27-39 and accompanying

---

[2] *Cf. Doe v. Distefano*, D.Colo. Civil Action No. 16-cv-1789-, 2018 U.S. Dist. LEXIS 76268, at *22 (May 7, 2018) ("[T]he court notes the following. Prior to the 2011 Dear Colleague Letter… academic discipline lawsuits were (a) much less frequent and (b) as likely as not to arise from matters closer to the core of the academic process, such as cheating").

[3] https://urc.tamu.edu/media/1601369/title_ix_internal_review_report_august_2018.pd

[4] https://www.tamu.edu/statements/HB-TAMU-Title-IX-Report.pdf

exhibits.)  Complaints against students for sexual misconduct are investigated by the Department of Civil Rights and Equity Investigations.  A "Student Conduct Panel" reviews the investigation and evidence and makes a determination of whether the accused student has violated any Student Rules.  This determination is made under the preponderance of the evidence standard.  (Complaint ¶34.)

At the hearing, an accused student is permitted to have an "advisor" present.  However, the advisor may not "represent" the accused student or participate in the proceedings.  The accused student may present witnesses and other evidence to the Student Conduct Panel.  However, witnesses cannot be compelled to attend the hearings.  In particular, the alleged victim and other adverse witnesses – who provided information summarized in the investigation—are not required to attend the Student Conduct Conference.  (Complaint ¶35.)  A student found to have violated the Student Rules is entitled to an appeal.  Sanctions for sexual misconduct include dismissal, suspension, removal from campus housing, educational intervention, no-contact orders and/or restrictions from participating in intercollegiate athletics or co-curricular activities. (Complaint ¶39.)

## B.    The Allegations Against R.B.

R.B. was alleged to have committed sexual misconduct by harassing women and making unwanted sexual contact with women in the Freshman Leadership Organization, known as Freshman Aggies Spreading Tradition.[5]  R.B. unequivocally denies engaging in any sexual misconduct or harassment.  (R.B. Declaration ¶5.)

On March 29, 2019, R.B. received a letter from Upshaw-Brown.  R.B. was not provided with any details of the allegations against him.  He was told only that "Information has been forwarded to the Offices of the Dean of Student Life, Student Conduct Office, regarding concerns about your

---

[5] Notably, no direct complaint was initially made by the alleged victims.  Instead, the previous FAST director, told her organization advisor about the reports she had received from another executive member.

interactions with a fellow student." R.B. was told that he was required to attend a meeting a few days later. At the meeting, he was informed that four women – SF, TS, EB, and SR – had made various allegations of sexual harassment and sexual contact without consent. (R.B. Declaration ¶6 and Exhibit A.)

TAMU conducted an investigation and completed a report. The four complainants and R.B. were interviewed, along with other students. (R.B. Declaration ¶7.) On June 26, 2019, R.B. received a letter from Upshaw-Brown informing him that he had been formally charged with violating TAMU Student Rules. (R.B. Declaration ¶¶7-8 and Exhibit B.) A hearing on the accusations against R.B. was held on July 30, 2019. R.B. raises a number of issues related to the fundamental fairness of the hearing, but for purposes of this Motion one fact is paramount: the four complainants, SF, TS, EB, and SR, did not appear at the hearing. As a result R.B. had no opportunity to ask questions of the adverse witnesses to test their credibility. (R.B. Declaration ¶¶9-15.) R.B. states in his Declaration:

> The four complainants did not appear at the hearing. Additional witnesses whose statements were summarized in the investigative report also did not appear. I asked a number of times if he could submit questions for persons who had provided adverse information; this request was denied. As a result I had no opportunity to ask questions of the adverse witnesses to test their credibility.

(R.B. Declaration ¶15.)

On July 31, 2019 R.B. received a letter from Lott describing the results of the hearing. R.B. was found responsible for sexual harassment of SR. (R.B. Declaration ¶16 and Exhibit C.) The letter indicates that R.B. was found responsible "based on the complainant's written statements." R.B. was also found responsible for sexual harassment of SF and sexual contact with SF. The letter indicates that R.B. was found responsible "based on statements from the complainant and respondent that acknowledged that the behavior occurred." However, the Letter does not describe any statements by R.B. concerning the alleged conduct. R.B. was found responsible for damaging a wall. R.B. was found not responsible for the allegations involving EB and TS. (R.B. Declaration ¶16.)

R.B. was suspended through May 2020. (R.B. Declaration ¶17.) He is not permitted to be on the TAMU campus and, if he returns, would be placed on probation. He is also required to attend an "Ethics & Decision Making" workshop and "attend one or more meetings with a University Administrator to discuss consent." (R.B. Declaration Exhibit C.)

