UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| R.B., § | |
|     *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:19-cv-03004 |
| § | |
| JENNIFER M. SMITH, et al., § | |
|     *Defendants*. § | |

## DEFENDANTS' MOTION TO DISMISS

Plaintiff R.B. is a student at Texas A&M University. *See* Plaintiff's Amended Complaint, Doc. 26 ¶ 3. In the spring of 2019, the University learned that four different women claimed that R.B. had harassed them. *Id.* ¶¶ 37–44. The University investigated the claims. *See id.* ¶¶ 37–45. Ultimately, R.B. was found not responsible for all claims of sexual harassment and misconduct, but R.B. did accept responsibility for punching a wall, *id.* ¶ 65, for which he was placed on probation. *Id.*

Despite prevailing on the allegations of sexual misconduct that gave rise to this suit, R.B. challenges the process underpinning those findings of non-responsibility. Not only does that put this matter in an odd procedural posture (generally, prevailing parties do not sue after their victory), but it also means that R.B. has not pleaded, and cannot plead, a cognizable injury. He lacks standing because he has not suffered an injury, and

his claims against the individual defendants do not overcome their assertions of qualified immunity. This case should be dismissed.

## I. FACTUAL BACKGROUND

In the Spring of 2019, Texas A&M University learned that R.B. was alleged to have committed sexual misconduct by harassing women and making unwanted sexual contact with women in the Freshman Leadership Organization. *Id.* ¶ 37.

R.B. received a letter from Defendant Jaclyn Upshaw-Brown on March 29, 2019, which informed him that the University's Offices of the Dean of Student Life, Student Conduct Office had been forwarded concerns about his interactions with a fellow student. *Id.* ¶ 38. An investigation ensued, and a report was provided to Defendant Anne Reber, the Dean of Student Life. *Id.* ¶ 39. One of the charges was that he had punched a hole in the wall at a residence when a girl refused to date him. *Id.* ¶ 43.

A hearing was held on July 30, 2019, and R.B. was able to participate by teleconference and consult with his advisor. *Id.* ¶ 49. On July 31, 2019, R.B. was found responsible for sexual harassment of two complainants but not responsible for harassment of two others. *Id.* ¶ 55. He was also found responsible for damaging a wall. *Id.* The recommended punishment for the findings of responsibility for these violations of the Student Conduct Code was a year of suspension. *Id.* ¶ 56.

Before the suspension took effect, R.B. internally appealed the outcome of his hearing and simultaneously filed this lawsuit. *Id.* ¶¶ 57–58. The parties agreed to delay a hearing in this Court on R.B.'s application for temporary restraining order until after

the full internal appeal process had run its course. *See* Doc. 15.

The next steps of the internal appeal process mooted R.B.'s application for temporary restraining order. The University remanded the matter for a Student Life Conduct Conference. *Id.* ¶ 59. At that conference, R.B. was offered the opportunity to present a defense. *Id.* ¶ 65. The complainants did not appear. *Id.* R.B. accepted responsibility for and was found responsible for punching the wall, and was found not responsible for the sexual misconduct allegations. *Id.* The punishment for the finding of the responsibility for the destruction of property was probation. *Id.* As he was found not responsible of the sexual misconduct allegations, R.B. was never subjected to the suspension and is currently enrolled at the University.

After the completion of this Student Conduct Conference, R.B. filed an amended complaint. *See* Doc. 26. In it, R.B. sues a number Texas A&M employees in their official and individual capacities. He asserts Fourteenth Amendment due process claims. First, he asserts that the University's Title IX hearing process violates the Constitution. *Id.* ¶ 73–93. He argues that the University permits hearsay evidence and that other aspects of the process are inadequate.

He also asks for an injunction "prohibiting the imposition of, or reporting of, any disciplinary actions by TAMU under the current policies and procedures for the investigation and adjudication of alleged sexual misconduct." *Id.* ¶ 92. Relatedly, he asserts individual capacity claims against Defendants Reber, Upshaw-Brown, and Jennifer Smith, the University's Title IX coordinator. *See id.* ¶¶ 4–6.

For the reasons discussed below, these claims should be dismissed.

## II. STANDARD OF REVIEW

Defendants bring this motion under Federal Rules of Civil Procedure 12(b)(1), for lack of jurisdiction, and 12(b)(6), for failure to state a claim. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). And the party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"[A] court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009). In the same vein, if a court finds that a defendant is entitled to qualified immunity, dismissal is appropriate under Rule 12(b)(6). *See, e.g., Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016).

## III. ARGUMENT

**A. R.B. lacks standing to sue Defendants because he was found not responsible for sexual misconduct during his student disciplinary hearing.**

This court should dismiss R.B.'s claims for lack of standing. To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability).