R.B. submitted an appeal; this appeal remains pending. (R.B. Declaration ¶19.) It is uncertain if the appeal will be completed before the start of classes. (R.B. Declaration ¶18.)

The suspension will cause R.B. to be denied the benefits of education at his chosen school, damaged his academic and professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career. (R.B. Declaration ¶20.)

This litigation followed.

## ARGUMENT

### A. The Standard For Resolution Of This Motion

The purpose of a preliminary injunction is to preserve the *status quo* or "the relative positions of the parties." *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). *See also Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1178 (5th Cir. 1989); *Meis v. Sanitas Serv. Corp.*, 511 F.2d 655, 656 (5th Cir. 1975). A court may grant a preliminary injunction if the movant shows: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018), *quoting Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

### B. Recent Cases Granting Preliminary Injunctions To Students

In a number of recent cases, federal courts have granted preliminary injunctive relief prohibiting public universities[6] from implementing discipline against students accused of sexual misconduct where the student raised significant due process concerns.

- In *Doe v. Rector & Visitors*, W.D.Va. Civil Action No. 3:19CV00038, 2019 U.S. Dist. LEXIS 108990 (June 28, 2019), a court granted a preliminary injunction prohibiting a public university from proceeding with a disciplinary hearing after concluding that the student had demonstrated a likelihood of success on the merits of his procedural due process claim.

- In *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 826 (E.D.Mich. 2018), a court granted a preliminary injunction prohibiting a public university from continuing with an unconstitutional disciplinary process on the grounds that "at this very moment, the University may be denying Plaintiff due process protections to which he is entitled."

- In *Nokes v. Miami Univ.*, S.D.Ohio No. 1:17-cv-482, 2017 U.S. Dist. LEXIS 136880 (Aug. 25, 2017), a court granted a preliminary injunction prohibiting a public university from suspending a student who had alleged that the school had acted in violation of his constitutional due process rights to notice and confrontation of adverse witnesses.

- In *Doe v. Pennsylvania State Univ.*, M.D.Pa. No. 17-CV-01315, 2017 U.S. Dist. LEXIS 132186 (Aug. 18, 2017), a court granted a preliminary injunction to student who had alleged that a school acted in violation of his due process right to confrontation in disciplinary proceedings

- In *Doe v. University of Cincinnati,* 223 F. Supp. 3d 704 (S.D. Ohio 2016), *aff'd* 872 F.3d 393 (6th Cir. 2017), a court granted a preliminary injunction prohibiting a pubic university from suspending a student who had alleged that the school had acted in violation of his constitutional due process right to confront adverse witnesses.

- In *Roe v. Adams-Gaston*, S.D.Ohio No. 2:17-cv-945, 2018 U.S. Dist. LEXIS 185697 (Apr. 17, 2018), a Court granted a preliminary injunction prohibiting The Ohio State University from

---

[6] Federal courts have also granted preliminary injunctive relief to students accused of sexual misconduct who alleged that private schools had breached contractual obligations or otherwise failed to provide a fundamentally fair process. *See e.g. Doe v. Brown Univ.,* 210 F. Supp. 3d 310, 313 (D.R.I. 2016) (court concluded that school breached its contract with a student by the manner in which it conducted his disciplinary hearing on an allegation of sexual misconduct); *Doe v. Univ. of Notre Dame*, N.D.Ind. No. 3:17CV298, 2017 U.S. Dist. LEXIS 69645 (May 8, 2017) (court concluded that a student facing discipline for an allegation of sexual misconduct has demonstrated "at least some likelihood of success on the merits of his breach of contract claim and of irreparable harm"); *Doe v. Middlebury College,* D.Vt. No. 1:15-cv-192-jgm, 2015 U.S. Dist. LEXIS 124540 (Sep. 16, 2015), (court found that a student accused of sexual misconduct had "demonstrated a sufficiently serious question regarding whether [the school] violated its policies"); *King v. DePauw Univ.*, No. 2:14-cv-70, 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. Aug. 22, 2014) (court found that a student accused of sexual misconduct had demonstrated likely success on breach of contract claims against the school).

expelling a student who alleged that the school disciplinary proceedings violated her constitutional due process right of confrontation.

- In *Ritter v. Oklahoma*, W.D.Okla. No. CIV-16-043 8-HE, 2016 U.S. Dist. LEXIS 60193 (May 6, 2016), the court observed that "universities must ensure that the rights of both the accused and the accuser are protected." The school was ordered to stay any discipline and to permit a student facing discipline for an allegation of misconduct to attempt to complete all remaining graduation requirements.