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case" and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Jurisdiction is "a threshold issue that must be resolved before any federal court reaches the merits of the case before it." *Perez v. U.S.*, 312 F.3d 191, 194 (5th Cir. 2002); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

An injury-in-fact requires "an invasion of a legally protected interest which is . . . concrete and particularized," not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. Except for conclusory statements, not entitled to deference, *see Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."), R.B. has not alleged he has suffered an injury aside from the possible threat of a hypothetical injury that may result from a theoretical future administrative hearing.[1]

The Supreme Court and the Fifth Circuit have repeatedly held that past harms are insufficient to create standing to seek prospective injunctive relief. *Los Angeles v. Lyons*, 461 U.S. 95, 105-07 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *Deutsch*

---

[1] To the extent R.B. claims he is injured because he has incurred attorneys' fees, attorneys' fees alone are not sufficient to confer standing. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998). Otherwise, any litigant could establish standing by retaining a lawyer and incurring fees. The limitation of federal court jurisdiction would be nonexistent.

*v. Annis Enters., Inc.*, 882 F.3d 169, 172 (5th Cir. 2018) (per curiam); *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015). To obtain prospective injunctive relief, a plaintiff has the burden to establish standing by putting on evidence that the "threatened injury is 'certainly impending'" or that there is a "'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)).

In *Deutsch*, for example, a man who used a wheelchair alleged a violation of the Americans with Disabilities Act when he encountered several physical obstacles while entering a women's hair salon. 882 F.3d at 172. The Court dismissed his lawsuit for lack of standing because he failed to demonstrate that he ever intended to visit the salon again. *Id.* at 174. As the Court stated, "[m]erely having suffered an injury in the past is not enough; the plaintiff must show a 'real or immediate threat that the plaintiff will be wronged again.'" *Id.* at 173 (quoting *Lyons*, 461 U.S. at 111).

R.B. claims his due process rights were violated during the hearing with regards to the sexual misconduct allegations. But he was found not responsible for the alleged sexual misconduct, and has not been subject to any punishment as a result. He also has not alleged that he is currently under investigation for any other allegation of sexual misconduct. As a result, his suit is merely theoretical: *if* he is accused of sexual misconduct in the future, *if* the university follows certain procedures, *if* he is found responsible, and *if* he is suspended or otherwise punished in a way that would bring his case within this court's jurisdiction. However, *today*—in which Plaintiff has been found

not responsible and has not been subjected to suspension or any other sanction for sexual misconduct—Plaintiff has not suffered an imminent and concrete injury in fact. *See Littleton*, 414 U.S. at 496–97 (1974) ("[I]t seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture. . . . We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."). Because R.B. lacks standing, all of his claims should be dismissed.

**B.      R.B.'s official capacity claims are barred by sovereign immunity.**

Plaintiff brings his due process claims against the Defendants in their official capacities. By doing so, Plaintiff seeks to fall within the *Ex parte Young* doctrine. 209 U.S. 123 (1908). This doctrine provides for an exception to sovereign immunity to "permit the federal courts to vindicate federal rights." *See Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). Under it, when a state official violates a federal law, she is not the State for sovereign immunity purposes. *Id.* However, "the doctrine is limited to this precise situation, and does not apply when the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration." *Id.* (internal citations and quotation marks omitted). To determine if the *Ex parte Young* doctrine circumvents the Eleventh Amendment's bar to suit, a court conducts a "straightforward inquiry into

whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).[2]

Thus, *Ex parte Young* requires that a plaintiff's suit articulate an *ongoing* violation of *federal* law and that the complaint seek relief properly characterized as *prospective*. *See id.* The Supreme Court has repeatedly instructed that the Eleventh Amendment bars a retrospective declaration of a violation of federal law where, as here, there is "no claimed continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 73 (1985); *see also Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) (explaining that Eleventh Amendment precludes an award of injunctive or declaratory relief that is not prospective in effect); *Verizon*, 535 U.S. at 645.