These cases all represent situations where students who had credible evidence that a school employed an unfair disciplinary process has demonstrated sufficient facts to warrant the issuance of equitable relief on either a preliminary or permanent basis.[7]

## C. The Plaintiff Has A Substantial Likelihood of Success.

TAMU students facing discipline must be afforded the opportunity to defend, enforce or protect their rights through presentation of their own evidence, confrontation of adverse witnesses, and oral argument. *Goldberg v. Kelly*, 397 U.S. 254 (1970). In determining whether TAMU provided constitutionally adequate due process, the competing interests of the governmental institution and the individual must be balanced.[8] *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The fundamental

---

[7] A number of other recent lawsuits challenging similar procedures have survived preliminary motions as federal courts expressed concern about the failure of schools to provide fundamentally fair disciplinary processes. *See e.g, Doe v. Amherst* College, D.Mass. Civil Action No. 15-30097-MGM, 2017 U.S. Dist. LEXIS 28327, at *41 (Feb. 28, 2017) (denying motion for judgment on pleadings for breach of contract for school policies enacted due to OCR pressure); *Naumov v. McDaniel College, Inc.*, D.Md. No. GJH-15-482, 2017 U.S. Dist. LEXIS 49887, at *29 (Mar. 31, 2017) (rejecting argument that Dear Colleague Letter required breach of college handbook); *Collick v. William Paterson Univ.*, D.N.J. No. 16-471, 2016 U.S. Dist. LEXIS 160359, at *69-70 (Nov. 17, 2016)("the Complaint sufficiently alleges that Defendants did not adhere to [the school's] own rules, that the procedure they followed was unfair, and that the decision was not based on sufficient evidence"); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016)("the Court concludes that the complaint plausibly alleges that [the school] did not provide 'basic fairness' to" accused student); *Doe v. Lynn Univ., Inc.*, S.D.Fla. No. 9:16-CV-80850, 2017 U.S. Dist. LEXIS 7529, at *17 (Jan. 19, 2017) (plaintiff stated valid claims for of contract and breach of the implied covenant of good faith and fear dealing in connection with sexual assault investigation).

[8] The three factors set forth in *Mathews v. Eldridge*: "(1) the nature of the private interest affected -- that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated." *See Ingraham v. Wright*, 430 U.S. 651, 676 (1977) (applying *Mathews*). The amount

requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 355 *quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

## 1. Liberty Interest

R.B. is entitled to due process in the disciplinary proceedings held at TAMU. The Fifth Circuit has observed that students "have a liberty interest in their higher education." *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir.2017)., *citing Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929-30 (Tex. 1995) (recognizing a liberty interest in graduate higher education under the Texas Constitution). *See also Dixon v. Alabama State Bd. of Edn.*, 294 F.2d 150, 157 (5th Cir. 1961) ("The precise nature of the private interest involved in this case is the right to remain at a public institution of higher learning in which the plaintiffs were students in good standing."); *O'Neal v. Alamo Community College Dist.,* W.D.Tex. Civil Action No. SA-08-CA-1031-XR, 2010 U.S. Dist. LEXIS 6637, at *21 (Jan. 27, 2010) ("The Fifth Circuit has likewise recognized this liberty interest" in *Dixon*); *Oliver v. Univ. of Texas Southwestern Med. School*, N.D.Tex. No. 3:18-CV-1549-B, 2019 U.S. Dist. LEXIS 21289, at *22 (Feb. 11, 2019) ("district court decisions from this circuit even before *Plummer* have recognized that students have a liberty interest in higher education).

## 2. Lack of Cross-Examination

The TAMU administrative hearings for R.B. relied on summaries of interviews conducted by investigators. The investigative panel reviewed an investigative report, but the alleged victims and key witnesses did not appear at the hearing. The investigators also, despite the specific request of R.B., did not appear at the hearing. This violated R.B.'s right to confront adverse witnesses when the information supplied by those witnesses was the reason for the adverse action and there was a question

---

of process due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in *Mathews.*

of credibility to be resolved by the finder of facts.[9] *Goldberg v. Kelly, supra; Doe v. Univ. of Cincinnati,* 872 F.3d 393 (6th Cir. 2017); *Doe v. Baum, supra.*

### a. *Goldberg, University of Cincinnati,* **and** *Baum*

In *Goldberg,* the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires an evidentiary hearing before a recipient of certain government welfare benefits could be deprived of such benefits. Of relevance to the issue in this case, the Court held that while there is no right to a formal trial, due process requires an opportunity for the aggrieved person to confront and cross-examine adverse witnesses. 397 U.S. at 269-270. The Court said, "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *See also Doe v. Ohio State Univ.,* No. 2:15-CV-2830, 2016 U.S. Dist. LEXIS 154179, *10 (S.D. Ohio Nov. 7, 2016) (holding that where a disciplinary proceeding depends on a choice between believing an accuser and an accused cross-examination is not only beneficial, but essential to due process).