For the reasons discussed above, R.B. can only allege past harms, not future ones, and thus, he cannot seek prospective injunctive relief. R.B. has not plausibly pleaded any ongoing violations of federal law sufficient to overcome Defendants' sovereign immunity. Another court in this Division recently dismissed a similar claim raising an

---

[2] Relatedly, the Supreme Court has indicated that courts should not entangle themselves in abstract disagreements about administrative policies and practices and, instead, should let the administrative process run its course. The Court wrote: "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citation omitted). R.B.'s suit was not ripe when he filed it, because Texas A&M's internal administrative process had not run its course. But because R.B. has amended his complaint and his operative claims, Defendants do not press the argument in this brief that R.B.'s claims should be dismissed on ripeness grounds.

objection to a past administrative hearing that had resulted in victory for the plaintiff. *See Spec's Family Partners, Ltd. v. Exec. Dir. of the Tex. Alcoholic Beverage Comm'n*, 2019 WL 4097496, at *3 (S.D. Tex. Aug. 28, 2019) ("Plaintiff failed to allege a continuing violation of federal law which is necessary to avoid the immunity to which state officials are entitled under the Eleventh Amendment. Here, all that Plaintiff seeks is compensation for the enforcement proceedings and deterrence against TABC from initiating enforcement proceedings like those initiated against Plaintiff. While the effects to plaintiff may be ongoing, they flow from a single, allegedly defective administrative hearing in the past, which will not be repeated."). Likewise, R.B.'s prior administrative hearing will not be repeated, and he cannot plausibly claim otherwise. R.B.'s claims against Defendants in their official capacities should therefore be dismissed.

**C.    The officials are entitled to qualified immunity.**

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). After a government official asserts the affirmative defense of qualified immunity, the burden shifts to the plaintiff to show that the defendant's conduct violated clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Whatley v. Philo*, 817 F.2d 19, 20 (5th Cir. 1987). Whether a defendant is entitled to qualified immunity is a question on which a plaintiff has the burden of proof. *Kovacic v. Villarreal*, 628 F.3d 209, 212 (5th Cir. 2010).

A public official is entitled to qualified immunity unless a plaintiff demonstrates (1) a violation of a constitutional right, and (2) that the right at issue was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 230-32 (2009). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal citations omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.*

Thus, to surmount the assertion of qualified immunity, R.B. must plead sufficient specific facts to show that (1) Defendants violated a constitutional right of R.B.'s, and (2) in light of the facts and law available to them, every reasonable official would have known they were violating that right. *Reichle*, 566 U.S. at 664; *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). R.B.'s claims against Defendants satisfy neither requirement.

First, R.B. has not alleged a cognizable violation of his constitutional rights. The United States Supreme Court has stated that "[s]ince the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The core of due process is the protection of the individual from the arbitrary action of the government, whether the violation is a denial of fundamental procedural fairness (procedural due process), or the exercise of power without any reasonable justification to serve a legitimate government objective (substantive due process). *Id.* at 845–46.

"The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). As such, a procedural due process claim "is not ripe until the process complained of has reached its completion." *Wiley v. Tex. State Univ.*, 2019 WL 317247, *4 (W.D. Tex. Jan. 24, 2019) (dismissing a tenured faculty member's procedural and substantive due process claims as unripe because the due process hearing to which the parties agreed the plaintiff was entitled had not yet taken place). "Because the remedy for a procedural due process claim is more process, it makes little sense to adjudicate such claim before the process is complete." *Id.* Here, as discussed *supra*, R.B. did not suffer any injury because the process did not result in a finding of responsibility as it pertained to the charges of sexual misconduct. He was only found responsible for punching a wall, a charge he admitted to. For that reason alone, R.B. has not pleaded a constitutional injury.

Moreover, although students have substantive and procedural rights at school, "§ 1983 was not intended to be a vehicle for federal court correction of errors" in the exercise of school administrators' discretion that do not rise to violations of specific constitutional guarantees. *Wood v. Strickland*, 420 U.S. 308, 326 (1975) (holding that "§1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations."); *see also Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017) (stating that "[a] university is not a court of law, and it is neither practical nor desirable

it be one."). Indeed, the Supreme Court has stated that a "school is an academic institution, not a courtroom or administrative hearing room." *Bd. Of Curators of University of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978). R.B.'s allegations ignore this reality and come nowhere close to showing, through specific factual averments, how the process employed during his hearing failed to comport with the Due Process Clause.

Further, there is also no clearly established law that the process employed to resolve the allegations of sexual misconduct violated R.B.'s due process rights. "To establish a denial of procedural due process, [a plaintiff] must show substantial prejudice." *Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984). Abstract disagreements about how a hearing is to take place do not suffice. *See id.* Thus, R.B. cannot maintain a suit challenging the University's process in the abstract, but must point to specific deprivations of his due process rights caused by the process employed during his hearing. He has not done so. Moreover, case law is developing on the process a university must provide a student accused of sexual misconduct.