In *Univ. of Cincinnati, supra,* the Sixth Circuit held, "Accused students must have the right to cross-examine adverse witnesses 'in the most serious of cases.'" 872. f3d at 401 (citations omitted). In *Doe v. University of Cincinnati,* the court observed that in applying the *Mathews* test, the focus should be on the risk of erroneous deprivation under the current procedures used and the value of any additional or substitute procedural safeguards. Accordingly, when there is an absence of cross-examination the process should be evaluated on its impact on the entire process, not necessarily solely on whether the absence of cross-examination had an adverse impact on the accused student. In other

---

[9] Important: R.B. is *not* claiming an unlimited right to cross-examination in school disciplinary proceedings. Rather, the right claimed in limited to cases where there are disputed facts and the witnesses relied upon provide the evidence for the decision resolving the dispute.

words, the absence of cross-examination violates the due process rights of accused students because it impacts the reliability of the entire process. The court said:

> UC assumes cross-examination is of benefit only to Doe. In truth, the opportunity to question a witness and observe her demeanor while being questioned can be just as important to the trier of fact as it is to the accused. . . . Few procedures safeguard accuracy better than adversarial questioning.

873 F.3d at 401 (citations omitted). The court further elaborated on the benefit of cross-examination to the entire process:

> But if a university's procedures are insufficient to make "issues of credibility and truthfulness . . . clear to the decision makers," that institution risks removing the wrong students, while overlooking those it should be removing. *See Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 252 (E.D. Pa. 2012). "The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, that is not the case, and no one suggests that it is." [*Goss v. Lopez*, 419 U.S. 565, 579-580 (1975)]. Cross-examination, "the principal means by which the believability of a witness and the truth of his testimony are tested," can reduce the likelihood of a mistaken exclusion and help defendants better identify those who pose a risk of harm to their fellow students.

872 F.3d. at 403.[10]

The Sixth Circuit reaffirmed the core holding of *Univ. of Cincinnati.* in *Baum*, *supra*. The court in *Baum* considered a situation where a University of Michigan student was disciplined for sexual

---

[10] Consistent with *Goldberg*, other circuits have reached a similar conclusion. The First Circuit has also recognized a right to cross-examination in school disciplinary hearings. *Haidak v. Univ. of Massachusetts-Amherst*, 1st Cir. No. 18-1248, 2019 U.S. App. LEXIS 23482, at *24-26 (Aug. 6, 2019). In *Haidak* the First Circuit agreed with the Sixth Circuit in *Baum* that "the complete absence of any examination before the factfinder to be procedurally deficient." 2019 U.S. App. LEXIS 23482, at *24. However, the court declined to find that a "school had to provide for cross-examination by the accused or his representative in all cases turning on credibility determinations." 2019 U.S. App. LEXIS 23482, at *26. *See also Gorman v. University of Rhode Island*, 837 F.2d 7, 16 (1st Cir.1988) (holding that while there is no right to "unlimited" cross-examination in school disciplinary hearings, due process requires that some cross-examination to permit an accused to "elicit[] the truth about the facts and events in issue"). This Court does not need to explore the difference between the approaches of the First and Sixth Circuits, since the TAMU procedure would be unconstitutional under both approaches. In *Haidak*, unlike in this case, the alleged victim appeared before the hearing panel and was questioned "at length on the matters central to the charges." 2019 U.S. App. LEXIS 23482, at *27.

misconduct even though he "never received an opportunity to cross-examine the alleged victim or her witnesses, either before an investigator or a hearing board. 903 F.3d at 582. The court found that this violated the due process rights of the accused student. In reaching this conclusion, the court emphasized the value of cross-examination in reaching more accurate and reliable outcomes:

> Not only does cross-examination allow the accused to identify inconsistencies in the other side's story, but it also gives the fact-finder an opportunity to assess a witness's demeanor and determine who can be trusted. Id. So if a university is faced with competing narratives about potential misconduct, the administration must facilitate some form of cross-examination in order to satisfy due process.