Therefore, there is certainly no "single 'controlling authority' nor a 'robust consensus of persuasive authority,'" *see Morgan v. Swanson*, 659 F.3d 359, 382 (5th Cir. 2011) (citation omitted), that would give Defendants an indication that the University's process violated the Due Process Clause by not allowing direct cross-examination.[3] *See,*

---

[3] R.B.'s other complaints about the University's process—for instance, that the University does not compel attendance of witnesses, Doc. 26 ¶ 79—suffer from a similar defect: R.B. cannot identify any robust consensus of authority that the University's procedures in this regard violate the Due Process Clause. As it is his burden to identify such case law in response to a qualified immunity

*e.g.*, *Doe v. Cummins*, 662 F. App'x 437, 448 (6th Cir. 2016) (no due process violation where cross-examination was limited to one round of written questions to be asked by disciplinary panel and panel did not ask all the questions); *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (no due process right to ask direct cross-examination questions instead of through university representative); *Xiaolu Peter Yu v. Vassar College*, 97 F. Supp. 3d 448, 465 (S.D. N.Y. 2015) (cross-examination through hearing chair did not, as a matter of law, violate due process rights); *Johnson v. Temple University*, 2013 WL 5298484, at *11 (E.D. Penn. 2013) (having questions asked through hearing officer did not violate due-process rights); *Doe v. Baum*, 903 F.3d 575, 583 (6th Cir. 2018) (holding that "the university must allow for some form of live questioning in front of the fact-finder" but also noting that the accused student may not always have the right to personally confront his accuser and other witnesses (emphasis omitted)). And R.B.'s allegations that the process is "biased," *e.g.*, Doc. 26 ¶ 79, are conclusory and need not be accepted as true. *Iqbal*, 556 U.S. at 678; *see, e.g.*, *Taylor ex rel. Gordon v. Corsicana Residential Treatment Ctr.*, 2001 WL 1295522, at *2 (N.D. Tex. Oct. 15, 2001) (finding that "vague and conclusory allegations" in complaint, including that defendants did not "honor[] what they say they stand for," were "insufficient to state a claim for relief under the ADA."). In light of this morass of case law, R.B. cannot point to any case clearly stating that any action the individual administrators took violated his clearly

---

defense, this dearth of authority must result in the dismissal of his individual capacity claims.

established rights.

Finally, in any event, R.B. has not provided any particularized allegations about how these individual Defendants violated his due process rights. This contravenes the Supreme Court's explicit instructions in *Iqbal* that "the pleading standard [in] Rule 8 . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citation and internal quotation marks omitted). Instead, R.B. must plead specific, plausible facts showing that *these* particular Defendants violated his constitutional rights. *See id.* at 682. The Amended Complaint barely mentions the three named Defendants, and it comes nowhere close to the specificity required by Rule 8 or the *Twombly/Iqbal* pleading standard.

For all of these reasons, R.B.'s individual capacity claims must be dismissed.

## IV. RULE 7(A) REPLY

Alternatively, it is proper for this Court to consider at the motion to dismiss stage whether this suit must be dismissed if, pursuant to the *Schultea* procedure, Defendants invoke Federal Rule of Civil Procedure 7(a), which requires R.B. to file a reply that pleads specific facts to specifically engage the qualified immunity defense. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (noting that if "a public official pleads the affirmative defense of qualified immunity . . . the district court may . . . require the plaintiff to reply to that defense in detail . . . the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations"). In the event that the Court does not grant Defendants' Motion to Dismiss on the basis of the arguments discussed

above, Defendants invoke Rule 7(a) and request that the Court order R.B. to file a Rule 7(a) reply to fairly engage the defenses articulated in this brief.[4] *See id.* at 1434 ("[v]indicating the [qualified] immunity doctrine will ordinarily require [a Rule 7(a)] reply, and a district court's discretion not to [require such a reply] is narrow indeed when greater detail might assist").

## V. CONCLUSION

R.B. lacks standing to proceed on his claims. In addition, his official capacity claims should be dismissed because he cannot establish an ongoing violation of his constitutional rights that would warrant a prospective injunction. R.B.'s individual capacity claims should be dismissed because he cannot overcome Defendants' qualified immunity defense. For all of these reasons, the Court should dismiss R.B.'s suit.

---

[4] This Rule 7(a) reply procedure and the subsequent decision by this Court on the motion to dismiss should precede any discovery in this case. *See Schultea*, 47 F.3d at 1434 (a court "need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts").

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
Texas Bar No. 24087072
Southern District No. 2513900
CRISTINA M. MORENO
Texas Bar No. 24105023
Southern District No. 3195054
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
michael.abrams@oag.texas.gov
cristina.moreno@oag.texas.gov

**Counsel for Defendants**

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2019, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

/s/ *Michael R. Abrams*
MICHAEL R. ABRAMS
Assistant Attorney General