903 F.3d at 581.

### b.    The Fifth Circuit's *Plummer* Decision

The Fifth Circuit considered this issue without reaching a conclusion in *Plummer*, *supra*. In *Plummer*, two students faced discipline for sexual misconduct that was captured on video. The students argued that they were denied the ability to confront the alleged victim because she failed to appear at the disciplinary hearing. In a 2-1 decision, the court concluded that there was no constitutional right to confrontation in that case because the "conduct depicted in the videos… was sufficient to sustain the University's findings and sanctions." 860 F.3d at 775. The Fifth Circuit, however, emphasized that the "unique facts" of the case and emphasized that the court was not "determin[ing] whether confrontation and cross-examination would ever be constitutionally required in student disciplinary

---

The Second Circuit held has that there was no requirement that a student be able to cross-examine a witness whose testimony is not determinative to the outcome of the case. *Winnick v. Manning*, 460 F.2d 545 (2d Cir. 1972). But, significantly, the Second Circuit in *Winnick* court noted, "if this case had resolved itself into a problem of credibility, cross-examination of witnesses might have been essential to a fair hearing." *Id.* at 550.

The Seventh Circuit confronted a case where the student had no opportunity to confront his accuser, but declined to reach the cross-examination issue because the student had alleged other sufficient procedural deficiencies justifying a decision in his favor. *Doe v. Purdue Univ.*, 7th Cir. No. 17-3565, 2019 U.S. App. LEXIS 19464, at *23 n. 4 (June 28, 2019).

proceedings." 860 F.3d at 776. *Compare* 860 F.3d at 783-84 (Jones, J., dissenting ) ("The University wants to have it both ways, degrading the integrity of its fact finding procedures, while congratulating itself for vigorously attacking campus sexual misconduct. Overprosecution is nothing to boast about.").

*Plummer* cited to the Sixth Circuit's opinion in *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629 (6th Cir. 2005). Flaim illustrates the idea that cross-examination is not required where there is no issue of credibility or fact for the panel to consider.[11] This does not mean, however, that the fact that R.B. may have acknowledged responsibility for causing damage changes the analysis (he consistently denied any sexual misconduct).[12] The harm suffered by R.B. as a result of being found responsible for sexual misconduct is substantially greater than any discipline imposed for other allegations of non-academic misconduct. In addition to a tarnished disciplinary record, he is also facing the "stigma" of being labeled 'responsible' for engaging in sexual misconduct. *Doe v. Pennsylvania State Univ.*, 336 F. Supp. 3d at 448 (M.D.Pa.2018). The Fifth Circuit in *Plummer* observed that the sanctions imposed by the university for sexual misconduct were significant. Judge Jones, dissenting in *Plummer*, focused on the fact that sanctions imposed for sexual misconduct could have a substantial lasting impact on a student's personal life, educational and employment opportunities, and reputation in the community. She specifically noted "the impact of the 'sexual predator' stigma on [a student's] careers and reputations" and that a student's interest in their "reputations in the face of serious sexual misconduct

---

[11] In *Flaim* the student was convicted of a felony, which was enough to justify an adverse action by the school. As a result, as the Sixth Circuit observed, additional process from confrontation of the accuser would have provided "no benefit to Flaim or any reduced risk of error." 418 F.3d at 639-640.

[12] Under the TAMU sanctions matrix, such conduct, if proven, would likely only result in a reprimand or probation. (*See* Complaint ¶39 and Exhibit G.) Should TAMU suggest otherwise – and it seems highly unlikely that TAMU would suspend a student with no history of misconduct for a year for causing $40 in damages to a wall – then Plaintiff would request leave to seek, through expedited discovery, the production of prior disciplinary records for minor property damage.

charges [was] compelling." 860 F.3d at 781-82 (Jones, J., dissenting). Other courts agree. In *Cummins*, the Sixth Circuit explained that a finding of responsibility for a serious sexual offense will have a substantial lasting impact on a student's personal life, educational and employment opportunities, and reputation in the community. *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). *See also Doe v. Miami University*, 882 F.3d 579, 600 (6th Cir. 2018) ("[T]he effect of a finding of responsibility for sexual misconduct on a person's good name, reputation, honor, or integrity is profound."); *Furey*, 884 F. Supp. 2d at 247 ("Expulsion also damages the student's academic and professional reputation, even more so when the charges against him are serious enough to constitute criminal behavior.").

### c.   Application To the R.B. Disciplinary Matter

In the TAMU Disciplinary Matter the alleged victims never appeared at the hearing. In addition, the investigators and other witnesses who provided information contained in the investigative report and the investigators did not appear. This is material; the letter informing R.B. of his discipline, in a number of places, states that "The panel finds the respondent responsible based on the complainant's written statements."[13]

No detailed discussion is necessary to find that R.B.'s due process rights were violated because he was never provided any opportunity to confront his accusers. *Doe v. Univ. Of Cincinnati* and *Baum* present exactly the same fact pattern. The Sixth Circuit in *Univ. of Cincinnati* said that a school deciding a case where credibility is at issue "without seeing or hearing from [the alleged victim] at all" is "disturbing and . . . a denial of due process." 872 F.3d 393 at 402. *See also Gorman*, 837 F.2d at 16 (noting while there is no right to "unlimited" cross-examination, due process requires that some cross-

---

[13] The fact that R.B. may have admitted to damaging a wall does not change this analysis. Under the TAMU sanctions matrix, such conduct, if proven, would likely only result in a reprimand or probation. (*See* Complaint ¶39 and Exhibit G.) Sanctions for this conduct, only, would also not include the stigma of discipline for sexual misconduct.

examination is required to permit an accused to "elicit[] the truth about the facts and events in issue").[14] Other courts, after examining have reached the same conclusion.

Other courts in this Circuit, after reviewing *Plummer*, *Univ. of Cincinnati*, and *Baum* have followed the Sixth Circuit's approach to cross-examination in disciplinary hearings for cases of sexual misconduct. *Papin v. Univ. of Mississippi Med. Ctr.*, 347 F. Supp. 3d 274 (S.D.Miss. 2018); *Doe v. Univ. of Mississippi*, 361 F. Supp. 3d 597 (S.D.Miss. 2019); *Oliver v. Univ. of Texas Southwestern Med. School*, N.D.Tex. No. 3:18-CV-1549-B, 2019 U.S. Dist. LEXIS 21289 (Feb. 11, 2019); *Papin v. Univ. of Mississippi Med. Ctr.*, 347 F. Supp. 3d 274 (S.D.Miss. 2018). In *Papin*, the court considered *Plummer* then found a due process violation where medical resident "did not have the opportunity for questioning or presentation of his own witnesses" at a disciplinary hearing. 347 F. Supp. 3d at 282. In *Univ. of Mississippi*, the court observed that the *Plummer* court had not directly addressed the issue. The court then rejected the argument by the school that the court should "reject the Sixth Circuit's approach to cross-examination in the student disciplinary context…" 361 F.Supp.3d at 612. The court, instead, emphasized the value of cross-examination in student disciplinary hearings where there

---

[14] In terms of the *Mathews* factors:

- The Plaintiff's interest avoiding unfair or mistaken exclusion from the benefits of the educational system has been recognized as significant. This interest includes the loss of education, potential damage to the plaintiff's reputation, and potential interference with later opportunities for education and employment. *Goss*, 419 U.S. at 579; *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 247 (E.D.Pa. 2012).

- The risk of erroneous deprivation when no cross-examination is permitted is high. The purpose of cross-examination is to help find the truth. In *Furey*, the court held that cross-examination was required in a case of student discipline where the facts were in dispute: "The purpose of cross-examination is to ensure that issues of credibility and truthfulness are made clear to the decision makers. Given the importance of credibility in this Hearing . . . the Court considers this an important safeguard." 884 F.Supp.2d at 251.

- TAMU's interest in not requiring some form of confrontation of an adverse witness is limited. The rules already contemplate that witnesses will appear before the hearing officer and that parties may confront those witnesses through indirect questions.

is an issue of fact. The court said, "It is at least plausible… that giving [plaintiff] an opportunity to cross-examine [the alleged victim] could have added some value to the hearing…" 361 F.Supp.3d at 613. Similarly, in *Olivier* the court noted that *Plummer* was limited to its facts. The *Olivier* court found due process violations where a student was disciplined without, *inter alia*, "live testimony by [the alleged victim] or opportunity to cross-examination her." 2019 U.S. Dist. LEXIS 21289 at *40.

The exclusion of R.B.'s ability to cross-examine his accusers is a clear due process violation. TAMU is aware of this. Its own internal report observes that the Fifth Circuit has not spoken definitively on this issue, but suggests that TAMU should follow the approach of the Sixth Circuit:

> TAMU's policy does not provide a right of direct cross-examination, nor does it explain how effective cross-examination is effectuated. We understand that in practice each party is advised of the substance of the other's testimony such that he or she is able to formulate questions to be posed, but an effective form of cross-examination that satisfies the instructive holdings in [*Univ. of Cincinnati*] and [*Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016)] should be stated in TAMU's policies and procedures.

*Review Of TAMU University's Title Ix-Related Policies* at 21 (August 2018) [15] Courts outside of the Fifth and Sixth Circuits have reached similar conclusions. *Powell v. Montana State Univ.*, D.Mont. No. CV 17-15-, 2018 U.S. Dist. LEXIS 215891, at *17-18 (Dec. 21, 2018)(relying on *Univ. of Cincinnati* and *Baum* to deny summary judgment to a school that had imposed discipline in a "'he said/she said' dispute turning on credibility") 2018 U.S. Dist. LEXIS 215891 at *17-18; *Doe v. Univ. of S. California*, 29 Cal. App. 5th 1212, 1236-1237 (2018) (following *Univ. of Cincinnati* and *Baum*; "Given the conflicting witness statements and lack of corroborating evidence, a fair hearing required… the adjudicator to assess personally the credibility of critical witnesses,… As part of the adjudicator's assessment of credibility, an accused student must have the opportunity indirectly to question the complainant."). *Compare Doe v. Univ. of Mississippi,* S.D.Miss. 2018 U.S. Dist. LEXIS 123181, at *24 (July 24, 2018)

---

[15]https://www.tamu.edu/statements/HB-TAMU-Title-IX-Report.pdf

(finding no due process violation where student had "a meaningful opportunity to pose questions to the witnesses who testified against him").

### 4. Plaintiff Does Not Need To Wait For The Appeal To Be Resolved

R.B. has an appeal pending, but has filed this Complaint now because TAMU has not indicated an ability to decide the appeal before the beginning of the semester. (Declaration of R.B. ¶19.) This does not prevent this Court from granting immediate relief. The Supreme Court has held that exhaustion of state remedies is not required before a plaintiff can bring suit under §1983 for denial of due process. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516, (1982); *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, (1987). The *Patsy* decision was based upon a recognition that Congress, in enacting §1983, had "assigned to the federal courts a paramount role in protecting constitutional rights." 457 U.S. at 503.[16]

Recently, a court facing the same issue as this case – a disciplinary proceeding with no ability to cross-examine accusers – issued an injunction against a university disciplinary proceeding prior to the hearing. *Doe v. Univ. of Michigan*, 325 F. Supp. 3d 821, 826 (E.D. Mich. 2018). In that case, a district court granted a preliminary injunction prohibiting a public university from continuing with an unconstitutional disciplinary process. In doing so, the court explicitly rejected an almost identical ripeness argument. The court said,

> if the Court denies this Motion, but ultimately finds that the Policy violates due process, Plaintiff will have been forced to defend himself against serious sexual assault allegations without adequate constitutional safeguards. Defendants essentially ask the Court to sit back and wait… But, at this very moment, the University may be denying Plaintiff due process protections to which he is entitled. The Court cannot, and will

---

[16] In other cases, brought under motion to dismiss standards, federal courts have relied on *Patsy* to hold that complaints brought by students alleging due process violations in a hearing process should be permitted to continue even though further proceeding at the school were available. *Yoder v. Univ. of Louisville*, 2009 U.S. Dist. LEXIS 67241, 13-14 (W.D. Ky. Aug. 3, 2009), *rev'd on other grounds* 417 Fed. Appx. 529 (2011) ("the law is clear that exhaustion is not a prerequisite to maintenance of an action under §1983"); *Pomeroy v. Ashburnham Westminster Reg'l Sch. Dist.*, 410 F. Supp. 2d 7, 16 (D. Mass. 2006) (§1983 claim survived even though the student did not pursue these available appeals).

not, simply stand by as the fruit continues to rot on the tree. This case is ripe for adjudication.

325 F. Supp. 3d at 826.

## D.    Irreparable Harm

The Complaint and Affidavit of R.B. describe the irreparable harm R.B. will suffer if a temporary restraining order and preliminary injunction are not granted. Suspension from TAMU or the imposition of other discipline would deny R.B. the benefits of education at his chosen school, would damage his academic and professional reputations, and may affect his ability to enroll at other institutions of higher education and to pursue a career. This has been found to constitute irreparable harm. In *Doe v. Univ. of Cincinnati,* the Sixth Circuit observed that a suspended student would "suffer reputational harm both on and off campus based on a finding rendered after an unfair hearing." 872 F.3d 393 at *29. The Fifth Circuit in *Plummer* observed that sanctions imposed by a university could have a "substantial lasting impact on [students'] personal lives, educational and employment opportunities, and reputations in the community." 860 F.3d at 773, *citing Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016). Another court observes that this satisfies the irreparable harm prong of the preliminary injunction inquiry:

> The court concludes plaintiff has also demonstrated that he will suffer irreparable harm if the injunction is denied. The loss of educational and career opportunities he will encounter if not reinstated and allowed to graduate is not readily compensable in money damages.

*Ritter*, 2016 U.S. Dist. LEXIS 60193, at *8. *See also Doe v. Univ. of Michigan*, 325 F. Supp. 3d at 829 ("Money damages cannot compensate Plaintiff for the reputational harm he has already suffered and will continue to suffer as a consequence of sexual assault allegations.").

In addition, R.B. has established potential constitutional violations. "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir. 1996), *cert. denied*, 520

U.S. 1251 (1997). This Court has observed, "the violation of a constitutional right in and of itself constitutes irreparable injury." *Hickman-Bey v. Livingston*, S.D.Tex. No. 2:13-CV-266, 2013 U.S. Dist. LEXIS 179012, at \*14 (Dec. 20, 2013). *See also ODonnell v. Harris County,* 251 F. Supp. 3d 1052, 1157 (S.D.Tex. 2017)("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary."), *quoting*11A Wright & Miller, Federal Practice & Procedure, § 2948.1 (3d ed. 1998); *Barnstone v. Univ. of Houston, KUHT-TV*, 487 F.Supp. 1347, 1350 (S.D.Tex.1980). ("It has been widely held that the deprivation of a constitutional right constitutes irreparable injury."). Accordingly, the due process violations in this case are, alone, sufficient to establish irreparable harm. *See Univ. Of Cincinnati,* 872 F.3d 393 ("When constitutional rights are threatened or impaired, irreparable injury is presumed"); *Gordon v. Holder*, 826 F. Supp. 2d 279, 296 (D.D.C. 2011) (violation of plaintiff's procedural due process rights creates irreparable harm); *Goings v. Court Services and Offender Supervision Agency*, 786 F. Supp. 2d 48, 78-79 (D.D.C. 2011) (same).

E.     **Harm to Third Parties and Public Interest**

In constitutional cases, an inquiry into the public interest is difficult to separate from the likelihood of success on the merits because "the greater public interest lies in protecting constitutional rights." *Whole Woman's Health v. Hellerstedt*, 231 F. Supp. 3d 218, 233 (W.D.Tex. 2017), *citing Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). *See also De Leon v. Perry*, 975 F.Supp.2d 632, 665 (W.D.Tex. 2014) ("a preliminary injunction preventing the enforcement of an unconstitutional law serves, rather than contradicts, the public interest"), *citing Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996); *Voting for Am., Inc. v. Andrade*, 488 F.App'x 890, 925 (5th Cir. 2012) ("it is in the public interest to protect constitutional rights").

In this case, an injunction will not cause any harm to third parties or TAMU. TAMU remains able to enforce its rules and regulations in a manner consistent with constitutional and statutory requirements. On the other hand, the failure to grant an injunction would harm the public because it would permit TAMU to violate the constitutional rights of all current and future students on an ongoing basis while this case is resolved, which necessarily would cause substantial, irreparable harm to those students. *Doe v. Lee*, U.S.D.C., D. Conn. No. NO. 3:99CV314, 2001 U.S. Dist. LEXIS 7282 (May 18, 2001) ("there is a distinct public interest in having this Court discharge its duty to protect and enforce [constitutional] rights").

R.B. notes that he has complied with any and all restrictions imposed by TAMU to prevent contact with the alleged victims. He would expect to continue to abide by these restrictions and is not challenging the authority of TAMU to impose such restrictions.

## F.     Nominal Bond Should Be Imposed

Federal R. Civ. P. 65(C) provides that "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

TAMU is an educational institution. Accordingly, because money is not an issue for Defendants and the school is not likely to suffer any potential losses if an injunction is granted, this Court should set surety in the nominal amount of $1. *See Doe v. Cincinnati.* 223 F. Supp. 3d 704 ("The Court sets a bond in the nominal amount of $1."). *See also Ponce v. Socorro Indep. Sch. Dist.,* 432 F. Supp. 2d 682, 707 (W.D. Tex. 2006) (setting a nominal bond of one hundred dollars because the evidence indicates that Defendant will suffer little, if any, damage by the issuance of the preliminary injunction), *rev'd on other grounds* 508 F.3d 765 (5th Cir. 2007). Courts have declined to require plaintiffs to post a bond in cases involving constitutional rights. *See Ogden v. Marendt*, 264 F. Supp. 2d 785, 795 (S.D. Ind. 2003); *Wickersham v. City of Columbia*, 371 F. Supp. 2d 1061 (W.D. Mo. 2005).

## CONCLUSION

Pursuant to Fed. R. Civil P. 65, this Court should grant a Temporary Restraining Order and, following a hearing, grant a Preliminary Injunction prohibiting the imposition of any disciplinary sanctions against R.B. related to the alleged sexual misconduct described in this Complaint.

Respectfully Submitted,

_/s/ James Holtz_____
James Holtz (09931450, Fed Bar No. 1452)
Will Holtz (24092533, Fed Bar No. 308796)
THE HOLTZ LAW FIRM, P.C.
2121 Sage Road, Suite 250
Houston, Texas 77056
713-467-1396
jholtz@holtzlegal.com
wholtz@holtzlegal.com

Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
*Pro hac vice*
ENGEL AND MARTIN, LLC
4660 Duke Dr., Ste 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com
tamashasky@engelandmartin.com